UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABE BEAUPERTHUY, et al. on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>24 HOUR FITNESS USA, INC., a California corporation d/b/a 24 Hour Fitness; SPORT AND FITNESS CLUBS OF AMERICA, INC., a California corporation d/b/a 24 Hour Fitness,<br><br>　　　　Defendants. | No. 06-0715 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR FACILITATED NOTICE PURSUANT TO 29 U.S.C. § 216(b) |

## I. INTRODUCTION

Before the Court is a Motion by Plaintiffs John Davidsson et al. ("Plaintiffs" or "Trainers") for Facilitated Notice to Class of Personal Trainers and for Bifurcation of Issues for Trial ("Motion"). Docket No. 160. The Motion seeks conditional certification of a collective action under section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., tolling of the statute of limitations, approval of the proposed form of notice, and bifurcation of the trials for the different classes involved in this matter. See id. Defendants 24 Hour Fitness USA,

Inc., and Sport and Fitness Clubs of America, Inc., (collectively "24 Hour Fitness" or "Defendants") opposed the Motion and Plaintiffs replied. See Docket Nos. 186, 189.

Having considered all of the parties' submissions, the Court conditionally certifies the Personal Trainers Class and tolls the statute of limitations, but does not approve of the proposed form of notice and denies the request to bifurcate the trial.

**II.   BACKGROUND**

This case has its roots in an action filed in the Southern District of California on October 29, 2003, Boyce v. Sports and Fitness Clubs of America, No. 03-CV-2140 ("Boyce"). The plaintiffs in Boyce originally sought to conditionally certify an FLSA collective action on behalf of a nationwide class of former 24 Hour Fitness employees. Before the court in Boyce ruled on the motion to certify the class, the parties reached a settlement which applied only to former 24 Hour Fitness employees who had worked in California. Boyce Docket No. 204. Plaintiffs then brought this suit on behalf of former 24 Hour Fitness employees who worked in states other than California. See Compl., Docket No. 1.

Plaintiffs previously moved to conditionally certify an "omnibus class" containing multiple sub-classes, including a Managers Class, a Commission-Based Class, and an Hourly Employees Class. See Docket No. 69 at 1. The Court conditionally certified the Managers Class, but did not certify the entire omnibus class or the other two sub-classes. Order Granting in Part and Denying

2

in Part Pls.' Mot. for Facilitated Notice Pursuant to 29 U.S.C. § 216(b) ("First FLSA Order"), Docket No. 124, at 12-13.

The Plaintiffs now ask the Court to conditionally certify a class of Personal Trainers. For the purposes of this Motion, "Personal Trainers" includes the 24 Hour Fitness job titles PT Trainer, Certified Personal Trainer ("CPT"), CPT I, CPT II, CPT III, CPT Elite, Trainer Fit Pro ("TFP"), TFP I, TFP II, TFP III, TFP Elite, FLS, Apex Tech, Fitness Instructor, and Floor Instructor. Mot. at ii n.1.[1] This proposed class contains the same job titles as those included in the definition of "Personal Trainer" in the Boyce settlement, which was approved by the court in January 2006. Boyce Docket No. 204. The Proposed Personal Trainers class includes only those who worked for 24 Hour Fitness outside of California, and excludes anyone who recovered in Boyce.

### III. DISCUSSION

#### A. Conditional Certification

Plaintiffs request that the Court conditionally certify a class of Personal Trainers. For the following reasons, the Court finds that conditional certification is appropriate, and GRANTS Plaintiffs' Motion.

##### 1. Legal Standard

Section 16(b) of the FLSA provides employees with a private right of action to sue an employer for violations of the Act "for

---

[1] Plaintiffs originally sought to include the Assistant Fitness Manager and Fitness Manager Active (nonexempt) in this list, but agreed in their Reply to remove those two job titles from the proposed class. Reply at 10-11.

3

and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To join an FLSA "collective action" as a plaintiff, an employee must affirmatively opt in by filing a written "consent to join" in the court where the action is pending. See id.

A majority of courts, including district courts in this circuit, have adopted a two-stage certification procedure for collective actions brought under the FLSA. See, e.g., Adams v. Inter-Con Sec. Sys., Inc., No. 06-5428 MHP, 2007 U.S. Dist. LEXIS 26881, at *10-12 (N.D. Cal. Apr. 11, 2007); Gerlach v. Wells Fargo & Co., No. 05-585 CW, 2006 U.S. Dist. LEXIS 24823, at *3 (N.D. Cal. March 28, 2006); Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004); Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1082-84 (C.D. Cal. 2002) (citing Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1106 (10th Cir. 2001)). At the first stage, the district court approves conditional certification upon a minimal showing that the members of the proposed class are "similarly situated"; at the second stage, usually initiated by a motion to decertify, the court engages in a more searching review. Leuthold, 224 F.R.D. at 467.

The FLSA does not define "similarly situated," and the Ninth Circuit has not spoken to the issue. The Supreme Court, in Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989), also left the term undefined, but indicated that a proper collective action encourages judicial efficiency by addressing in a single proceeding claims of multiple plaintiffs who share "common issues of law and fact arising from the same alleged [prohibited]

4

activity." Id. at 170.  This has been distilled by lower courts into a requirement that a proponent for conditional certification present the court with "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  Thiesen, 267 F.3d at 1102 (internal quotation marks omitted); see also, e.g., Gerlach, 2006 U.S. Dist. LEXIS 24823 at *6-7.  Given that a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage.  See, e.g., Leuthold, 224 F.R.D. at 467; Aguayo v. Oldenkamp Trucking, No. 04-6279, 2005 U.S. Dist. LEXIS 22190, at *12 (E.D. Cal. Oct. 3, 2005) (disregarding hearsay and foundational challenges to declarations submitted in support of motion for conditional certification); Ballaris v. Wacker Silttronic Corp., No. 00-1627, 2001 U.S. Dist. LEXIS 13354, at *8 (D. Or. Aug. 24, 2001) (granting motion for conditional certification on basis of two affidavits while explicitly refusing to consider other documentary evidence).

    2. <u>Conditional Certification of the Personal Trainers Class is Appropriate</u>

The Court begins by correcting an apparent misconception in Defendants' Opposition.  Defendants suggest that the Court, in ruling on the previous motion, rejected conditional certification of the Personal Trainers Class.  Opp'n at 13-14.  Defendants then assert that Plaintiffs' position has not changed, and that the Court should therefore reject the certification again.  Id. at 14.

5

The Court did not refuse to certify a Personal Trainers class. Rather, the Court refused certification of the proposed omnibus class including both Managers and Personal Trainers. First FLSA Order at 12-13. The Court explicitly refrained from addressing certification of the non-manager classes. See id. at 13 n.4.[2]

With that in mind, the Court considers, for the first time, the certification of the Personal Trainers Class. Plaintiffs have submitted the declarations of ten former employees of 24 Hour Fitness who worked for the company over a number of years in several states other than California and who held positions which are included in the proposed Personal Trainers Class. See Davidsson Decl., Docket No. 73, ¶ 1; Fennelly Decl., Docket No. 75, ¶ 1; Gabalski Decl., Docket No. 76, ¶ 1; Guy Decl., Docket No. 77, ¶ 2; Matthews Decl., Docket No. 77, ¶ 2; Baumgart Decl., Docket No. 162, ¶ 1; Fennell Decl., Docket No. 163, ¶ 1; Fleming Decl., Docket No. 164, ¶ 1; Kaipi Decl., Docket No. 165, ¶ 1; Lowry Decl., Docket No. 166, ¶ 1.

All of the declarants held similar positions and had similar responsibilities during the time they worked for 24 Hour Fitness. Davidsson Decl. ¶¶ 4, 5, 8, 9, 13; Fennelly Decl. ¶¶ 4-6, 9, 13, 14 ; Gabalski Decl. ¶¶ 4-7, 15-18; Guy Decl. ¶¶ 5-7, 11; Matthews Decl. ¶¶ 5-7, 10-12; Baumgart Decl. ¶¶ 4-6, 9, 10, 13, 15; Fennell

---

[2] "In making this finding the Court explicitly declines to address whether the putative members of the other two categories are similarly situated with other putative members of the same respective category. . . . It thus makes no finding as to whether it may, or may not, be appropriate for a court to conditionally certify a collective action consisting of employees which fall in one or both of these categories." First FLSA Order at 13 n.4 (emphasis added).

Decl. ¶¶ 4-6, 8-10, 12, 13; Fleming Decl. ¶¶ 4-6, 9-10, 13, 15-16; Kaipi Decl. ¶¶ 4-6, 8-10, 13, 15; Lowry Decl. ¶¶ 4-6, 8-10, 13, 16.

Without exception, the declarants assert that they were classified as "non-exempt" hourly employees, but that 24 Hour Fitness failed to compensate them for any hours they worked in excess of 40 hours per week and did not pay any overtime premium, even though each declarant regularly worked in excess of 40 hours per week. Davidsson Decl. ¶¶ 3, 6-7, 11, 12; Fennelly Decl. ¶¶ 2, 7-8, 10-15; Gabalski Decl. ¶¶ 3, 8; Guy Decl. ¶¶ 3, 8-9; Matthews Decl. ¶¶ 3, 8-10; Baumgart Decl. ¶¶ 2, 7; Fennell Decl. ¶¶ 2, 7; Fleming Decl. ¶¶ 2, 7; Kaipi Decl. ¶¶ 2, 7; Lowry Decl. ¶¶ 2, 7. Each declarant provides the same explanation for 24 Hour Fitness's failure to pay these wages. Personal Trainers were paid one hourly rate for time spent in one-on-one training sessions with clients ("Personal Training" or "PT Hours"), and a different rate for time spent on all other tasks, such as cleaning equipment, calling clients, selling nutritional supplements, attending staff meetings, and walking the floor of the fitness club to provide general assistance to customers ("Floor Time" or "FIT Hours"). See, e.g., Davidsson Decl. ¶¶ 8-10. According to the Trainers, 24 Hour Fitness tracked PT Hours and FIT Hours in two separate payroll systems and set strict quotas on the number of FIT Hours each employee could record so that the total hours per week never exceeded 40. See, e.g., id. ¶¶ 11, 12. Despite the cap on FIT Hours they could record in the payroll system, the Trainers were informed that numerous tasks were part of their job and had to be

7

1  completed, even if they were done "off the clock".  See, e.g., id.
2  ¶¶ 8-13.  Finally, the Trainers assert that the limits on how
3  many FIT Hours they could record were the result of a corporate
4  policy, and that district managers set the payroll limits for each
5  club.  See, e.g., Fennelly Decl. ¶ 11; Guy Decl. ¶ 12; Matthews
6  Decl. ¶ 11.

7  The FLSA requires employers to pay their employees one and
8  one-half times the employees' regular hourly rate for any hours
9  worked in excess of forty hours in one week.  29 U.S.C. §
10 207(a)(1).  The Trainers' allegations described above, if true,
11 demonstrate that the policies and practices of 24 Hour Fitness as
12 they relate to payment of wages and overtime to Personal Trainers
13 are in violation of the FLSA.

14 Defendants argue that the Trainers' declarations fail to
15 describe a common corporate decision or policy applicable to all
16 Personal Trainers, while incongruously asserting in the same brief
17 that the declarations are so similar as to lack credibility.  See
18 Opp'n at 11, 13.  How are Plaintiffs to allege that they all
19 suffered the same injury as a result of the same corporate policy
20 if they cannot make the same factual allegations?  The notion
21 borders on the absurd.

22 All of Defendants' challenges are equally unpersuasive.  The
23 Court addresses each.  First, Defendants assert that there was no
24 corporate policy preventing the Personal Trainers from recording
25 all of their hours or receiving overtime.  Opp'n at 3-6.  In
26 support of this argument, Defendants offer employee handbooks from
27 1998, 2000, 2005, and 2007, each of which states that the company

8

policy is to "record all time worked" by employees, and to pay any non-exempt employee who works overtime the appropriate overtime pay. See Bolding Decl., Docket No. 188, Exs. A, C; Picciolo Decl., Docket No. 100, Exs. VVV, WWW. The employee handbooks also say employees are to record their hours in a system called "Time and Labor," rather than the dual tracking systems for FIT Hours and PT Hours the Trainers describe. See id.

An employer's responsibility under the FLSA extends beyond merely promulgating rules to actually enforcing them. See Chao v. Pac. Stucco, Inc., No. 04-CV-0891-RCJ, 2006 U.S. Dist. LEXIS 59162, at *17-18 (D. Nev. Aug. 11, 2006) (citing 29 C.F.R. § 785.13). The Trainers allege that, in practice, 24 Hour Fitness refused to pay them in full for all of the hours they worked. That Defendants published a handbook cannot immunize them against an FLSA action where there is substantial evidence that they did not follow their own guidelines. Defendants do not offer a single declaration from a 24 Hour Fitness employee stating that the company followed these rules, or otherwise contradicting the Trainers' declarations. By contrast, a number of the Trainers also worked at various times in managerial roles, and acknowledge that as managers, they had to limit the FIT Hours recorded at each club, and that they understood this to be necessary to comply with corporate policies. See, e.g., Davidsson Decl. ¶ 19; Fennelly Decl. ¶¶ 21, 25, 26. The Court is satisfied that the allegations in the Trainers' declarations adequately establish, for the purposes of conditional certification, a 24 Hour Fitness corporate policy.

9

Defendants also attempt to attribute the alleged requirements that certain trainers work off-the-clock to "rogue managers" rather than corporate policy. Opp'n at 6. Based on the available testimony, it would appear that all 24 Hour Fitness managers are rogues and that 24 Hour Fitness encouraged this rogue behavior. The Trainers' uncontested declarations sufficiently allege that, rogue or otherwise, the managers were following corporate policy in violation of the FLSA.

Defendants next argue that there is no evidence to support a "dual timekeeping system" as alleged by the Trainers. Id. Again, Defendants rely on the employee handbook, which is as insufficient to support this argument as it was for the previous argument. Moreover, even if 24 Hour Fitness only used one system for tracking employees' time, that would not overcome the Trainers' allegations that, based on corporate policy, they were prevented from entering all of the hours they worked into the timekeeping system. Defendants also claim that all of Plaintiffs' knowledge regarding the timekeeping system is out of date. Id. at 6-7. However, the Trainers' allegations cover time that falls within the class period, as defined below, and are therefore relevant. Without evidence from Defendants regarding the actual means for recording time used in the clubs, the Court cannot discount the Trainers' testimony simply because they stopped working at 24 Hour Fitness a few years ago.

According to Defendants, the proposed Personal Trainers Class is also deficient because it includes both exempt and non-exempt employees. Id. at 7-8. First, Defendants point out that

10

the proposed class included Assistant Fitness Managers, a position that 24 Hour Fitness claims is exempt from the FLSA overtime requirements. As noted previously, Plaintiffs have agreed to withdraw the Assistant Fitness Managers from the proposed class. Defendants also claim that they treated some Personal Trainers as exempt. Id. at 7. Defendants offer no evidence whatsoever in support of this claim. The Trainers' declarations uniformly state that as Personal Trainers, they were classified as non-exempt. This is sufficient at the conditional certification stage.

Defendants' next argument is that there is an internal conflict in the class between the Assistant Fitness Managers and Fitness Manager-Actives on the one hand, and Certified Personal Trainers and Trainer Fit Pros, on the other, because the former supervised the latter. Id. at 8-9. This is a moot point because both the Assistant Fitness Managers and the Fitness Manager-Actives have been withdrawn from the class.

The next in Defendants' litany of unpersuasive arguments is, or appears to be, that Plaintiffs have not offered enough declarations to support conditional certification. Defendants do not offer any suggestion about what number of declarations would be sufficient, assuming such an arbitrary cutoff exists. In support of their argument, Defendants cite to a list of various district court decisions denying certification, but provide no explanation about how those cases are applicable. See id. at 10-11. The brief parenthetical descriptions Defendants include show a number of reasons that other courts refused to certify classes, but shed no light on how the Court should rule here. The Court

11

will not endeavor to read every order denying certification from every district court in the country, and will not do Defendants' work for them.[3]

It must suffice to say that the Court finds the collection of declarations submitted by the Trainers here to be more than sufficient to satisfy the minimal requirements for conditional certification. Defendants' protests regarding the number of declarations, the time period covered by those declarations, and the geographic regions covered by those declarations, are all equally meritless. The ten declarations in question are from employees who worked in seven of the states at issue and cover the entire class period. In attempting to minimize the time period described in the declarations, Defendants ignore the fact that some of the Trainers eventually became managers, but describe the continued denial of overtime to Trainers during the time that they were managers. See, e.g., Davidsson Decl.; Fennelly Decl.; Matthews Decl. Additionally, the Court notes that the declarations on which it relied in certifying the Managers Class covered only six of the relevant states (Colorado, Washington, Idaho, Oregon, Nevada, and Missouri), and, as the Trainers' declarations do, excluded Texas. See First FLSA Order at 15; see also Beauperthuy Decl., Docket No. 71, ¶ 2; Davidsson Decl. ¶

---

[3]The Court notes that Defendants included the exact same page-long string citation in their opposition to conditional certification of the omnibus class, even though the issue before the Court at that time was distinct from the present Motion. See Docket No. 89 at 9. Cutting and pasting a legal standard from one brief to another may be efficient, but it does not obviate the need for meaningful analysis and reasoned argument in the application of that standard.

12

1; De Soto Decl., Docket No. 74, ¶ 1; Fennelly Decl. ¶ 1; Guy Decl. ¶ 2; Hudson Decl., Docket No. 78, ¶ 2; Matthews Decl. ¶ 2; Newcomb Decl., Docket No. 81, ¶ 1; Sherrill Decl., Docket No. 88, ¶ 1; Struble Decl., Docket No. 83, ¶ 2. In opposing the first certification, Defendants complained of the limited geographic reach of the supporting declarations to no avail. See Docket No. 89 at 10. The Court finds it no more persuasive now than before, but apparently must make this determination explicit to avoid Defendants raising it again in the future.

Were it simply a question of the number of declarations submitted or the number of states addressed, the Court would likely find for Plaintiffs anyway. Looking beyond mere numbers to the substance of the Trainers' declarations, however, confirms this conclusion. The Court is convinced that the allegations are sufficient to demonstrate that "the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102. The Court therefore GRANTS Plaintiffs' Motion and conditionally certifies the Personal Trainers Class.

### B. Tolling

The Trainers request that the Court toll the statute of limitations for the Personal Trainers Class as it did for the Managers Class, and allow notice to be sent to individuals who worked as Personal Trainers from December 31, 1998 to the present. See Mot. at 20; First FLSA Order at 17-18.

Defendants offer no argument why the Court's previous analysis is not applicable here, or any basis for distinguishing

13

1 the treatment of the Personal Trainers Class from the treatment of
2 the Managers Class.[4]  The Court therefore incorporates its
3 analysis on this issue from the First FLSA Order, and tolls the
4 statute of limitations.

5 The decision to toll the statute of limitations for the
6 Managers Class was based on the desire to give the Plaintiffs from
7 outside of California the same treatment the California plaintiffs
8 received in Boyce.  First FLSA Order at 17-18.  The claims of
9 Personal Trainers Class for lost wages due to failure to pay
10 overtime and off-the-clock work are most comparable to the claims
11 of the Hourly Class certified in Boyce.  The Court therefore tolls
12 the statute of limitations to allow members of the Personal
13 Trainers Class to sue for failure to pay overtime occurring any
14 time after October 29, 1999.  See Boyce Docket No. 84.

### C. **Discovery, Form of Notice, and Bifurcation**

16 The Court agrees with Defendants that, with the Personal
17 Trainers Class now conditionally certified, it would be
18 appropriate for the parties' counsel to meet and confer regarding
19 discovery needs and the form of notice.  See Opp'n at 18.  The
20 Court therefore DENIES Plaintiffs' motion for approval of the
21 proposed form of notice and for limited discovery.  The Court
22 further finds that bifurcation of the trial is premature at this

---

[4]Defendants argue that the Court's prior ruling "is not consistent with that of the Boyce court — a result that should be reconsidered in light of the principles of comity and estoppel." Opp'n at 18.  Defendants previously moved the Court to reconsider its ruling on this issue, and the Court denied that motion at the time.  See Docket Nos. 129, 135.  The Court will not revisit this question.

14

1  juncture, and will be best addressed after the form of notice is
2  finalized.
3  　　　　The Court urges the parties to engage the meet and confer
4  process in a meaningful manner, and to consider all of the Court's
5  previous rulings regarding the form of notice and discovery for
6  the Managers Class.

**IV.  CONCLUSION**

　　　　For the foregoing reasons, the Court GRANTS in part and
DENIES in part Plaintiffs' Motion for Facilitated Notice Pursuant
to 29 U.S.C. § 216(b).  Accordingly, the Court ORDERS as follows:

1.  The FLSA collective class consisting of persons who worked for 24 Hour Fitness outside of California as Personal Trainers (including the titles: PT Trainer, Certified Personal Trainer ("CPT"), CPT I, CPT II, CPT III, CPT Elite, Trainer Fit Pro ("TFP"), TFP I, TFP II, TFP III, TFP Elite, FLS, Apex Tech, Fitness Instructor, and Floor Instructor) and who were classified as non-exempt is CONDITIONALLY CERTIFIED.

2.  The statute of limitations is EQUITABLY TOLLED to allow members of the Personal Trainers Class to sue for failure to pay overtime occurring any time after October 29, 1999.

3.  The parties are ORDERED to meet and confer regarding the form of the opt-in notice and any necessary discovery. No later than thirty days following the date of this order, the parties shall submit a joint proposed opt-in order and a joint plan for related discovery and the process of notification.  If any relevant differences cannot be resolved through the meet and confer process, each party may submit a brief of no more than 5 pages addressing the outstanding issues.

///
///
///
///

15

1    4.    The parties shall appear for a further Status Conference at 10:00 a.m. on June 13, 2008, seven days before which the parties are required to file with the Court a joint status statement.

IT IS SO ORDERED.

Dated:  March 24, 2008.


UNITED STATES DISTRICT JUDGE

16