United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GABE BEAUPERTHUY, et al.,            )   Case No. 06-715 SC
                                     )
          Plaintiffs,                )   ORDER RE: MOTIONS TO
                                     )   DECERTIFY CONDITIONAL FLSA
     v.                              )   CLASSES
                                     )
24 HOUR FITNESS USA, INC., a         )
California corporation dba 24 HOUR   )
FITNESS; SPORT AND FITNESS CLUBS     )
OF AMERICA, INC., a California       )
corporation dba 24 HOUR FITNESS,     )
                                     )
          Defendants.                )
_____)

## I.    **INTRODUCTION**

     This is a collective action filed by employees and former
employees of Defendants 24 Hour Fitness USA, Inc. and Sport and
Fitness Clubs of America, Inc. (collectively "24 Hour" or
"Defendants").  Before the Court are two Motions to Decertify
Conditional Fair Labor Standards Act Classes, both filed by
Defendants.  Defendants' first Motion seeks to decertify a class of
employees and former employees who worked as personal trainers for
Defendants ("Trainer Class").  Docket No. 362 ("Defs.' First
Mot.").  Defendants' second Motion seeks to decertify a class of
employees and former employees who worked as managers for
Defendants ("Manager Class").  Docket No. 371 ("Defs.' Second
Mot.").  Plaintiffs have filed an Opposition to each Motion.

1   Docket Nos. 385 ("Pl.'s First Opp'n"), 386 ("Pl.'s Second Opp'n").

2   Defendants have filed Replies.  Docket Nos. 409 ("Defs.' First

3   Reply"), 410 ("Defs.' Second Reply").

4       In addition, Plaintiffs have filed two Motions to Strike

5   ("MTS") Declarations Filed in Support of Defendants'

6   Decertification Motions.  In their first Motion to Strike,

7   Plaintiffs move to strike the declarations of six witnesses filed

8   in support of Defendants' Motion to Decertify the Trainer Class.

9   Docket No. 403 ("Pl.'s First MTS").  In their second Motion to

10  Strike, Plaintiffs seek to strike the declarations of two witnesses

11  filed in support Defendants' Motion to Decertify the Manager Class.

12  Docket No. 405 ("Pl.'s Second MTS").  Defendants have submitted a

13  single consolidated Opposition in response to both motions.  Docket

14  No. 412 ("Defs.' Cons. MTS Opp'n").  Plaintiffs have filed a single

15  consolidated Reply.  Docket No. 420 ("Pl.'s Cons. MTS Reply").

16      Lastly, Defendants have filed a Motion to Strike all

17  declarations filed in support of Plaintiffs' Oppositions to

18  Defendants' Decertification Motions.  Docket No. 414 ("Defs.'

19  MTS").  Plaintiffs filed an Opposition.  Docket No. 416 ("Pl.'s

20  Opp'n to Defs.' MTS").  Defendants replied.  Docket No. 419

21  ("Defs.' MTS Reply").

22      Having considered all of the papers submitted by both parties,

23  this Court concludes that the matter is appropriate for decision

24  without oral argument.  As detailed below, the Court concludes that

25  decertification of both the Trainer Class and the Manager Class is

26  warranted.

27

28  **II.   BACKGROUND**

**United States District Court**
For the Northern District of California

1    The Court has previously issued several orders that detail the

2    procedural and factual background in this dispute.  See Docket Nos.

3    26 ("Apr. 11, 2006 Order"), 66 ("Nov. 28, 2006 Order"), 124 ("Mar.

4    6, 2007 Order"), 190 ("Mar. 24, 2008 Order").  This Order will

5    therefore assume familiarity with the background of this case.  In

6    short, Plaintiffs are alleging that Defendants' employment and

7    payment policies improperly denied Plaintiffs overtime payments, in

8    violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

9    ("FLSA").  See First Am. Compl. ("FAC"), Docket No. 33, ¶¶ 85-97.

10   Prior to discovery, the Court granted conditional certification of

11   the Manager Class and the Trainer Class in accordance with the two-

12   stage FLSA certification process described below.  See Mar. 24,

13   2008 Order; Mar. 6, 2007 Order.

14   The present motions arise after the close of non-expert

15   discovery.  Pl.'s First Opp'n at 4.  Defendants have produced over

16   200,000 documents, including payroll records for each Plaintiff.

17   Id.  Defendants deposed forty class members.  Defs.' First Reply at

18   2.  Plaintiffs deposed ten 24 Hour witnesses.  Pl.'s First Opp'n at

19   4.  Both sides have disclosed experts and produced damages

20   computations.  Id.  Plaintiffs have submitted declarations from 119

21   class members -- the forty deponents plus seventy-nine others.

22

23   **III.  LEGAL STANDARD**

24   The FLSA provides that "no employer shall employ any of his

25   employees . . . for a workweek longer than forty hours unless such

26   employee receives compensation for his employment in excess of the

27   hours above specified at a rate not less than one and one-half

28   times the regular rate at which he is employed." 29 U.S.C. §

**United States District Court**
For the Northern District of California

207(a)(1).  Section 16(b) of the FLSA provides employees with a private right of action to sue an employer for violations of the Act "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The latter sort of action, often referred to as a "collective action," works somewhat differently than a Rule 23 class action: an employee who wishes to join an FLSA collective action must affirmatively opt-in by filing a written consent to join in the court where the action was brought.  Id.  In Hoffman-La Roche Inc. v. Sperling, the Supreme Court recognized the discretion of district courts to facilitate the process by which potential plaintiffs are notified of FLSA collective actions into which they may be able to opt. 493 U.S. 482, 486 (1989).[1]  Building on this, a majority of courts, including district courts in the Ninth Circuit, have adopted a two-stage certification procedure.  See, e.g., Leuthold v. Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004); Wynn v. National Broadcasting Co., 234 F. Supp. 2d 1067, 1082-84 (C.D. Cal. 2002); Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1106 (10th Cir. 2001).  At the first stage, the district court approves conditional certification upon a minimal showing that the members of the proposed class are "similarly situated"; at the second stage, usually initiated by a motion to decertify, the court engages in a more searching review.  Leuthold, 224 F.R.D. at 467.

The FLSA does not define "similarly situated," and the Ninth Circuit has not spoken to the issue.  Reed v. County of Orange, 266

---

[1] Sperling addressed a collective action brought under the Age Discrimination in Employment Act, which, the Court recognized, incorporates § 16(b) of the FLSA. 493 U.S. at 486.

United States District Court
For the Northern District of California

1  F.R.D. 446, 449 (C.D. Cal. 2010) ("The FLSA does not define the

2  term 'similarly situated,' and there is no Ninth Circuit precedent

3  interpreting the term.") (citations omitted).  The Supreme Court,

4  in Sperling, also left the term undefined, but indicated that a

5  proper collective action encourages judicial efficiency by

6  addressing, in a single proceeding, claims of multiple plaintiffs

7  who share "common issues of law and fact arising from the same

8  alleged [prohibited] activity."  493 U.S. at 486.  This has been

9  distilled by courts into a lenient standard for step one -- the

10 conditional certification stage -- requiring "nothing more than

11 substantial allegations that putative class members were together

12 victims of a single decision, policy, or plan."  Thiesen 267 F.3d

13 at 1102 (internal quotations omitted); see also, e.g., Gerlach v.

14 Wells Fargo & Co., No. C 05-0585, 2006 WL 824652, at *2 (N.D. Cal.

15 Mar, 28, 2006).  This Court applied the lenient stage-one standard

16 when it previously certified the conditional Trainer Class and

17 Manager Class.  See Mar. 24, 2008 Order; Mar. 6, 2007 Order.  At

18 step two of the process, where this case currently stands, courts

19 engage in a more searching review.  Leuthold, 224 F.R.D. at 467.

20 At this stage, in order to overcome a motion to decertify a

21 conditionally certified class, "it is plaintiffs' burden to provide

22 substantial evidence to demonstrate that they are similarly

23 situated."  Reed, 266 F.R.D. 446 at 449.  The Eleventh Circuit has

24 noted that at this second stage, "[l]ogically the more material

25 distinctions revealed by the evidence, the more likely the district

26 court is to decertify the collective action." Anderson v. Cagle,

27 488 F.3d 945 (11th Cir. 2007).

28      In deciding whether plaintiffs have met their stage-two

burden, courts weigh various factors that require a fact-specific inquiry.  Reed, 266 F.R.D. 446 at 449.  These factors include: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.  Id. Courts in this circuit have found that certification is not warranted in the absence of proof that plaintiffs' alleged injuries resulted from a single, unified policy.  Id. (citing Smith v. T-Mobile USA, Inc., No. 05-5274 ABC (SSx), 2007 U.S. Dist. LEXIS 60729, at *6-8 (C.D. Cal. Aug. 15, 2007); Castle v. Wells Fargo Fin., Inc., No. C-06-4347-SI, 2008 U.S. Dist. LEXIS 106703, at *5 (N.D. Cal. Feb. 20, 2008)). Nevertheless, courts have emphasized that Plaintiffs "must only be similarly -- not identically -- situated to proceed collectively." Falcon v. Starbucks, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008). Ultimately, "the decision whether to proceed as a collective or class action turns on whether this device is the superior way of resolving a controversy. The benefits to the parties of a collective proceeding need to be balanced against any prejudice to [the defendant] and any problems of judicial administration that may surface." Campanelli v. The Hershey Co., 2010 U.S. Dist. LEXIS 92364 at *14 (N.D. Cal. Aug. 13, 2010)(citation omitted).  The decision whether to decertify a collective action is within the district court's discretion.  See, e.g., Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213 (5th Cir. 1995) ("[T]he district court's application of the [legal] standard must be reviewed for abuse of discretion."); Pendlebury v. Starbucks Coffee Co., 518 F. Supp. 2d 1345, 1348-49 (S.D. Fla. 2007).

**United States District Court**
For the Northern District of California

IV.  **DISCUSSION**

  A. **Motions to Strike**

  Plaintiffs filed their two MTS on November 12, 2010.  <u>See</u>
Pl.'s First MTS; Pl.'s Second MTS.  In their First MTS, Plaintiffs
argue that the declarations of six witnesses filed in support of
Defendants' Motion to Decertify the Trainer Class should be
stricken because Defendants allegedly failed to disclose the
identities of the witnesses during discovery as required by Federal
Rule of Civil Procedure 26.  Pl.'s First MTS at 1.  Plaintiffs also
contend that the declarations by three of these witnesses lack
foundation and are irrelevant because the witnesses were employed
in California, while the Trainer Class is limited to employees who
worked outside of California.  <u>Id.</u> at 1 n. 1.  In their Second MTS,
Plaintiffs argue that the declarations of two witnesses -- Marla
Loar and Julius Soriano -- filed in support of Defendants' Motion
to Decertify the Manager Class should be stricken, again because
Defendants allegedly failed to disclose the witnesses' identities
during discovery.  Pl.'s Second MTS at 1.  In their consolidated
Opposition to Plaintiffs' motions, Defendants argue that they
disclosed the names of nearly all of the witnesses at issue during
discovery.  Defs.' Cons. MTS Opp'n at 1.  They further contend that
some of the declarations merely authenticate documents made known
to Plaintiffs during discovery.  Thus, according to Defendants, any
failure to disclose was justified and harmless.  <u>Id.</u>

  On December 6, 2010, Defendants countered with their own MTS
all declarations filed in support of Plaintiffs' Oppositions to
Defendants' Motions to Decertify.  <u>See</u> Defs.' MTS.  Defendants

1  argue that several of the 119 declarations filed by Plaintiffs

2  contain statements that contradict the declarants' prior deposition

3  or declaration testimony.  Id. at 1.  Defendants therefore contend

4  that "all of the declarations are suspect and entitled to no weight

5  whatsoever."  Id.  In response, Plaintiffs argue that none of the

6  declarants' statements contradict their prior testimony.  Pl.'s

7  Opp'n to Defs' MTS at 1.  Plaintiffs also note that Defendants' MTS

8  is procedurally improper because it violates Local Rule 7-3(c),

9  which requires that "any evidentiary and procedural objections to

10  the opposition must be contained within the reply brief or

11  memorandum."  Id. at 1; Civ. L. R. 7-3(c).  Defendants note in

12  reply that Plaintiffs' two MTS also violate Local Rule 7-3.  Defs.'

13  MTS Reply at 2.

14      Local Rule 7-3(b) requires evidentiary and procedural

15  objections to a motion to be contained within the opposition brief,

16  which is limited to twenty-five pages in length.  Civ. L. R. 7-

17  3(b).  Similarly, Local Rule 7-3(c) requires evidentiary and

18  procedural objections to an opposition to be contained within the

19  reply brief, which is limited to fifteen pages in length.  Civ. L.

20  R. 7-3(c).  The Court finds that Plaintiffs' two MTS violate Local

21  Rule 7-3(b) and Defendants' MTS violates Local Rule 7-3(c).  Both

22  parties have attempted to evade the briefing page limits by filing

23  MTS instead of fully voicing their evidentiary and procedural

24  objections in their opposition and reply briefs as required by the

25  Local Rules.  Accordingly, the Court DENIES all MTS and will only

26  address the evidentiary arguments to the extent they are raised in

27

28

the parties' briefs.[2]

## B. Evidentiary Objections Properly Raised in the Briefs

In their First Opposition, Plaintiffs raise objections "pursuant to FRCP 37" to the declarations of Jeremy Smith, Josh Morehouse, JP McFarland, Butch Cooper, and Sam Kader (Docket Nos. 363, 364, 365, 366, and 367, respectively). Pl.'s First Opp'n at 24. They contend that these witnesses were not disclosed in discovery. They also object to the declarations of Smith, Kader, and Cooper on the grounds of foundation and relevance, arguing that these witnesses have no non-California experience or knowledge.

Plaintiffs' argument that the declarations lack relevance and foundation is not persuasive. The crux of Plaintiffs' allegations is that 24 Hour denied trainers overtime pursuant to a company-wide policy that was the same at every club. Testimony of witnesses who worked at clubs in California is undeniably relevant to whether such a company-wide policy existed. However, Plaintiffs' objection to the declarations on the grounds that the witnesses' names were

---

[2] The Court is not persuaded by Plaintiffs' argument that, while Defendants' MTS is evidentiary in nature and therefore improper under the Local Rules, Plaintiffs' MTS was proper because it was "based primarily upon a self-executing Federal Rule of Civil Procedure for a discovery/disclosure violation." Pl.'s Opp'n to Defs.' MTS at 2. Rather, the Court agrees with Defendants that Plaintiffs seek to selectively apply the Local Rules to their advantage. Defs.' MTS Reply at 2. The Court notes that Plaintiffs' First MTS contains evidentiary arguments asserting that certain witnesses lacked foundation for their testimony. Pl.'s First MTS at 3. Moreover, some of the arguments that Plaintiffs now contend are not evidentiary in nature were contained in Plaintiff's Opposition brief under the heading "Evidentiary Objections." Pl.'s First Opp'n at 24. Lastly, the Court notes that Local Rule 7-3 provides that evidentiary and procedural objections must be contained within the opposition brief. Both of Plaintiffs' MTS are at least procedural in nature, as they argue that Defendants failed to disclose witnesses in violation of Fed. Rule of Civ. Proc. 26. As such, Plaintiffs' MTS, like Defendants' MTS, are in violation of the Local Rules.

not disclosed during discovery is SUSTAINED.  The declarations of
witnesses Smith, Morehouse, McFarland, Cooper, and Kader are
accordingly stricken.[3]

In their Second Opposition, Plaintiffs raise a number of
evidentiary objections buried in a lengthy footnote on the last
page of their brief, with the footnote text smaller than the 12-
point type required by Civil Local Rule 3-4(c)(2).  Pl.'s Second
Opp'n at 25 n. 21.

First, Plaintiffs object to the declaration of Julius Soriano
and attached exhibits (Docket No. 375) on the grounds that Soriano
was not disclosed as a witness during discovery.  Soriano's
declaration merely authenticates payroll records and W-2 forms that
Plaintiffs already knew existed.  Both parties listed W-2 forms and
payroll records in their initial disclosures.  The Court finds that
the failure to disclose Soriano is harmless and striking his
testimony is thus not warranted under Fed. Rule of Civ. Proc.
37(c)(1).  Accordingly, this objection is OVERRULED.

Second, Plaintiffs object to the declaration of Marla Loar and
attached exhibits (Docket No. 372) filed in support of Defendants'
Motion to Decertify the Manager Class.[4]  Plaintiffs argue that
Loar's testimony states only that the exhibits are "several
versions and/or drafts" of employee job descriptions with no

---

[3] The Court is not persuaded by Defendants' argument that including
the names and addresses of McFarland and Morehouse among a list of
over 16,000 names of potential class members satisfies the
supplemental disclosure requirements of Fed. Rule Civ. Proc. 26(e).
See Defendants' First Reply at 5 n. 2.

[4] Defendants also submitted a declaration by Marla Loar in support
of their Motion to Decertify the Trainer Class.  Loar Decl. Docket
No. 369.  Plaintiffs' Opposition to that motion did not object to
Loar's declaration.  Accordingly, Loar's declaration supporting the
Motion to Decertify the Trainer Class is not excluded.

**United States District Court**
For the Northern District of California

1  foundation for determining which are drafts and which were actually

2  implemented.  This objection is SUSTAINED.  The declaration of

3  Marla Loar (Docket No. 372) is hereby stricken.

4      Lastly, Plaintiffs object to the declaration of Scott White

5  (Docket No. 374) filed in support of Defendants' Motion to

6  Decertify the Manager Class[5] on the grounds that White has only

7  been employed since 2008 and testified that he has no knowledge of

8  24 Hour operations prior to March 2008.  His declaration attempts

9  to authenticate compensation plans for managers prior to 2008.

10 This objection is SUSTAINED on the grounds that White's testimony

11 lacks foundation.  The declaration of Scott White (Docket No. 374)

12 is hereby stricken.

13 **C. Defendants' Motion to Decertify the Trainer Class**

14     The conditionally certified trainer class is comprised of 772

15 employees and former employees who worked at hundreds of different

16 24 Hour Fitness clubs outside of California and who held any of

17 fifteen different job titles involving a personal training

18 component.[6]  Defs.' First Mot. at 5; Mar. 24, 2008 Order at 15.

19 The relevant class period is October 29, 1999 to November 10, 2008.

20 Defs.' First Mot. at 4; Pl.'s First Opp'n at 8 n. 4.

21     Plaintiffs' underlying claims allege that the members of the

22 Trainer Class were classified as "non-exempt" hourly employees, but

---

[5] As was the case with Marla Loar, Defendants also submitted a declaration by Scott White in support of their Motion to Decertify the Trainer Class.  Docket No. 370.  Plaintiffs' Opposition to that motion did not object to White's declaration.  Accordingly, White's declaration in support of the Motion to Decertify the Trainer Class is not excluded.

[6] The class includes the job titles of PT Trainer, Certified Personal Trainer ("CPT"), CPT I, CPT II, CPT III, CPT Elite, Trainer Fit Pro ("TFP"), TFP I, TFP II, TFP III, TFP Elite, FLS, Apex Tech, Fitness Instructor, and Floor Instructor.  See Mar. 24, 2008 Order at 15.

that 24 Hour Fitness failed to compensate them for any hours they worked in excess of 40 hours per week and did not pay any overtime premium. See Mar. 24, 2008 Order; Pl.'s First Opp'n at 2. In other words, Plaintiffs contend that the trainers were forced to perform "off-the-clock" tasks for which they should have, but did not, receive overtime compensation. Pl.'s First Opp'n at 2. Plaintiffs claim that this violated the FLSA, which requires overtime compensation for time worked in excess of forty hours per week. See 29 U.S.C. § 207(a)(1).

Plaintiffs argue that 24 Hour deprived trainers of overtime in three distinct ways. Id. First, Plaintiffs contend that trainers were not paid for all of the personal training-related hours, or "session hours" they worked.[7] They argue that 24 Hour's timekeeping system did not allow them to record all of the session hours they worked, which prevented them from getting paid for all of the time spent performing those personal training-related tasks. Id. at 2, 9. More specifically, they contend that trainers recorded session hours in one system, known as GMS, and FIT hours in another system. Id. According to Plaintiffs, the GMS system did not allow trainers to record the actual start and stop time of their session-related work. Id. Instead, the system automatically "presumed" that one hour's worth of work was performed for each training session, when in fact, the session-related tasks trainers

---

[7] The parties agree that the hours trainers worked were divided into two separate categories: (1) "session hours," which included time spent training clients and performing other session-related activities such as client intake, creating nutrition plans, or performing body measurements; and (2) "FIT hours," which included time spent performing all other duties, such as racking weights, cleaning, and attending meetings. Defs.' First Mot. at 6-7; Pl.'s First Opp'n at 2. Trainers were paid a higher rate for session hours than for FIT hours. Id.

United States District Court
For the Northern District of California

1   had to perform often required more than one hour to accomplish.

2   Id.

3       Second, Plaintiffs contend that trainers were not paid for all

4   of the non-session related hours, or "FIT" hours, they worked.   Id.

5   at 2.   Plaintiffs allege that the number of FIT hours each trainer

6   was allowed to record was determined not by how many FIT hours he

7   or she actually worked, but rather by a strict quota of FIT hours

8   allocated to each particular club by district-level managers.

9   Pl.'s First Opp'n at 2, 9.

10      Third, Plaintiffs contend that, prior to 2003, 24 Hour did not

11  include session hours in its calculation of hours for overtime

12  eligibility.   Id.; See also Docket No. 297 ("Pl.'s Motion for

13  Summary Judgment" at 1).   Plaintiffs further contend that, during

14  the entire class period, when 24 Hour did pay trainers overtime, it

15  included the overtime payments in the trainers' subsequent paycheck

16  instead of issuing the payments on their regular payday.   Id.

17  Plaintiffs claim that this violated the provisions of 29 C.F.R.

18  § 778.106, which require that overtime compensation be paid on the

19  employees' "regular payday."   Id.

20      In opposition to the instant motions for decertification,

21  Plaintiffs argue that they have provided substantial evidence

22  demonstrating that all class members were similarly situated, and

23  that proceeding with a collective action to try their claims is

24  therefore proper.   Pl.'s First Opp'n at 2.

25      Defendants argue for decertification on the grounds that

26  Plaintiffs have failed to identify a company-wide decision, policy,

27  or plan common to all putative class members relating to how

28  trainers were paid for time worked.   Defs.' First Mot. at 2.   They

United States District Court
For the Northern District of California

13

**United States District Court**
For the Northern District of California

argue that: (1) any alleged off-the-clock work was a function of an individual trainer's unique circumstances, such as his or her job title and experience level and the practices of the club managers at the particular club where he or she worked; (2) Plaintiffs recorded their hours via different timekeeping systems and were paid according to different compensation plans over the course of the class period -- in particular, the dual timekeeping system of which Plaintiffs complain was only used until 2003 and thus impacted only some class members; (3) some or all trainers, during some or all periods of their employment, were exempt from FLSA overtime requirements based on the "commissioned retail sales exemption" set forth in §7(i) of the FLSA, 29 U.S.C. § 207(i); and (4) fairness dictates decertification because collective treatment would deprive 24 Hour of due process.  Defs.' First Mot. at 2-3.

1. <u>**Disparate Factual and Employment Settings of the Individual Class Members**</u>

When determining whether a plaintiff has met its burden of producing substantial evidence to show that putative class members are similarly situated, the first factor courts consider is the degree of similarity among plaintiffs' factual and employment settings.  <u>See</u>, <u>e.g.</u>, <u>Reed</u>, 266 F.R.D. at 449.  When conducting this inquiry, courts consider such factors as whether plaintiffs had differing job titles or duties, worked in different geographic locations, worked under different supervisors, or allege different types of violative conduct.  <u>Id.</u> (noting, "[d]ecertification is appropriate where plaintiffs are subject to varying work conditions in different work locations or under different supervisors"); <u>Moss</u>

14

v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000) ("The first factor assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary."); Molina v. First Line Solutions LLC, 566 F.Supp.2d 770, 787 (N.D. Ill. 2007) (considering "whether plaintiffs had differing job titles or assignments, worked in different locations, were under different supervisors or decision makers, or allege different types of violative conduct"). Courts in several circuits, including this one, also evaluate whether plaintiffs have provided substantial evidence that their claims arise out of a single policy, custom or practice that led to FLSA violations. Reed, 266 F.R.D. 446 at 450.

    a. Job Titles and Duties

    The Trainer Class includes persons who held fifteen different job titles over a ten-year period. Plaintiffs contend that, despite this variance, all putative class members shared the same primary job duties. Pl.'s First Opp'n at 7. They assert that all trainers (1) physically exercised clients; (2) performed other session-related activities such as documenting medical and food histories and body measurements, developing nutrition plans, and following up with clients; and (3) performed non-training related duties, such as sales, re-racking weights, and cleaning. Id.

    However, testimony of class members shows that the job duties of trainers varied somewhat depending on factors such as each trainer's job title, the time period during which he or she worked, and the certification levels he or she had earned. Deposition testimony of Plaintiff Dennis Sciacca shows that not all job titles encompassed by the Trainer Class were actually permitted to train clients. Sciacca testified that trainers who held the title of

**United States District Court**
For the Northern District of California

1  "Floor Instructor" were not permitted to train clients at all.

2  Kloosterman Decl. ¶ 24, Exh. 19 (Sciacca Dep. 29:1-8) (stating "a

3  floor instructor is not allowed to conduct personal training

4  sessions").[8]  Thus, the duties of some Plaintiffs were dramatically

5  different from the duties of others, as they did not include

6  physically exercising clients or performing other session-related

7  tasks at all.

8       Moreover, the duties trainers were required to perform varied

9  over the course of the ten-year claims period.  Twenty-Four Hour

10  repeatedly changed the types of personal training programs it

11  offered between 1999 and 2008.  Lyon Decl. ¶¶ 7-9.[9] For example,

12  prior to 1999, the training programs offered by 24 Hour did not

13  include any nutritional component.  Id.  Then, from 1999 to 2004,

14  24 Hour offered some personal training programs that did include a

15  nutritional component and others that did not.  Id.  During this

16  five-year period, only trainers who had earned a particular

17  certification were allowed to service clients who wanted their

18  personal training sessions to include a nutritional component.

19  Kloosterman Decl. ¶ 24, Exh. 19 (Sciacca Dep. 33:16-34:2).  Thus,

20  prior to 2004 the duties of some Plaintiffs did not include

21  documenting food histories and developing nutrition plans.

22  Trainers who did not work for the company when nutrition plans were

23  offered, or whose clients did not opt for those plans, will be hard

24  pressed to contend they were forced to develop nutrition plans off

---

25  [8] John Kloosterman ("Kloosterman"), attorney for Defendants, filed
26  a declaration with accompanying exhibits in support of Defendants'
   Motion to Decertify the Trainer Class.  ("First Kloosterman
27  Decl.").  Docket Nos. 381-384.
   [9] Josh Lyon ("Lyon"), Senior Director of Fitness for 24 Hour
28  Fitness, submitted a declaration in support of Defendants' Motion
   to Decertify the Trainer Class.  Docket No. 368.

the clock.  This is an especially significant disparity in job duties because developing nutrition plans is one of the primary session-related activities that Plaintiffs claim they were forced to perform off the clock.

The evidence thus reflects that class members shared some but not all of the same job duties.  The differences in trainers' duties based on their job title, training certifications, and the types of programs offered at the time of their employment would make adjudicating Plaintiffs' off-the-clock claims with representative proof difficult but, taken alone, may not require decertification.  However, when combined with the other disparate factual and employment settings and individualized defenses below, decertification becomes necessary.

b. Common Policy and Supervision

"To proceed as a collective action, Plaintiffs must present substantial evidence of a common policy, plan, or scheme of permitting or requiring uncompensated off-the-clock work. An allegation of an overarching policy is generally insufficient; plaintiffs must produce substantial evidence of a single decision, policy or plan." Reed, 266 F.R.D. at 458 (internal citations omitted).  Plaintiffs have failed to produce substantial evidence that they were compelled to perform off-the-clock work pursuant to a common policy, plan, or scheme.  Rather, the evidence shows that 24 Hour's official policy was to pay its employees for all hours worked.  While Plaintiffs offer substantial evidence that many trainers did perform off-the-clock work, the evidence indicates that the decisions of individual club-level managers, not a company-wide policy, were the causal factor.

It is uncontested that 24 Hour had an official written policy requiring all nonexempt employees to record all of their work time and providing that employees would be paid for overtime in accordance with state and federal law. The employee handbooks issued to every employee contained this policy. <u>See</u> Loar Decl., ¶¶ 2-5, Exhs. 1-4.[10] Additionally, during the years in which paper timesheets were used (until November 2003), each time sheet required employees to initial their total hours and swear to their accuracy. Kloosterman Decl. ¶ 8, Exh. 3 (Kathleen Busick Dep. 156: 18-25, Exh. 8). The timesheets warned employees against under reporting their hours. <u>Id.</u>

One of Plaintiffs' central allegations is that trainers were not paid for all of the FIT hours they worked because each club was given a quota of FIT hours it could not exceed. Pl.'s First Opp'n at 2, 9. However, testimony of multiple witnesses shows that the manner in which FIT hours were distributed amongst trainers was determined on a club-by-club basis, typically by the Fitness Manager of that club. For example, Plaintiff Lawrence Srubas testified that when he worked under Fitness Manager Tony Kuo, he was not paid for some of the FIT hours he worked, but when Kuo was replaced by Eric Hood, Srubas was paid for all of his FIT hours. Kloosterman Decl. ¶ 26, Exh. 19 (Srubas Dep. 52:5-19; 53:25-54:9). Srubas continued to be paid for all FIT hours worked under the subsequent managers who succeeded Hood. <u>Id.</u> Other class members testified that their particular club-level managers told them not

_____

[10] Marla Loar ("Loar"), Senior Director of Human Resources for 24 Hour Fitness, submitted a declaration in support of Defendants' Motion to Decertify the Trainer Class. Docket No. 369.

United States District Court
For the Northern District of California

to record certain hours worked, but no class member points to any company-wide policy or decision underlying the club-level manager's directions.  See Defs.' First Mot. at 16.  Indeed, Plaintiffs fail to point to any testimony stating that working off the clock was part of a company-wide policy or directive.  Instead, Plaintiffs maintain that the policy of allocating a certain number of FIT hours to each club created incentives for club-level managers to make trainers work off the clock.  Pl.'s First Opp'n at 14.  Such allegations are insufficient to constitute evidence of a common decision, policy, or plan, especially in light of 24 Hour's formal written policies to the contrary.  See Brechler v. Qwest Communications Intl., 2009 U.S. Dist. LEXIS 24612 at *9 (D. Az. Mar. 17, 2009) (decertifying a class where plaintiffs did not produce evidence of a unified policy but instead "relie[d] on a subtler system of pressure and coercion that, ultimately, appears to have been backed or not by individual managers"); Proctor v. Allsups Convenience Stores, Inc., 250 F.R.D. 278, 282 (N.D. Tex. 2008) (finding that incentives created by allocating a certain number of work hours per week to individual stores did not constitute a single decision, policy, or plan causing putative class members to work off the clock).[11]

---

[11] Plaintiffs rely heavily on Falcon v. Starbucks, 580 F. Supp. 2d 528 (S.D. Tex. 2008).  In Falcon, the court certified a class of Starbucks employees who alleged that "despite the official 'time worked is time paid' policy, [Starbucks] enforced an unwritten policy of encouraging or allowing [class members] to work off the clock in order to control overtime costs."  Id. at 532.  As noted by Defendants, however, the Falcon court applied a different legal standard than that used by courts in this circuit.  Defs.' First Reply at 3.  The Falcon court rejected the requirement, which courts in this circuit have adopted, that plaintiffs must show they were affected by a single, unified policy or plan in order to proceed collectively under section 216(b) of the FLSA.  Id. at 535.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    c. <u>Method of calculating overtime</u>

2    Plaintiffs assert that all class members were subject to a

3    "common method for calculating overtime" which violated the FLSA.

4    Pl.'s First Opp'n at 10.  They allege that 24 Hour's payroll

5    department did not include personal training session hours when

6    calculating hours worked for overtime eligibility, used the wrong

7    procedure to calculate the rate of overtime pay trainers were due,

8    and paid overtime compensation during the pay period after it was

9    due.  <u>Id.</u>  However, Plaintiffs concede that, as shown by the

10   testimony of 24 Hour designee Kathleen Busick, 24 Hour changed

11   these practices in November of 2003.  <u>Id.</u>  The class period runs

12   from October 1999 to November 2008. Thus, one of Plaintiffs' main

13   theories of liability does not apply to nearly half of the claims

14   period.  Class members who worked after November 2003, therefore,

15   are not similarly situated to class members who worked before

16   November 2003 with regard to Plaintiffs' overtime calculation

17   allegations.  Certifying the Trainer Class would result in an

18   overbroad class containing both injured and uninjured parties with

19   regard to one of Plaintiffs' central claims.  Courts are reluctant

20   to certify such overbroad classes.  <u>See</u> <u>In re Wells Fargo Home</u>

21   <u>Mortg. Overtime Pay Litig.</u>, 268 F.R.D. 604, 612 (N.D. Cal. 2010).

22   d. <u>Compensation plans</u>

23   Similarly, Plaintiffs admit that 24 Hour used a variety of

24   different compensation plans over the course of the ten-year class

25   _____

26   Moreover, the plaintiffs in <u>Falcon</u> all held the same job title, and
     the class period was only three years.  Here, Plaintiffs held
27   fifteen different job titles over a ten-year period.  Indeed,
     Plaintiffs point to no case wherein a comparable number of
28   plaintiffs over a comparably long class period were found to be
     similarly situated under FLSA § 216(b).

period.  Nevertheless, Plaintiffs contend that all of these plans shared the common feature of preventing trainers from recording all of their hours worked.  Pl.'s First Opp'n at 10-11.  Plaintiffs point to a variety of features from 24 Hour compensation plans that allegedly resulted in trainers having to perform off-the-clock work.  Id.  However, they do not specify when each of these compensation plan features was in effect, instead leaving the Court to reconstruct the timeline.  Id.

The Court agrees with Defendants that this hodgepodge of allegations only calls attention to the fact that Plaintiffs are unable to identify a single policy, plan, or decision which required them to work off-the-clock.  Defs.' First Reply at 6. Moreover, because the compensation plans have materially changed throughout the ten-year class period, a jury would need to review the specific compensation plan that governed each employee's work period in order to evaluate each class member's claims.  The need for such individualized inquiries militates in favor of decertification.

In light of the above differences among the experiences of class members, the Court finds that the balance of class members' factual and employment settings -- the first factor in determining whether Plaintiffs are similarly situated -- weighs in favor of decertification.

**2. Individualized Defenses**

The second factor courts consider on decertification is whether the defendant asserts defenses that would require individualized proof.  Reed, 266 F.R.D. at 460.  Here, Defendants argue as a key defense that some or all of the putative class

United States District Court
For the Northern District of California

1  members were exempt from overtime under the commissioned retail

2  salesperson exemption set forth in FLSA § 7(i).  Defs.' First Mot.

3  at 21.  Section 7(i) creates an exemption from overtime

4  requirements for employees who work in a retail or service

5  establishment if: (1) the employee's regular rate of pay during a

6  workweek exceeds one and one-half times the minimum wage; and (2)

7  more than half of the employee's compensation for a representative

8  period (not less than one month) represents commissions on goods or

9  services.  29 U.S.C. § 207(i).

10  Courts have noted that § 7(i) is "a highly individualized

11  defense because its application requires week-by-week and other

12  periodic calculations . . . specific to each individual Plaintiff

13  and his or her particular circumstances." Johnson v. TGF Precision

14  Haircutters, Inc., 2005 U.S. Dist. LEXIS 44259 at *27 (S.D. Tex.

15  Aug. 17, 2005) (noting that "the § 7(i) defense weighs heavily in

16  favor of decertification").  The FLSA takes a single workweek as

17  its standard in determining the applicability of the exemption.  29

18  C.F.R. § 778.104.  Thus, "it is . . . necessary to determine the

19  hours worked and the compensation earned by . . . commissioned

20  employees on a weekly basis." Id.; Johnson, 2005 U.S. Dist. LEXIS

21  44259 at *29 n. 16.

22  Twenty-Four Hour's trainer compensation plan documents show

23  that trainers earned commissions for sales of personal training

24  sessions and/or retail supplements.  White Decl. ¶ 2, Exhs. 1-11.[12]

25

26  [12] Scott White ("White"), Senior Vice President of Total Rewards
for 24 Hour filed declarations in support of both of Defendants'

27  decertification motions.  As explained in note 5, supra, his
declaration filed in support of Defendants' Motion to Decertify the

28  Manager Class is excluded for lack of foundation.  His declaration
in support of Defendants' Motion to Decertify the Trainer Class is

22

1   For example, the 1999 "Trainer Fit-Pro/Personal Trainer/Floor
2   Supervisor/Floor Instructor Compensation Plan" provided that all
3   trainers received a ten percent commission on each training session
4   he or she sold and a ten percent commission on all nutritional
5   supplements he or she sold.  Id., Exh. 1.  In addition, trainers
6   holding the title "Personal Trainer" or "Trainer Fit Pro" received
7   a fixed percentage of the cost of each training session they
8   conducted.  Id.  The details of the commission compensation system
9   varied over the course of the class period.  Id.  Payroll records
10  show that some of the putative class members received more than
11  fifty percent of their compensation from commissions during some
12  pay periods.  Kloosterman Decl. ¶ 8, Exh. 3 (Busick Dep. 126:23-
13  127:8, Exh. 4); Kloosterman Decl. ¶¶ 6-7, Exhs. 1 and 2 (payroll
14  records for Plaintiffs John Davidson and Louis Ortiz).

15      Here, as in Johnson, determining whether the § 7(i) defense
16  applies to members of the putative class would require a highly
17  individualized inquiry and could not be accomplished by common
18  proof.  The FLSA regulations make clear that the analysis must be
19  performed for each individual employee on a week-by-week basis.  29
20  C.F.R. § 778.104.  Adding to the complexity in this case is the
21  fact that trainers received various wages and various commissions
22  depending on factors such as their experience level,
23  certifications, and the time period during which they worked.
24  Accordingly, "[t]he proof required to establish these
25  individualized § 7(i) exemption defenses would become the

26

27  not excluded, as Plaintiffs raised no objection to this declaration
    in their moving papers.  Accordingly, all references to "White
28  Decl." refer to the declaration filed in support of Defendants'
    Motion to Decertify the Trainer Class.

**United States District Court**
For the Northern District of California

1  overwhelming focus of a trial," resulting in the equivalent of

2  mini-trials for each Plaintiff.  <u>Johnson</u>, 2005 U.S. Dist. LEXIS

3  44259 at *28.

4      Plaintiffs contend that the payments Defendants refer to as

5  commissions were not in fact bona fide commissions under § 7(i),

6  and that the § 7(i) defense could be defeated via common proof of

7  this fact.  Pl.'s First Opp'n at 19.  This argument is unavailing.

8  The argument is premature at this stage of the case; whether

9  plaintiffs actually meet the criteria of an FLSA exemption is

10 irrelevant to a determination of whether they are similarly

11 situated.  <u>Pfohl v. Farmers Ins. Group</u>, 2004 U.S. Dist. LEXIS 6447

12 at *27 n. 5 (C.D. Cal. Mar. 1. 2004); Pendlebury v. Starbucks, 518

13 F. Supp. 2d 1345, 1353 (S.D. Fla. 2007) (noting, "an evaluation on

14 the merits of the exemption is not appropriate at [the

15 decertification stage]").  Even so, Plaintiffs' argument is

16 unpersuasive on the merits.  Plaintiffs note that in order to

17 qualify as a commission under the § 7(i) exemption, courts have

18 required a payment to be (1) calculated as a percentage of the sale

19 price to the customer, and (2) de-coupled from the amount of time

20 spent on the task for which the commission is paid. Pl.'s First

21 Opp'n at 19 (citing <u>Huntley v. Bonner's, Inc.</u>, 2003 U.S. Dist.

22 LEXIS 26643 at *8-9 (W.D. Wash. 2003); <u>Yi v. Sterling Collision</u>

23 <u>Ctrs., Inc.</u>, 480 F.3d 505, 509 (7th Cir. 2007)).  The compensation

24 plans for at least some of the years encompassed by the class

25 period appear to the Court to meet these criteria.  Trainers were

26 paid a percentage of the cost of each training package sold, a

27 percentage of the cost of all supplements sold, and a percentage of

28 the cost of each training session conducted.  <u>See</u>, <u>e.g.</u>, White

**United States District Court**
For the Northern District of California

1  Decl., Ex. 1.  To the extent that later compensation plans varied,
2  this reinforces the difficulty of determining via common proof
3  whether particular employees qualified for the exemption across a
4  ten-year period.

5      **3. <u>Fairness and Procedural Considerations</u>**

6      "In evaluating fairness and procedural considerations, the
7  Court must consider the primary objectives of a collective action:
8  (1) to lower costs to the plaintiffs through the pooling of
9  resources; and (2) to limit the controversy to one proceeding which
10  efficiently resolves common issues of law and fact that arose from
11  the same alleged activity." <u>Reed</u>, 266 F.R.D. at 458 (citing
12  <u>Johnson</u>, 2005 U.S. Dist. LEXIS 44259 at *7). However, "the Court
13  must also determine whether it can coherently manage the class in a
14  manner that will not prejudice any party." <u>Id.</u>  In other words,
15  "the court must balance the benefits of a reduction in the cost to
16  individual plaintiffs and any increased judicial utility that may
17  result from the resolution of many claims in one proceeding with
18  the cost of any potential detriment to the defendant and the
19  potential for judicial inefficiency that could stem from collective
20  treatment." <u>Wilks v. Pep Boys</u>, 2006 U.S. Dist. LEXIS 69537 at *26
21  (M.D. Tenn. Sep. 26, 2006).

22      Here, given Plaintiffs' varying factual and employment set-
23  tings and the lack of substantial evidence that Plaintiffs were
24  subjected to a uniform decision, policy or practice of requiring
25  trainers to perform work off-the-clock, the jury will have to make
26  individualized determinations as to factors such as what duties
27  each trainer performed, what compensation plan each trainer worked
28  under, the method of calculating overtime used by 24 Hour during

25

each trainer's employment period, and whether each particular trainer qualified as exempt from overtime under § 7(i).  The need for such individualized inquiries would make proceeding by representative testimony impracticable.  The Court is persuaded that, given the facts of this case, proceeding collectively would be "unmanageable, chaotic, and counterproductive." <u>Reed</u>, 266 F.R.D. at 462.

### 4. <u>Proceeding by Subclasses</u>

Plaintiffs suggest that any disparities among the factual circumstances of class members can be dealt with by dividing the Trainer Class into subclasses.  They cite several off-the-clock cases in which courts have divided into subclasses plaintiffs whose factual circumstances vary too widely to permit them to proceed as a single class.  However, Plaintiffs do not propose, and the Court cannot envision, a partition of the Trainer Class that would result in subclasses of similarly situated Plaintiffs.  Plaintiffs' experiences varied across so many dimensions -- the compensation plan in place during their employment; the method used to calculate overtime during their employment; their job title and certification; and the method of distributing FIT hours used at their particular club, etc. -- that neatly dividing them into similarly situated subclasses would be impracticable.

### D.   <u>Defendants' Motion to Decertify the Manager Class</u>

The conditionally certified Manager Class is comprised of 430 employees and former employees of 24 Hour Fitness who held the job titles of General Manager ("GM"), Operations Manager ("OM"), or

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  Fitness Manager ("FM") outside of California.[13]  Defs.' Second Mot.

2  at 3; Mar. 6, 2007 Order at 16.  The relevant class period is

3  January 31, 1998 to July 24, 2008.  Id.

4       Plaintiffs' theory of liability with regard to the Manager

5  Class is straightforward.  They allege that 24 Hour misclassified

6  the managers as exempt from the overtime requirements of the FLSA

7  and therefore did not pay them overtime as required by FSLA

8  § 207(a)(1).  In their Opposition to Defendants' Motion to

9  Decertify the Manager Class, Plaintiffs argue that they have

10 provided substantial evidence that all class members were similarly

11 situated with regard to 24 Hour's alleged misconduct and that a

12 collective action to try their claims is therefore proper.  Pl.'s

13 Second Opp'n at 2.

14      Defendants argue that Plaintiffs cannot meet their burden of

15 proving that the class members are similarly situated because: (1)

16 each of the three manager classifications has a markedly different

17 job description and set of responsibilities; (2) deposition

18 testimony shows that even managers with the same position had

19 different duties and practices based on the particular club he or

20 she worked in, the region and time period in which he or she

21 worked, the management style and level of oversight from his or her

22 superiors, and the manager's own level of experience and training;

---

23

24  [13] Twenty-Four hour divides its clubs into separate business
    functions, or "silos."  Over time, their model has shifted from two
25  silos: production (encompassing sales and fitness) and operations;
    to three silos: sales (sales of membership agreements), operations
26  (administering club operations), and fitness (promotions of health
    and physical training and sale of training packages).  Generally
27  speaking, though not always, there is one manager in each club
    overseeing each silo: GMs oversee sales; OMs oversee operations;
28  and FMs oversee the promotion of health and fitness and the sale of
    personal training packages.  Defs.' Second Mot. at 4.

**United States District Court**
For the Northern District of California

1   (3) individualized defenses apply to each manager's claims --

2   namely, 24 Hour claims that each manager falls under one of the

3   exemptions from overtime established by FLSA; and (4) fairness

4   dictates decertification.  Defs.' Second Mot. at 1-2.

5       Again, in evaluating whether decertification is warranted, the

6   Court considers whether Plaintiffs have produced "substantial

7   evidence to demonstrate that they are similarly situated." <u>Reed</u>,

8   266 F.R.D. 446 at 449.  We again consider: (1) the disparate

9   factual and employment settings of the individual plaintiffs; (2)

10  the various defenses available to defendants with respect to the

11  individual plaintiffs; and (3) fairness and procedural

12  considerations, noting that courts in this circuit have found that

13  certification is not warranted in the absence of proof that

14  plaintiffs' alleged injuries resulted from a single, unified

15  policy.  <u>Id.</u>  Here, each factor weighs in favor of decertification.

16      **1. <u>Disparate Factual and Employment Settings of the Individual</u>**

17          **<u>Class Members</u>**

18      When comparing the factual and employment settings of class

19  members as part of a similarly situated inquiry, courts consider

20  such factors as whether plaintiffs had differing job titles or

21  duties, worked in different geographic locations, worked under

22  different supervisors, or allege different types of violative

23  conduct.  <u>Reed</u>, 266 F.R.D. at 449.

24      Plaintiffs advance two main theories for why their factual and

25  employment settings warrant a finding that they are similarly

26  situated.  They contend that: (1) 24 Hour admits that the class

27  members were similarly situated; and (2) class members performed

28  primarily nonexempt tasks while true managerial authority was

**United States District Court**
For the Northern District of California

1  vested in their superiors at the district level.

2      a. <u>Plaintiffs argue that 24 Hour admits class members were</u>

3         <u>similarly situated</u>

4      Plaintiffs have two theories for how 24 Hour admits that

5  members of the Manager Class were similarly situated.  First,

6  Plaintiffs argue that the deposition testimony of 24 Hour's Fed.

7  Rule Civ. Proc. 30(b)(6) designee, Todd Bruhn, conclusively

8  indicates that managers <u>within</u> each silo (GMs, OMs, and FMs) had

9  the same duties and responsibilities as other managers in the same

10 position across all clubs, regions, and states, throughout the

11 entire claims period.  Pl.'s Second Opp'n at 1.

12     Second, Plaintiffs argue that 24 Hour classified managers as

13 exempt based solely upon their job title without performing any

14 sort of individualized inquiry into each particular manager's job

15 duties.  According to Plaintiffs, this "blanket" classification

16 policy belies Defendants' argument that individualized inquiries

17 would be needed at trial to determine whether each individual class

18 member was exempt from overtime.  <u>Id.</u> at 6-8.

19     As to Plaintiffs' first theory -- that Bruhn's deposition

20 testimony is sufficient to support a finding that all class members

21 are similarly situated -- Defendants offer several persuasive

22 rebuttals.  First, Defendants note that Bruhn's testimony says

23 nothing about the job duties of managers across silos.  In other

24 words, Bruhn's testimony is silent as to whether a GM's duties

25 resembled those of an OM or an FM.  Defs.' Second Reply at 5.

26 Second, Defendants note that Bruhn only testified that managers

27 within each silo "would have" or "should have" performed the same

28

**United States District Court**
For the Northern District of California

1   duties, not that they actually did so.  <u>See</u> Karczag Decl.[14] ¶ 11,

2   Exh. 126 (Bruhn Dep. 136:16-137:11).  By contrast, Defendants point

3   to deposition testimony, discussed below, from numerous class

4   members suggesting that managers' job duties varied both within and

5   across silos.  In light of the testimony of actual class members as

6   to differences among managers' job duties, both within and across

7   silos, Defendants contend that Bruhn's testimony that managers

8   within each silo "should have" had the same duties is not

9   substantial evidence that all class members are similarly situated.

10  <u>Id.</u>  The Court agrees with Defendants.

11      Plaintiffs' deposition testimony shows that the job duties of

12  managers varied significantly across silos.  Plaintiff Michael

13  Marino testified that among the main duties of an OM were: "making

14  sure the front desk was filled"; "driv[ing] revenue from supplement

15  tables"; "paperwork duties"; and being "responsible for the kids

16  club".  Second Kloosterman Decl.[15] ¶ 27, Exh. 22 (Marino Dep. 55:14

17  - 57:24).  By contrast, other class members testified that the

18  primary job duties of FMs included: assigning FIT hours to

19  trainers[16]; overseeing trainers[17]; performing personal training

20  sessions with clients[18]; selling of personal training plans, and

21  assisting GMs in membership sales[19].  By comparison, the primary

22  job duties of a GM were selling memberships, setting up corporate

23

24  [14] Justin P. Karczag ("Karczag"), attorney for Plaintiffs, filed a
    declaration in support of Plaintiffs' Oppositions to Defendants'
25  Motions to Decertify the Trainer Class and the Manager Class.
    [15] John Kloosterman, attorney for Defendants, filed a declaration
26  support of Defendants' Motion to Decertify the Manager Class.
    Docket No. 376. ("Second Kloosterman Decl.").
27  [16] <u>Id.</u> at ¶ 23, Exh. 18 (Kaipi Dep. 70:2-6)
    [17] <u>Id.</u> at ¶ 27, Exh. 22 (Marino Dep. 58:23-60:10)
28  [18] <u>Id.</u> at ¶ 34, Exh. 29 (Reiter Dep. 105:10-19)
    [19] <u>Id.</u> at ¶ 32, Exh. 27 (Ra'Oof Dep. 55:13-56:9, 63:4-22)

30

United States District Court
For the Northern District of California

1   accounts,[20] club maintenance and cleanliness[21], or as Bobby DeSoto

2   put it, "sell, sell, sell."[22]

3      Similarly, Plaintiffs' deposition testimony shows that even

4   managers within the same silo often performed substantially

5   different functions. For example, managers in the same silo

6   testified to vastly different roles in the hiring process. FM

7   Louis Ortiz testified that his involvement in the hiring process

8   consisted solely of saying hello to someone dropping off an

9   application and reporting the exchange to his district manager. If

10   he ever sat in on an interview, he did not say anything. Id. at ¶

11   30, Exh. 25 (Ortiz Dep. 77:21-80:25). By contrast, FM Dennis

12   Sciacca testified that he asked candidates specific questions and

13   conveyed to the district manager his opinions as to whether the

14   applicant could effectively motivate others, build rapport, and put

15   people at ease. Id. at ¶ 37, Exh. 32 (Sciacca Dep. 120:5-10;

16   124:18-22).

17      Managers in the same silo also testified to substantially

18   different roles in disciplining subordinates. For example, GM

19   William Clunn took part in the termination of an employee,

20   including completing the termination documents, issuing verbal

21   warnings for conduct violations, and reviewing the paperwork with

22   Human Resources. Id. at ¶ 8, Exh. 3 (Clunn Dep. 67:17-70:17). By

23   contrast, GM Cindy Magnani testified that she never had to

24   discipline anyone over her twelve-year career. She believed that

25   discipline was the responsibility of OMs and district managers.

26   Id. at ¶ 26, Exh. 21 (Magnani Dep. 68:21-69:5).

27   ―――――――――――

28
[20] Id. at ¶ 32, Exh. 27 (Ra'Oof Dep. 129: 14-24)
[21] Id. at ¶ 7, Exh. 2 (Beauperthuy Dep. 28:20-29:1)
[22] Id. at ¶ 12, Exh. 7 (DeSoto Dep. 87:25)

**United States District Court**
For the Northern District of California

1   The above examples are mere excerpts of an extensive

2   comparison of class member deposition testimony presented by

3   Defendants that shows substantial differences in the core job

4   duties performed by managers within each silo.   <u>See</u> Defs.' Second

5   Mot. at 11.  As noted by Defendants, the testimony shows that for

6   every manager who says one thing about his or her job duties and

7   responsibilities, another says the opposite.  Defs.' Second Mot. at

8   1.  In light of this testimony by actual class members

9   demonstrating the differences in their job duties, 24 Hour designee

10  Bruhn's testimony that managers within each silo "should have"

11  performed the same duties is insufficient to support a finding that

12  Plaintiffs were similarly situated.  The discrepancies between the

13  duties actually performed by class members weigh in favor of

14  decertification.

15     Plaintiffs next argue that Defendants' use of a uniform

16  "blanket" classification policy that categorized each manager as

17  exempt from overtime based solely on the manager's job title

18  amounts to an admission by 24 Hour that all managers with the same

19  job title performed the same duties and were similarly situated.

20  Pl.'s Second Opp'n at 6.  The Ninth Circuit recently made clear,

21  however, that an analysis of what job duties each employee actually

22  performed is more probative than an employer's classification

23  policy when considering whether plaintiffs are similarly situated.

24  In <u>In re Wells Fargo Home Mortgage Litigation</u>, the plaintiffs

25  alleged that they were misclassified as exempt and argued that

26  Wells Fargo had uniform policies regarding their classification.

27  <u>Wells Fargo</u>, 268 F.R.D. 604, 609 (N.D. Cal. 2010), <u>on remand from</u>

28  571 F.3d 953 (9th Cir. 2009).  In response, Wells Fargo argued that

32

**United States District Court**
For the Northern District of California

individualized inquiries into each plaintiff's job duties were
needed to determine whether he or she qualified for various
overtime exemptions.  <u>Id.</u>  The district court rejected Wells
Fargo's argument and certified a Rule 23 class.  The Ninth Circuit
reversed, stating:

> The fact that an employer classifies all or most
> of a particular class of employees as exempt does
> not eliminate the need to make a factual
> determination as to whether class members are
> actually performing similar duties.

<u>Wells Fargo</u>, 571 F.3d 953, 959 (9th Cir. 2009).  On remand, the
district court denied certification, finding that individualized
inquiries into each class member's job duties were required despite
the company's blanket classification policy.  <u>Wells Fargo</u>, 268
F.R.D. at 611.

Although <u>Wells Fargo</u> dealt with a Rule 23 class action, other
courts in this district have extended its reasoning to FLSA cases.
<u>See</u>, <u>e.g.</u>, <u>Hernandez v. United Auto Credit Corp.</u>, No. C-08-03404,
2010 WL 1337702 at *7 (N.D. Cal. Apr. 2, 2010) (granting
decertification in a FLSA action because, despite an internal
policy classifying all class members as exempt, the actual duties
performed by the class members varied significantly).  The case
Plaintiffs cite for the contrary proposition, <u>Nerland v. Caribou
Coffee</u>, 564 F. Supp. 2d 1010, 1023-24 (D. Minn. 2007) is from
outside this circuit and does not control.

    b. <u>Plaintiffs contend that members of the Manager Class did
not have true management authority</u>

In their analysis of Plaintiffs' factual and employment
settings, Plaintiffs contend that 24 Hour vested true management
authority in district level, not club-level, managers.  Pl.'s

33

United States District Court
For the Northern District of California

Second Opp'n at 2, 9.  They argue that the primary job duties of
the Manager Class were nonexempt tasks such as sales, cleaning, and
clerical functions.  Id. at 11.  In essence, Plaintiffs appear to
be arguing that their job duties are similar because they are all
non-managerial in nature.  Even if Plaintiffs are correct that the
primary duties of class members were non-managerial, that would not
be enough to support a finding that they are similarly situated.
Rather, Plaintiffs must show that there was a substantial level of
commonality among the allegedly non-exempt duties they performed.
As discussed above, however, deposition testimony from class
members illustrates significant differences among the job duties of
managers both within the same silo and across silos.

Moreover, there is substantial deposition testimony to belie
Plaintiffs' argument that all class members performed primarily
non-exempt tasks.  For example, Bruhn testified that class members
were able to hire, able to recommend termination subject only to HR
approval, and that they all primarily engaged in exempt duties and
were properly classified as exempt.  Third Kloosterman Decl.[23] ¶ 5,
Exh. B (Bruhn Dep. 26:8-27:15, 33:8-16, 103:17-104:8).  Testimony
of some class members also suggests that they engaged in exempt
activities.  For example, FM Sciacca, OM Dillon, and GM DeSoto
testified that they participated in the hiring process.  Second
Kloosterman Decl. ¶ 14, Exh. 9 (Dillon Dep. 88:2-90:23); Id. at ¶
12, Exh. 7 (DeSoto Dep. 74:16-75:24); Id. at ¶ 37, Exh. 32 (Sciacca
Dep. 120:5-10; 124:18-22; 169:9-23).  FM Spencer, GM Clunn, and OM
Pieske testified that they participated in terminating employees.

---

[23] John Kloosterman, attorney for Defendants, filed a declaration
in support of Defendants' Second Reply.  ("Third Kloosterman
Decl.").

34

United States District Court
For the Northern District of California

Id. at ¶ 31, Exh. 26 (Pieske Dep. 76:19-77:11; 115:5-7); Id. at ¶ 8, Exh. 3 (Clunn Dep. 67:17-70:17); Id. at ¶ 38, Exh. 33 (Spencer Dep. 76:18-77:10).  The Court notes, however, that the substantive issue of whether class members qualified as exempt from FLSA overtime requirements is not before the court at this stage. Rather, the issue before the Court is simply whether this case should proceed as a collective action.  See Pfohl, 2004 U.S. Dist. LEXIS 6447 at *21 (C.D. Cal. Mar. 1, 2004).  The substantial disparities among Plaintiffs' job duties weigh in favor of decertification.

### 2. Individualized Defenses

The second factor courts consider on decertification is whether the defendant asserts defenses that would require individualized proof.  Reed, 266 F.R.D. at 460. Here, Defendants' primary defense is that Plaintiffs were properly classified as exempt employees and not entitled to the overtime compensation they seek to recover.  Defs.' Second Mot. at 18.  Under section 213(a)(1), employers are not required to provide overtime benefits to any employee in a bona fide executive[24], administrative[25], or

---

[24] Employees meet the executive exemption when: (1) they receive a salary of not less than $455 per week; (2) their primary duty is management of the enterprise in which they are employed or of a customarily recognized department or subdivision thereof; (3) they customarily and regularly direct the work of two or more employees; and (4) they have the authority to hire or fire other employees, or their suggestions as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.  29 C.F.R. section 541.100(a).

[25] Employees meet the administrative exemption if they receive a salary of not less than $455 per week, and their primary duties consist of: (1) the performance of office or non-manual work directly related to the management or general business operations of the employer or its customers; and (2) duties that require the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(1)-(3).

United States District Court
For the Northern District of California

professional capacity.  29 U.S.C. § 213 (a)(1).  As discussed in

Part C.2 above, FLSA § 207(i) also provides a "commissioned retail

sales exemption."  Department of Labor regulations further provide

for an exemption for highly paid employees who meet certain weekly

and annual salary criteria.  29 C.F.R. § 541.601.  Defendants argue

that, given the wide range of job duties performed by individuals

in the Manager Class, each Plaintiff will likely qualify for at

least one, if not more, of the executive, administrative, highly

compensated, or commissioned retail sales exemptions.  Defs.'

Second Mot. at 18.  Even managers with the same job title,

Defendants argue, may qualify for different exemptions in light of

the variation among their duties and experiences.  Id.  Defendants

contend that highly individualized inquiries will be necessary in

order to determine whether each class member falls under one of the

FLSA exemptions.  These individualized inquiries, according to

Defendants, make proceeding as a collective action impracticable.

     The Court agrees with Defendants.  Where, as here, significant

differences exist among the job duties of the putative class

members (even for managers with the same job title), a

determination whether class members qualify for FLSA overtime

exemptions will necessitate an individualized inquiry into the

circumstances of each Plaintiff.  See, e.g., Johnson, 2005 U.S.

Dist. LEXIS 44259 at *27 (decertifying a class because determining

whether plaintiffs were subject to the commissioned retail sales

exemption would necessitate individualized inquiries); Hernandez,

2010 U.S. Dist. LEXIS 40209 at *8 (decertifying a class in part

because determining whether each Plaintiff met the executive

exemption would necessitate individualized inquiries); Pfohl, 2004

36

1    U.S. Dist. LEXIS 6447 at *27 (C.D. Cal. Mar. 1, 2004)(decertifying

2    a class because determining whether each Plaintiff met the

3    administrative exemption would necessitate individualized

4    inquiries).  Johnson v. Big Lots Stores, Inc. is illustrative.  561

5    F. Supp. 2d 567, 586 (E.D. La. 2008).  In Johnson, the court

6    decertified a FLSA class because it determined that the defendant's

7    claims that its employees were subject to the executive exemption

8    necessitated individualized inquiries.  Id.  The court explained,

9    "[u]sing representative proof is problematic if for every instance

10   in which an opt-in plaintiff reported that she hired subordinates,

11   there is an alternative response to the contrary."  Id.  As noted

12   above, the deposition testimony of members of the Manager Class

13   shows that for every manager who says one thing about his or her

14   job duties and responsibilities, another says the opposite.  In

15   light of these discrepancies, representative testimony would be

16   inadequate to determine whether Plaintiffs were properly

17   categorized as exempt.

18        The Court is not persuaded by Plaintiffs' argument that 24

19   Hour was precluded from classifying managers as exempt because it

20   utilized a disciplinary policy that violated the "Salary-Basis

21   Test."  Under this test, an employer may not classify its employees

22   as exempt if the employee's salary may vary due to the quantity or

23   quality of work performed.  29 CFR 541.602(a).  Plaintiffs contend

24   that 24 Hour cannot meet the salary-basis test because, for part of

25   the class period, it maintained a policy of docking pay of managers

26   for certain violations of company policy.  Plaintiffs therefore

27   argue that 24 Hour is precluded from raising exemptions as defenses

28   to Plaintiffs' claims.  Pl.'s Second Opp'n at 12.  Defendants offer

1   a number of factual and legal arguments to rebut Plaintiff's

2   claims.  We need not address them all here, however, because one is

3   dispositive.  Under Department of Labor regulations, even if an

4   employer incorrectly docks an exempt employee's salary, it loses

5   the exemption only for that workweek, not for all time.  29 C.F.R.

6   § 541.603 ("the exemption is lost during the time period in which

7   the improper deductions were made...").  Thus, whether 24 Hour

8   incorrectly docked a particular employee's pay and is therefore

9   barred from mounting an exemption defense as to that Plaintiff is

10  yet another individualized issue not amenable to common proof.

11      Lastly, Plaintiffs contend that 24 Hour has produced

12  insufficient evidence that any of the class members qualified for

13  any of the exemptions at issue.  This argument fails for two

14  reasons.  First, at this stage in the litigation, Defendants do not

15  have the burden of proving that the exemptions apply to the class

16  members.  They will have that burden at trial.  On the instant

17  motion, it is Plaintiffs who have the burden of proving that they

18  are similarly situated.  Pfohl, 2004 U.S. Dist. LEXIS 6447 at *21,

19  27 n. 5 (whether collective action plaintiffs meet the criteria of

20  an exemption is irrelevant to the determination of whether

21  plaintiffs are similarly situated).

22      Second, Defendants have produced evidence that some class

23  members may qualify for the exemptions.  For instance, some class

24  members admit to playing a material role in hiring and firing

25  decisions, which could qualify them for the executive exemption.

26  Second Kloosterman Decl. ¶ 22, Exh. 17 (Johnson Dep. 103:4-105:4);

27  Id. at ¶ 14, Exh. 9 (Dillon Dep. 88:2-90:23).  Others testified

28  that they reviewed and processed paperwork relevant to business

United States District Court
For the Northern District of California

1  operations, including payroll, timesheets, new hires, and

2  membership agreements, and that they handled their club's banking.

3  Id. at ¶ 14, Exh. 9 (Dillon Dep. 56:25-57:2; 62:2-10; 63:15-22;

4  65:9-66:1); Id. at ¶ 21 (Janke Dep. 38:6-12; 39:25-40:11).  These

5  employees might qualify for the administrative exemption.

6  Additionally, payroll data for some class members shows that they

7  met the criteria for the commissioned retail sales exemption during

8  at least some pay periods.  Soriano Decl.[26] ¶¶ 4-13, Exhs. 3-12

9  (sample paystubs for Plaintiffs Ra'Oof, Clunn, Beauperthuy,

10  Symmonds, Cromartie, showing that each received more than 50

11  percent of his or her income from commissions over a one-month

12  period).

13      In sum, the defenses asserted by 24 Hour will necessitate

14  individualized inquiries, making adjudication of Plaintiffs' claims

15  by common proof difficult.  This weighs heavily in favor of

16  decertification.

17      **3. Fairness and Procedural Considerations**

18      When weighing fairness and procedural considerations, "the

19  court must balance the benefits of a reduction in the cost to

20  individual plaintiffs and any increased judicial utility that may

21  result from the resolution of many claims in one proceeding with

22  the cost of any potential detriment to the defendant and the

23  potential for judicial inefficiency that could stem from collective

24  treatment."  Wilks, 2006 U.S. Dist. LEXIS 69537 at *26.

25      Here, fairness and procedural considerations weigh in favor of

26  decertification.  The evidence demonstrates that Plaintiffs' job

27  _____

28  [26] Julius Soriano ("Soriano"), Senior Director of Pay Processes for
24 Hour, submitted a declaration in support of Defendants' Motion
to Decertify the Manager Class.

1  duties varied significantly both within and across silos.  Each
2  Plaintiff's job duties will therefore need to be determined on an
3  individual basis, and whether each Plaintiff qualified for an
4  exemption to FLSA overtime requirements will also require
5  individualized analysis.  The judicial inefficiency that would
6  result from trying Plaintiffs' claims collectively outweighs the
7  benefits to Plaintiffs of proceeding collectively.  Additionally,
8  the detriment to Plaintiffs from decertification is ameliorated by
9  the fact that each Plaintiff is subject to an arbitration agreement
10 with 24 Hour.  While 24 Hour refused to proceed to a class-wide
11 arbitration, it would agree to arbitrate individual claims.  Defs.'
12 Second Reply at 14.  Thus, after decertification, Plaintiffs who
13 wish to pursue their individual claims need not file individual
14 lawsuits for relief.

15  **4. Proceeding by Subclasses**

16  Here, unlike with the Trainer Class, the division of managers
17 into three silos provides a plausible dimension along which to
18 divide the putative class into a subclass of GMs, a subclass of
19 OMs, and a subclass of FMs.  However, the evidence shows that even
20 within each silo the duties and responsibilities of managers
21 differed widely.  Moreover, proceeding with subclasses would not
22 change the fact that individualized inquiries will still be
23 required to determine whether each plaintiff qualifies for one of
24 the FLSA overtime exemptions.  Proceeding with subclasses would
25 therefore do little to lessen the chaos and inefficiency that would
26 result from proceeding with a single collective action.
27 ///
28 ///

United States District Court
For the Northern District of California

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES all Motions to Strike.  The Court GRANTS the Motion to Decertify the Trainer Class filed by Defendants 24 Hour Fitness USA, Inc. and Sport and Fitness Clubs of America, Inc.  The Court also GRANTS the Motion to Decertify the Manager Class filed by Defendants 24 Hour Fitness USA, Inc. and Sport and Fitness Clubs of America, Inc.  All opt-in Plaintiffs are DISMISSED from this action without prejudice to each such opt-in Plaintiff filing a suit in his or her own behalf.  To avoid prejudice to individual opt-in Plaintiffs who may choose to file their own cases, the Court invokes its equity powers to toll the applicable statutes of limitations for 30 days after the entry of this Order.

The claims of the fifty-eight named Plaintiffs, Gabe Beauperthuy, et al., remain pending herein for trial.  The named Plaintiffs have the option of withdrawing from the instant action and seeking resolution of their claims by arbitration pursuant to their arbitration agreement with Defendants, or proceeding to trial before this Court separately in the order in which their names are listed on the complaint.  They shall notify the Court within 60 days of whether they wish to proceed to trial.


IT IS SO ORDERED.


Dated: February 24, 2011

_____
UNITED STATES DISTRICT JUDGE

41