IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABE BEAUPERTHUY, et al., ) | Case No. 06-715 SC |
| ) | |
| Plaintiffs, ) | ORDER GRANTING PLAINTIFFS' |
| ) | MOTION TO COMPEL |
| v. ) | ARBITRATION |
| ) | |
| 24 HOUR FITNESS USA, INC., a ) | |
| California corporation dba 24 HOUR ) | |
| FITNESS; SPORT AND FITNESS CLUBS ) | |
| OF AMERICA, INC., a California ) | |
| corporation dba 24 HOUR FITNESS, ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

Before the Court is a Motion to Compel Arbitration filed by Plaintiffs Gabe Beauperthuy, et al., ("Moving Plaintiffs")[1] against Defendants 24 Hour Fitness USA, Inc. and Sport and Fitness Clubs of America, Inc. (collectively "24 Hour Fitness" or "Defendants"). ECF No. 432 ("Mot."). Plaintiffs filed an amendment to the Motion on October 14, 2011. ECF No. 449 ("Am. Mot."). Defendants filed an Opposition, and Moving Plaintiffs filed a Reply. ECF Nos. 452 ("Opp'n"), 454 ("Reply"). For the following reasons, the Court GRANTS Moving Plaintiffs' Motion.

---

[1] As further explained below, the instant Motion, as amended, is brought by a subset of the named Plaintiffs in this action. Moving Plaintiffs are Gabe Beauperthuy, John Davidsson, Lindsay D'errico, Anne Dillon, Nathaniel Fennell, Patrick A. Frey, Heidi Gabalski, David L. Guy, Nathaniel Hoelk, David Kaipi, Andrew W. Newcomb, Steve Orrico, Adam Sherrill, Evan Sooper, Kimberly S. Struble, and Christopher Vincent. ECF No. 449 ("Am. Mot.") at ii-iii.

## II. BACKGROUND

The Court has issued numerous prior orders detailing the procedural and factual background in this dispute. See ECF Nos. 28, 66, 124, 190. In short, Plaintiffs -- former and current employees of 24 Hour Fitness -- filed this suit in 2006 alleging that 24 Hour Fitness denied them overtime payments in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"). See First Am. Compl. ("FAC"), ECF No. 33, ¶¶ 85-97. In 2007 and 2008, the Court conditionally certified two classes under the FLSA: a class of former managers and a class of former personal trainers who worked for 24 Hour Fitness after November 14, 2001. ECF Nos. 124 (conditionally certifying manager class), 190 (conditionally certifying trainer class). On February 24, 2011, the Court granted Defendants' motion to decertify both classes and dismissed all class members other than the named Plaintiffs. ECF No. 428 ("Decert. Order"). The Court noted that the fifty-eight named Plaintiffs should inform the Court within sixty days whether they wished to proceed to trial on an individual basis or seek resolution of their claims via the arbitration provisions of their respective employment contracts. Id. at 41.

On March 21-25, 2011, about thirty days after the Decertification Order, Plaintiffs' counsel filed "Demand[s] and Claim[s] for Individual Arbitration" on behalf of 983 claimants -- some of whom are named Plaintiffs and some of whom are former class members -- with Judicial Arbitration and Mediation Services ("JAMS"), Inc., in San Francisco.[2] Mot. at 2; Kloosterman Decl.

---

[2] As the operative arbitration clause does not specify a location for arbitration, Plaintiffs' counsel chose JAMS in San Francisco

2

Ex. A ("Sample Demand").³ The demands sought arbitration of all claimants' claims pursuant to an arbitration agreement contained in the 2001 version of 24 Hour Fitness's employee handbook ("the 2001 Agreement"). Mot. at 1. The 2001 Agreement specifies that the parties agree to arbitrate disputes in accordance with the Federal Arbitration Act ("FAA"). However, the Agreement does not specify where disputes shall be arbitrated. See Kloosterman Decl. Ex. I ("2001 Agreement"). Copies of the arbitration demands were served on Defendants contemporaneously with their filing at JAMS. See Kloosterman Decl. Ex. G.

In a letter dated April 1, 2011, counsel for Defendants indicated that they would not agree to proceed with arbitration in San Francisco. Id. Ex. D. They argued that some claimants' employment was not governed by the 2001 Arbitration Agreement, but rather by subsequent arbitration agreements set forth in the 2005 and 2007 employee handbooks (respectively, "the 2005 Agreement" and "the 2007 Agreement"). Id. The 2005 and 2007 Agreements, unlike the 2001 Agreement, provide that arbitration shall take place in the geographic vicinity of the place where the dispute arose or where the claimant last worked for 24 Hour Fitness. Id.

On April 25, 2011, Plaintiffs filed the instant Motion, seeking to compel arbitration on behalf of the 983 claimants here in the Northern District of California. Mot. at 1. Significantly, on October 14, 2011, Plaintiffs amended the Motion so that it now

---

because it is located within this judicial district and because Defendants' national headquarters are also located in this district. Mot. at 3.

³ John C. Kloosterman ("Kloosterman"), attorney for Defendants, filed a declaration in support of the Opposition. ECF No. 453.

3

only seeks to compel arbitration on behalf of sixteen individuals, all of whom are named Plaintiffs who ceased working for 24 Hour Fitness while the 2001 Agreement was still in effect (the "Moving Plaintiffs"). Am. Mot. at ii.

### III. LEGAL STANDARD

The Court's jurisdiction to resolve disputes stemming from an arbitration agreement derives from the FAA. 9 U.S.C. §§ 1 et seq. The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. § 2. Section 4 of the FAA, which governs petitions to compel arbitration, provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 ("Section 4"). Upon a showing that a party has failed to comply with a valid arbitration agreement, the Court must issue an order compelling arbitration in the district in which the petition was filed. Cohen v. Wedbush, Noble Cooke, Inc., 841 F.2d 282, 285 (9th Cir. 1988) (emphasis added); 9 U.S.C. § 4.[4]

---

[4] Defendants argue that a party's refusal to arbitrate must be "unequivocal" before a court may issue an order compelling arbitration. Opp'n at 9-12. The "unequivocal refusal" standard originated in PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1066 (3d Cir. 1995), where the Third Circuit stated that "an action to compel arbitration under the [FAA] accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously

4

**IV. DISCUSSION**

As an initial matter, the parties do not dispute that the 2001 Agreement is valid and enforceable and that Moving Plaintiffs' claims fall within the scope of the 2001 Agreement. Rather, the core of their dispute is whether, by refusing to arbitrate in this district but professing a willingness to arbitrate elsewhere, Defendants have "refused" to arbitrate under the meaning of Section 4, thereby entitling Moving Plaintiffs to file the instant Motion. Plaintiffs argue that Defendants' conduct constitutes a "failure, neglect, or refusal" to arbitrate under Section 4, and that this Court is therefore required by Section 4 to compel arbitration in this district. Defendants disagree, arguing that their willingness to arbitrate elsewhere precludes a finding that they have "refused" to arbitrate and renders the Motion premature. Defendants also argue that Moving Plaintiffs failed to follow the proper procedure for initiating arbitration under the 2001 Agreement, and that Moving Plaintiffs "have effectively withdrawn from this action pursuant to this Court's Decertification Order." Opp'n at 15. For the following reasons, the Court agrees with Moving Plaintiffs.

---

manifesting an intention not to arbitrate the subject matter of the dispute." The Third Circuit imported the "unequivocal refusal to arbitrate" standard from § 301(a) of the Labor Management Relations Act. Id. at 1067. Defendants cite several orders from district courts in this circuit that import the "unequivocal failure" standard from PaineWebber. See, e.g., Gelow v. Cent. Pac. Mortg. Corp., 560 F. Supp. 2d 972, 978 (E.D. Cal. 2008); Kim v. Colorall Techs., Inc., No. C-00-1959-VRW, 2000 U.S. Dist. LEXIS 12321, at *2 (N.D. Cal. Aug. 18, 2000) (incorporating PaineWebber standard while mistakenly stating that PaineWebber was a Ninth Circuit case). Because the Ninth Circuit has not adopted the "unequivocal refusal" standard, and because Plaintiff makes compelling arguments that such a standard imported from the NLRA should not apply to the FAA, the Court declines to adopt the PaineWebber standard and instead adheres to the text of Section 4 itself, which states that a court may compel arbitration upon a party's "failure, neglect, or refusal to arbitrate."

5

**A. Defendants have "refused" to arbitrate under Section 4**

Defendants deny that they are refusing to arbitrate within the meaning of Section 4 because, although they refuse to arbitrate in this district, they are willing to arbitrate elsewhere. Defendants note that they sent letters to Moving Plaintiffs providing the 24 Hour Fitness location at which each Moving Plaintiff last worked and requesting that each Moving Plaintiff provide a list of at least three arbitrators or retired judges located in that geographical area and whom he or she proposed to hear the dispute. Kloosterman Decl. Ex. F ("Sample Letter"). The letters asked Moving Plaintiffs to provide the names within fourteen days. Id. Defendants also note that they expressly stated in a letter to Plaintiffs' counsel: "Let me be perfectly clear -- 24 Hour Fitness has not refused to arbitrate your clients' claims." Kloosterman Decl. Ex. G ("May 2, 2011 Kloosterman Letter").

Defendants do not expressly state their position as to where the arbitrations should occur. However, based on the letters they sent to Moving Plaintiffs, Defendants apparently take the position that each Moving Plaintiff's claims should be arbitrated in the geographical area where the Moving Plaintiff last worked for 24 Hour Fitness, as provided in the 2005 and 2007 Agreements. Moving Plaintiffs argue that Defendants' rejection of their demands to arbitrate in this district constitutes a refusal to arbitrate under Section 4, regardless of whether Defendants are willing to arbitrate in some other venue. Both logic and precedent compel the Court to agree with Moving Plaintiffs.

In Bauhinia Corporation v. China National Machinery and Equipment Import and Export Corporation, 819 F.2d 247, 250 (9th

6

Cir. 1989), the Ninth Circuit addressed what should be done when the parties to an arbitration agreement leave open the question of where arbitration should occur. The contract at issue contained the following two provisions relating to arbitration venue:

> In case an arbitration is necessary and is to be held in Peking, the case in dispute shall then be submitted for arbitration to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade, Peking . . .

> In case the Arbitration is to take place at (BLANK) either party shall appoint one arbitrator, and the arbitrators thus appointed shall nominate a third person as umpire, to form an arbitration committee. The award of the Arbitration Committee shall be accepted as final by both Parties. The Arbitrators and the umpire shall be confined to persons of Chinese or (BLANK) Nationality.

Id. at 248. When the defendant, a Chinese entity, filed a motion in the Eastern District of California seeking to compel arbitration in China, the court granted the motion but ordered that the arbitration occur in the Eastern District of California. Id. The defendant appealed, arguing that the court had overridden the parties' choice of arbitrator. Id. at 249. Noting the strong federal policy in favor of arbitration, and the fact that Section 4 only authorizes a district court to order arbitration in its own district, the Ninth Circuit affirmed, stating: "[t]he contracts left the location open. The judge gave the parties an opportunity to resolve the matter themselves. When they failed to do so, he took the only action within his power." Id. at 250.

In Capitol Converting Company v. Officine Curioni, No. 87 C 10439, 1989 U.S. Dist. LEXIS 13904, at *5 (N.D. Ill. Nov. 9, 1989), the Northern District of Illinois addressed an arbitration agreement that, like the one at issue here, contained absolutely no language regarding the location of arbitration. Citing Bauhinian,

7

1  the court held that the parties' inability to agree on a location
2  constituted a failure to arbitrate under Section 4 and ordered,
3  over the defendant's objection, that arbitration proceed in the
4  Northern District of Illinios.  The Court reasoned that "the
5  inability of the parties to reach agreement on the location of
6  their arbitration constitutes a 'failure' or 'refusal' to arbitrate
7  just as much as it would be if the parties had agreed upon a
8  location for arbitration but then one of them refused to go ahead
9  with it."  Id.  "Congress, in drafting the [FAA], was more
10 concerned with promoting arbitration than with making sure that
11 arbitration would go forward in some particular place."  Id.
12        Defendants do not address Bauhinian or Capitol Converting, and
13 the Court finds both cases compelling authority on the matter at
14 hand.  Moreover, Defendants' proposed interpretation of Section 4
15 would defeat the "policy of rapid and unobstructed enforcement of
16 arbitration agreements" embodied in the FAA.  Moses H. Cone Mem'l
17 Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983).  If a party
18 were deemed not to have "refused" arbitration so long as it
19 expressed a willingness to arbitrate in some venue somewhere, then
20 a valid arbitration agreement could be rendered meaningless by the
21 parties' inability to settle on a mutually agreeable location, and
22 courts would be powerless to intervene.  For example, Defendants
23 here could file motions to compel arbitration in various other
24 districts, to which Moving Plaintiffs could respond that they would
25 be happy to arbitrate but only in this district.  A state of
26 paralysis would result in which Moving Plaintiffs' claims could
27 never be adjudicated until one party caved to the other's venue
28 demands.

Accordingly, the Court finds that Defendants' rejection of Moving Plaintiffs' arbitration demands constitutes a failure to arbitrate under Section 4.

### B.  Defendants' Remaining Arguments Are Unavailing

Defendants next argue that Moving Plaintiffs' motion must be denied because Moving Plaintiffs did not properly follow the procedure for initiating arbitration set forth in the 2001 Agreement. Defendants cite Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1122 (9th Cir. 2008) for the proposition that a party's failure to initiate arbitration in the manner provided for in the arbitration agreement precludes that party from claiming that the other side refused to arbitrate.

In Cox, the procedure for initiating arbitration was governed by the Model Employment Arbitration Procedures of the American Arbitration Association ("AAA"), which provided that the initiating party must: (1) file a written arbitration demand with the AAA; (2) provide a copy of the demand to the other party; and (3) include the applicable filing fee. Id. The initiating party admitted that it failed to comply with any of those requirements. Id. Invoking the basic contract law principle that "[b]reach or repudiation of a contract by one party excuses nonperformance by the other," the court held that the plaintiff repudiated the arbitration agreement by failing to follow the initiation procedures and therefore could not seek to enforce it against the defendant. Id.

Here, the 2001 Agreement provides that, in order the initiate arbitration, a party must submit a written "Request for Arbitration" to the other party that includes: (1) a description of the dispute; (2) names and contact information of witnesses with

9

knowledge of the dispute; and (3) the relief requested. 2001 Agreement at 1-2. Moving Plaintiffs served copies of their demands for individual arbitration on Defendants at the same time they filed the demands with JAMS. Kloosterman Decl. ¶ 2. Each demand contained a detailed description of the case, including the relief sought. See Sample Demand. The demands do not include the names and contact information of witnesses.

The Court finds that by serving the demands on Defendants, Moving Plaintiffs substantially complied with the procedures for initiating arbitration in the 2001 Agreement. Unlike in Cox, where the plaintiff failed to comply with any of the initiation procedures, here Moving Plaintiffs complied with two of three requirements. Their failure to comply with the third requirement by providing names of witnesses was certainly not prejudicial to Defendants given the extensive discovery that has occurred during the five-year lifespan of this case. Thus, the Court finds that Moving Plaintiffs failure to include a list of witnesses in their arbitration demands is not a material breach of the 2001 Agreement that would preclude Moving Plaintiffs from enforcing the Agreement against Defendants.[5]

---

[5] Defendants also contend that "it is improper for Named Plaintiffs to seek to compel arbitration on a collective or class basis" because the 2001 Agreement precludes class-wide arbitration. Opp'n at 13. Because Defendants refer to "Named Plaintiffs" instead of "Moving Plaintiffs," it is unclear if Defendants still assert this argument despite Plaintiffs' amendment to their Motion reducing the number of claimants from 983 to sixteen. Regardless, the demands submitted to JAMS are clearly labeled "Demand and Claim for Individual Arbitration." Sample Demand (emphasis added). Moreover, counsel for Defendants stated after receiving the demands "[w]e are pleased that [claimants] have elected to proceed with individual arbitration under the terms of each individual's arbitration agreement . . . ." Kloosterman Decl. Ex. B (emphasis

10

1    Lastly, Defendants argue that that Moving Plaintiffs "have
2  effectively withdrawn from this action pursuant to this Court's
3  Decertification Order."  Opp'n at 15.  They base this argument on
4  the Court's statement in its Decertification Order that "[t]he
5  named Plaintiffs have the option of withdrawing from the instant
6  action and seeking resolution of their claims by arbitration
7  pursuant to their arbitration agreement with Defendants, or
8  proceeding to trial before this Court . . . .  They shall notify
9  the Court within 60 days of whether they wish to proceed to trial."
10 Decert. Order at 41.
11   The Court finds that Moving Plaintiffs did comply with the
12 Decertification Order.  On April 25, 2011, Plaintiffs filed a
13 statement informing the Court that they had elected to pursue
14 arbitration of their claims, but they did not withdraw from the
15 action.  ECF No. 436.  Defendants misconstrue the Court's
16 Decertification Order to require that Moving Plaintiffs' claims be
17 automatically dismissed in the event that they opt to pursue
18 arbitration.  While it is true that Moving Plaintiffs had the
19 option of withdrawing from the instant action and continuing to
20 pursue their claims through arbitration, by no means was withdrawal
21 from this action a prerequisite to pursuing arbitration.  The
22 Court's Decertification Order does not state otherwise.
23 ///
24 ///
25 ///
26 ///
27
28 added).  Accordingly, there is no basis for Defendants' claim that Plaintiffs seek impermissible collective arbitration.

11

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS the Amended Motion to Compel Arbitration filed by Moving Plaintiffs Gabe Beauperthuy, John Davidsson, Lindsay D'errico, Anne Dillon, Nathaniel Fennell, Patrick A. Frey, Heidi Gabalski, David L. Guy, Nathaniel Hoelk, David Kaipi, Andrew W. Newcomb, Steve Orrico, Adam Sherrill, Evan Sooper, Kimberly S. Struble, and Christopher Vincent against Defendants 24 Hour Fitness USA, Inc. and Sport and Fitness Clubs of America, Inc.

The Court ORDERS that the Moving Plaintiffs' claims shall be arbitrated here in the Northern District of California. Additionally, the Court ORDERS the parties to meet and confer to determine whether the arbitrations shall proceed at JAMS, Inc., or with another arbitration service within this district. Within thirty (30) days of this Order, the parties shall notify the Court of when and where the arbitrations shall commence.

IT IS SO ORDERED.

Dated: December 2, 2011

UNITED STATES DISTRICT JUDGE

12