THOMAS G. FOLEY, JR, Bar No. 065812
JUSTIN P. KARCZAG, Bar No. 223764
STEPHANIE R. HANNING, Bar No. 251728
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, California 93101
Telephone (805) 962-9495
Facsimile (805) 965-0722
Email: tfoley@foleybezek.com
        jkarczag@foleybezek.com
        shanning@foleybezek.com

RICHARD E. DONAHOO, Bar No. 186957
SARAH L. KOKONAS, Bar No. 262875
JOSEPH K. JOHNSON, Bar No. 263499
DONAHOO & ASSOCIATES
440 W. First Street, Ste. 101
Tustin, CA 92780
Telephone (714) 953-1010
Facsimile (714) 953-1777
Email:  rdonahoo@donahoo.com
        skokonas@donahoo.com
        jjohnson@donahoo.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABE BEAUPERTHUY et al, <br><br> Plaintiffs, <br><br> v. <br><br> 24 HOUR FITNESS USA, INC., a California corporation dba 24 HOUR FITNESS; SPORT AND FITNESS CLUBS OF AMERICA, INC., a California corporation dba 24 HOUR FITNESS, <br><br> Defendants. | Case No.: C 06-0715 SC <br><br> *Judge: Hon. Samuel Conti.* <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER** <br><br> Hearing Date:  February 24, 2012 <br> Hearing Time:  10:00 a.m. <br> Hearing Dept.:  Courtroom 1 |

# TABLE OF CONTENTS

1.      Introduction. ................................................................................................1

2.      Brief Statement of Facts and Procedural History. .................................2

3.      Argument. ....................................................................................................4

        A.      The Standard for Transfer. ..............................................................4

        B.      This Action is a Summary Proceeding, With No Witnesses, No
                Documents,  No Trial, and Only One Simple Outcome. ..................7

        C.      A Transfer Motion is Not Contemplated by the FAA. .....................8

        D.      Defendants Have Not Made the Requisite Showing to Justify Transfer.
                ...........................................................................................................10

                i.      Defendants Have Not Made the Requisite Showing That
                        Convenience of the Witnesses Weighs in Favor of Transfer .........11

                ii.     Defendants' Excuse For Not Providing the Required Factual
                        Showing Is Not Persuasive. ................................................15

        E.      Defendants Have Not Made the Requisite Showing That The Location
                of the Sources of Proof Favors Transfer ...........................................17

        F.      Even if There Is Inconvenience To Witnesses To Come to California,
                Petitioners Will Stipulate To Having Them Testify Telephonically or
                Via Web Conferencing. .....................................................................18

        G.      Defendants' Arguments Do not Make Sense Considering the Diverse
                Employment History of the Claimants and Instead Reveal that the Real
                Reason They Seek Transfer is More Delay. .....................................18

        H.      Defendants Should Not Have The Texas Cases Transferred Because
                the Arbitration Agreements are Unenforceable in Texas. ...............20

        I.      Evidentiary Objection Pursuant to Local Rule 7-3(a). ...................20

4.      Conclusion. ................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*A.G. Edwards & Sons, Inc. v. McCollough*,
(9th Cir. 1992) 967 F.2d 1401 ................................................................................ 23

*A.J. Industries, Inc. v. United States Dist. Ct.*,
(9th Cir. 1974) 503 F.2d 384. ................................................................................ 11

*Aacon Auto Transport, Inc. v. Ninfo*,
(2nd Cir. 1974) 490 F.2d 83.................................................................................... 10

*Accentra, Inc. v. Staples, Inc.*
(C.D. Cal. 2008) 2008 WL 7400627................................................................. 13, 15

*Allstar Marketing Group, LLC, v. Your Store Online, LLC*,
(C.D. Cal. 2009) 666 F.Supp.2d 1109 ..................................................... 11, 13, 15

*Amini Innovation Corp. v. JS Imps., Inc.*,
(C.D. Cal. 2007) 497 F.Supp. 2d 1093 ............................................................. 11, 12

*Amirhour v. Marriott Intern, Inc.*, No C 06-01676 WHA,
(N.D. Cal. Dec. 4, 2006) 2006 WL 3499241 ............................................................ 6

*Amoco Prod. Co. v. U.S. Dep't of Energy*,
(D. Del. 1979) 469 F. Supp. 236............................................................................... 8

*Applied Elastometrics v. Z-Man Fishing Prods., Inc.*, No. C 06-2469 CW,
(N.D. Cal. Oct. 6, 2006) 2006 WL 2868971..................................................... 6, 15

*Armored Group, LLC v. Supreme Corp.*,
(D. Ariz. 2009) 2009 U.S. Dist. LEXIS 72594 ................................................ 11, 12

*Bauhinia Corp. v. China Nat. Machinery & Equipment Import & Export Corp.*,
(9th Cir. 1987) 819 F.2d 247 .................................................................................... 7

*Bohara v. Backus Hosp. Medical Benefit plan*,
(C.D. Cal. 2005) 390 F.Supp.2d 957. .............................................................. 11, 13, 17

*Brayton Purcell LLP v. Recordon & Recordon*,
(N.D. Cal. 2005) 361 F. Supp. 2d 1135 .................................................................... 5

*Capitol Converting Co. v. Officine Curioni*, No. 87 C 10439,
(N.D. Ill. Nov. 9, 1989) 1989 U.S. Dist. LEXIS 13904 ......................................... 10

*CE Res., Inc. v. Magellan Group, LLC*,
(E.D. Cal. 2009) 2009 U.S. Dist. LEXIS 58354................................................ 11, 12

*Center for Biology Diversity v. Lubchenko,*
  (N.D. Cal. 2009) 2009 U.S. Dist LEXIS 119794 ................................................ 7

*CFA Northern Cal., Inc. v. CRT Partners LLP,*
  (N.D. Cal. 2005) 378 F.Supp.2d 1177 ................................................ 5

*Chavarria v. Ralphs Grocer Co.*
  (C.D. Cal. September 15, 2011) 2011 U.S. Dist. LEXIS 104694................................23

*City of Los Angeles v. U.S. Dept. of Commerce,*
  (9th Cir. 2002) 307 F.3d 859 ................................................ 9

*Cohen v. Wedbush, Noble Cooke, Inc.,*
  (9th Cir. 1988) 841 F.2d 282 ................................................ 7, 10

*Commodity Future Trading Comm'n v. Savage,*
  (9th Cir. 1979) 611 F.2d 270 ................................................ 4, 5, 6

*Dean Witter Reynolds v. Byrd,*
  (1985) 470 U.S. 213................................................9

*Decker Coal Co. v. Commonwealth Edison Co.,*
  (9th Cir. 1986) 805 F.2d 834 ................................................ 4, 5, 13

*Effron v. Sun Line Cruises, Inc.,*
  (2nd Cir. 1995) 67 F.3d 7................................................ 15

*Fabus Corp. v. Asiana Ex. Corp.,*
  (N.D Cal. 2001) 2001 WL 253185 ................................................ 5

*Finley v. County of Martin,*
  (N.D. Cal. December 23, 2009) 2009 U.S. Dist. LEXIS 119863 ................................ 22

*Fireman's Fund Ins. Co. v. National Bank for Coops.,*
  (N.D. Cal. 1993) 1993 U.S. Dist. LEXIS 12219 ................................................ 11, 12, 13

*Florens Container v. Cho Yang Shipping,*
  (2002) 245 F.Supp.2d 1086 ................................................ 10, 11

*General Retirement System of City of Detroit v. Wells Fargo Mortg. Backed Securities 2006-AR18 Trust,*
  (N.D. Cal. 2009) 2009 WL 2137094 ................................................ 15

*Gherebi v. Bush,*
  (9th Cir.2002) 352 F.3d 1278 ................................................ 5

*Gulf Oil Corp. v. Gilbert,*
  (1947) 330 U.S. 501................................................ 5

USDC, ND, Case No.: C 06 0715 SC

**TABLE OF AUTHORITIES**

*Guy v. Hartford Life Group, Ins. Co.*,
    (N.D. Cal. 2011) 2011 WL 5525965 ........................................................................ 8

*Heller Financial, Inc. v. Midwey Powder Co.*,
    (7th Cir. 1989) 883 F.2d 1286 ............................................................................... 11

*Howard Elec. & Mech. v. Briscoe Co.*,
    (9th Cir. 1985) 754 F.2d 847. ................................................................................. 9

*Kasey v. Molybdenum Corporation of America*,
    (9th Cir. 1969) 408 F.2d 16 .................................................................................... 9

*Lopez v. Davis*,
    (2001) 531 U.S. 230 ................................................................................................ 9

*Lou v. Belzberg*,
    (9th Cir. 1987) 834 F.2d 730 ............................................................................... 5, 6

*Manny Pollak & Co. v. Shelgem, Ltd.*,
    (S.D.N.Y. 1990) 1990 U.S. Dist. LEXIS 15167 ............................................ 1, 9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    (1983) 460 U.S. 1 ................................................................................................. 10

*Pacheco v. Homecomings Financial, LLC*,
    (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 64400 .................................................. 23

*Pacific Car & Foundry Co. v. Pence*,
    (9th Cir. 1968) 403 F.2d 949 .................................................................................. 6

*PainWebber Inc. v. Bybyk*,
    (2nd Cir. 1996) 81 F.3d 1193 .............................................................................. 7, 9

*Piper Aircraft Co. v. Reyno*,
    (1981) 454 U.S. 235, 241 ........................................................................................ 4

*Price v. HotChalk, Inc.*,
    (D. Ariz. 2010) 2010 WL 5137896 ....................................................................... 18

*Securities Investor Prot. Corp. v. Vigman*,
    (9th Cir. 1985) 764 F.2d 1309 ........................................................................... 5, 10

*Sierra Club v. Van Antwerp*,
    (D.D.C. 2007) 523 F. Supp. 2d 5 ............................................................................ 8

*Simula, Inc. v. Autoliv, Inc.*,
    (9th Cir. 1999) 175 F.3d 716 .............................................................................. 1, 9

iv

**TABLE OF AUTHORITIES**

*Soremekun v. Thrifty Payless, Inc.*,
    (9th Cir.2007) 509 F.3d 978 ............................................................... 21

*Southland Corp. v. Keating*,
    (1984) 465 U.S. 1 .............................................................................. 7

*Stewart Org., Inc. v. Ricoh Corp.*,
    (1988) 487 U.S. 22 ............................................................................. 4

*United States v. Shumway*,
    (9th Cir. 1999) 199 F.3d 1093. ........................................................ 21

*Warfield v. Gardner*,
    (D. Ariz. 2004) 346 F. Supp. 2d 1033 .............................................. 5

**Statutes**

28 U.S.C.
    § 1404(a) ............................................................................... *passim*

9 U.S.C
    § 4 ....................................................................................... 7, 8

Fed Rules Civ. Proc.
    § 30(b)(6) ...............................................................................16

**Treatises**

15 C. Wright, A. Miller & E. Cooper,
    Fed. Prac. & Proc. § 3581 (3d. ed. 2007)......................................... 12

Black's Law Dictionary
    1242 (8th ed. 2004)............................................................................ 7

**1.**     **Introduction.**

Defendants' Motion to Transfer should be denied for several distinct reasons.

*First*, the issue currently before this Court is a summary proceeding, a Petition to Compel Arbitration, where the determination of whether there is an agreement to arbitrate is the only issue—and on this issue, both sides agree that arbitration is appropriate.   Consequently, there are no witnesses who will testify, no access to evidence, no interests of justice at stake in this Court's determination of whether it is appropriate to compel arbitration..

*Second*, the plain text of the FAA provides both the grant of authority for the Court to issue an order compelling arbitration, and narrowly circumscribes the relief that the Court must grant.  As controlling Ninth Circuit precedent establishes, once a binding agreement to arbitrate has been found (grant), the Court <u>must</u> order the parties to arbitrate in this district (relief)—and the District Court lacks discretion to do anything else.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-720 (9th Cir. 1999).  Courts that have specifically addressed the procedural situation that is presented here, have ruled the trial court has no jurisdiction or power to transfer a Petition to Compel.  *Manny Pollak & Co. v. Shelgem, Ltd.*, 1990 U.S. Dist. LEXIS 15167 at *9-10 (S.D.N.Y. 1990).

*Third*, even if those arguments did not compel denial of transfer, the prevailing standard in this (and other Circuits) is that Defendants, as the moving parties, bear a heavy burden of providing specific admissible evidence that the transfer factors are met—the Courts are unanimous that generalizations and conclusory statements are not sufficient.  Here, Defendants' showing falls woefully short of that standard, consequently, transfer is not warranted.  Moreover, Plaintiffs briefed this issue in the context of their Reply on the Motion to Compel Arbitrations for the same 273[1] claimants, providing the ample authority on this point, yet Defendants did not

---

[1] Note, there are presently pending 273 Related Petitions to compel arbitration (plus seven new cases seeking declaratory relief and orders compelling arbitration of approximately 600 additional former opt-in members, which are presently stayed), yet Defendants filed a motion to transfer on just 257 of the Petitions (Doc 488 p. 11).  Thus, although there appears to be a discrepancy in the numbers, that discrepancy is due to the fact that Defendants moved to transfer less than the full number of filed Related Petitions, apparently based upon their contention that 16 of the Petitions are from claimants who did not properly opt-in to the collective action case. Doc 488-1 3:17-20.

USDC, ND, Case No.: C 06 0715 SC
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

provide any additional evidence in support of its motions to transfer. Not one specific witness is identified, nor is any anticipated testimony submitted.

*Fourth*, Defendants' request does not make sense due to the diverse employment history of the Claimants. The facts reveal that this motion is really about more delay and obfuscation, not about substantive resolution of the claims.  This Court made a finding in its December 2, 2011 Order that Defendants were refusing to arbitrate the claims of 16 individuals who were named plaintiffs in this *Beauperthuy* case. The reasons underlying the Court's December 2, 2011 Order, that Defendants were impliedly attempting to resist arbitration for the 16 named claimants unless the arbitration proceedings went forward in the venue which Defendants wanted, similarly warrant entry of an order that the 273 petitioners are entitled to arbitrate their claims in this District.

*Fifth*, to the extent that Defendants seek to have any matters transferred to Texas, those cases cannot be transferred, because the Fifth Circuit has recently held Defendants' 2005 arbitration agreement to be illusory and is therefore unconscionable.

*Sixth*, Defendants' evidence, to the extent that any has been provided, is objectionable.

## 2.    **Brief Statement of Facts and Procedural History.**

Given the substantial amount of prior briefing, only a brief summary of the procedural history of this case is necessary.  The Court's rulings granting conditional certification to the Managers' class (Doc 124) and denying Defendants' motion to require amendment of pleadings (Doc 66) recount this history in detail.  In brief, and as set forth in those rulings, these Petitions arise from the Boyce litigation commenced in 2003, the Allen attempted arbitration in 2004, and the Beauperthuy collective action case commenced six years ago in February 2006.  This case concerns the unpaid wages for Managers and Personal Trainers for work performed outside of California from December 31, 1998 to the present.  Through a series of procedural skirmishes and shifting positions with regard to arbitration, Defendants have successfully avoided substantive resolution of the claims of over 900 workers.  To the extent that any worker has seen any recovery, it was in the *Boyce* litigation in 2005, which settled for California-based work only.  In addition, certain of the individuals in *Allen* actually commenced five arbitrations here in California, but, those settled before an Award was entered for a confidential amount.

USDC, ND, Case No.: C 06 0715 SC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

1   Declaration of Justin P. Karczag dated February 6, 2012 ("Karczag Decl."), ¶ 3".   However,

2   none of the *Beauperthuy* claimants (which derive from *Allen*) have had any substantive

3   resolution of their claims.

4   And, this is specifically because of the manner in which Defendants have used a

5   combination of arbitration and law and motion to avoid it.  As this Court found years go: "in the

6   interests of justice and efficient resolution of the parties' disputes [the Court] hereby finds that

7   Defendants have waived their right to compel arbitration and are thus barred from making any

8   arguments on the basis of such a right."  Doc 66, 8:23-9:4, 9:11-18.  The Court went on to find

9   that "Plaintiffs have repeatedly requested that Defendants arbitrate their dispute[;] Defendants

10   accepted once, only to soon thereafter stymie the process…." and that:

11
        Plaintiffs have been forced to deal with defendants' confusing, contradictory, and
12      time-consuming strategic maneuvering purportedly based on the [2001]
        Arbitration Agreement but which involve simultaneous explicit refusals to compel
13      arbitration.  The unnecessary delay and expense this has caused has affected not
        only Plaintiffs but also the various courts and arbitration institutions which have
14      been involved.  Doc 66, 9:27-10:4, 10:18-25.

15   There is a reason why Defendants are fighting arbitration again, here and now, because

16   they are concerned that if arbitration proceeds here, it will proceed to quickly and efficiently to

17   resolution.  Instead, if Defendants can persuade this Court to parcel out and transfer the cases all

18   over the country, they can take advantage of the subsequent delay to further push back

19   substantive resolution.  Moreover, they will be able to reargue issues already decided here, in

20   terms of equitable tolling and substantial compliance, which, if they get even one Court or

21   Arbitrator to reevaluate and enter a ruling different from this Court's rulings, is a procedural

22   "win" for them, and another way to avoid or delay resolution of that claimants' claims.  To be

23   clear, it is understandable why a defendant, which has no affirmative claims, would have no

24   interest in moving quickly to a resolution that can only result in a net payout.  But, at a certain

25   point—here, nearly 9 years (*Boyce*) or 8 years (*Allen*) or 6 years (*Beauperthuy*)—those efforts

26   must be curtailed.  This Court recognized this during the hearing on January 9, 2011, when it

27   stated:

28
        … this case has been going on about, I guess around about six years, and it should
        come to a conclusion.  I'm going to do everything I can to see that it comes to a

3

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

fast conclusion.  Because if the [Petitioners] are entitled to relief, I would think they should get the relief while they are living, and not while its part of their estate… I can't understand why this hasn't been completed sometime before. Karczag Decl., Exh. L, TR 2:20-3:16.

That can happen by this Court appointing a special master to provide continuing oversight and granting the Petitions within the purview of the FAA by ordering them to arbitration in this District.

## 3. <u>Argument.</u>

### A. <u>The Standard for Transfer.</u>

Under 28 U.S.C. § 1404(a), a district court has authority to transfer a case "[f]or the convenience of parties and witnesses" and "in the interest of justice" to "any other district or division" where the case might have originally been brought. 28 U.S.C. § 1404(a). The language of the statute itself, as well as case law interpreting this language, establishes that the decision to transfer a case to a more convenient forum lies within the discretion of the trial court.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (recognizing that § 1404(a) is "intended to place discretion in the district court"); *Decker Coal Co. v. Commonwealth Edison*, 805 F.2d 834, 842 (9th Cir. 1986) ("Transfer . . . in favor of a more convenient forum lie[s] within the discretion of the trial court . . . ."); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1980) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").  When exercising its discretion in determining whether a case brought in the proper forum should be disturbed and transferred to an allegedly more convenient district, the court "should consider both the private and public interest factors affecting the convenience of the forum." *Decker*, supra, 805 F.2d at 843, citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

The Ninth Circuit and the Northern District have set out the following factors that courts should consider in weighing whether to transfer venue: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in

each forum. *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1144 (N.D. Cal. 2005); see also *Decker*, supra, 805 F.2d at 843 (setting out the above as the public and private factors courts should use when determining whether transfer is justified).

However, the district court's discretion is not unfettered, as there is a strong "presumption in favor of plaintiff's choice of forums." *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir.2002), vacated on other grounds, 542 U.S. 952 (2004); see also *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("great weight is accorded plaintiffs choice of forum"). Additionally, the movant bears the burden in demonstrating that transfer is proper. *Decker*, supra, 805 F.2d at 843.

"The burden is on the defendant to show that the convenience of parties and witnesses and the interest of justice require transfer to another district." *CFA Northern Cal., Inc. v. CRT Partners LLP*, 378 F.Supp.2d 1177, 1185 (N.D. Cal. 2005), citing *Commodity Future Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

This burden is a heavy one, as the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, supra, 805 F.2d at 843.

Finally, "the district court is not required to determine the best venue," and "transfer under § 1404(a) should not be freely granted." *Gherebi*, supra, 352 F.3d at 1303 (internal quotations omitted). Section 1404(a) "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," and a "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.*

As set forth above, in general, a plaintiff's "choice of venue is accorded substantial weight." *Fabus Corp. v. Asiana Ex. Corp.*, 2001 WL 253185, at *1 (N.D Cal. 2001); *Decker*, supra, 805 F.2d at 843; *Securities Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (". . . unless the balance of factors is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). This is especially true when, as here, where for 10% of the 273 related Petitioners, California is their home forum and for another 11%, at some point since the claims arose,

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

California has been their home forum. See, e.g. *Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004) (plaintiff's choice of "home forum is to be given substantial deference" (quotations omitted)); Karczag Decl., ¶ 4, Exhs D and E.

Finally, District Courts in the Ninth Circuit are granted broad discretion in refusing to transfer under section 1404(a) and "only in rare instances have appellate courts overridden a trial court's decision not to transfer." *Commodity Futures Trading Commission v. Savage*, supra, 611 F.2d at 279 (9th Cir. 1979) (determining that although it may have reached a different conclusion, the District Courts' discretion to not transfer would not be disturbed, especially given the District Court's long history of oversight of the case).

Here, Defendants argue that Plaintiffs' choice of venue is entitled to little deference because this District has no meaningful ties to the challenged decision.  Transfer Motion Doc 488-1 6:9-11.  Defendants are wrong on both the facts and the law. As even the cases cited by Defendants recognize, deference to a plaintiff's choice of forum is reduced (but not eliminated) only when "the operative facts have not occurred within the forum of original selection *and* that forum has no particular interest in the parties or the subject matter." *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (emphasis added); *Lou v. Belzberg*, supra, 834 F.2d at 739 (9th Cir. 1987).

This District has a particular interest in both the parties and the subject matter. Here, Defendants "reside" in this District, its corporate headquarters are in San Ramon, are registered to do business in California, and maintain offices in this District.  Collectively, 10% of the related Petitioners reside within California and as among all named Plaintiffs and former opt-in plaintiffs (approximately 900), they have already actively participated in discovery and litigation commenced in this District for six years nearly 200 times. Karczag Decl., ¶ 5, Exh. F. As such, Plaintiffs' contacts with this District are sufficient to warrant deference to their choice of forum. See, e.g., *Applied Elastometrics v. Z-Man Fishing Prods., Inc.*, No. C 06-2469 CW, 2006 WL 2868971, at *3 (N.D. Cal. Oct. 6, 2006) ("Plaintiff is a California corporation located in this district. California has an interest in litigation concerning its residents."); *Amirhour v. Marriott Intern, Inc.*, No C 06-01676 WHA, 2006 WL 3499241, at *6 (N.D. Cal. Dec. 4, 2006) (finding

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

that transfer was inappropriate even where the location of the accident and some of the witnesses were located in the proposed transferee court, because California had an interest in the litigation, "as one of its residents was injured on account" of the defendant's conduct).  California has an interest in ensuring that corporations headquartered in its State comply with all applicable labor laws.

**B.**   **This Action is a Summary Proceeding, With No Witnesses, No Documents,  No Trial, and Only One Simple Outcome.**

These cases now involve petitions to compel arbitration, not trials –proceedings that will not involve a jury and will be determined promptly is a summary proceeding.   Black's Law Dictionary 1242 (8th ed. 2004) (defining summary proceeding as "[a] nonjury proceeding that settles a controversy or disposes of a case in a relatively prompt and simple manner"); see also *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984) (providing that the FAA "permits parties to an arbitrable dispute [to move] out of court and into arbitration as quickly and easily as possible) (internal quotations removed).  Under the FAA, on a Petition to Compel, the District Court's *only* role is to determine whether an agreement to arbitrate exists and whether any party has refused to arbitrate – a finding the Court has already made in its Order of December 2, 2011 . Doc 457; *PainWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2nd Cir. 1996).  And, if so, to Order the parties to arbitration in this District.  *Cohen v. Wedbush, Noble Cooke, Inc.*, 841 F.2d 282, 285 (9th Cir. 1988); see also *Bauhinia Corp. v. China Nat. Machinery& Equipment Import & Export Corp.,* 819 F.2d 247, 250 (9th Cir. 1987), quoting 9 U.S.C § 4 (providing arbitration proceedings "shall be within the district in which the petition for an order directing such arbitration is filed").

Given that the parties have already fully briefed the issue of whether arbitration is appropriate, there will be no witnesses on the single issue of whether arbitration is appropriate, no documents and no jury decision is necessary in deciding whether to compel arbitration. Thus, the factor as to where the witnesses are located is irrelevant to the issue of whether arbitration should be compelled.  *Kasey v. Molybdenum Corporation of America*, 408 F.2d 16, 20 (9th Cir. 1969) (affirming trial judge's decision not to transfer case when litigation had been

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

pending in the court for nine years, was moving to a conclusion, and no witnesses would be involved); *Center for Biology Diversity v. Lubchenko*, 2009 U.S. Dist LEXIS 119794, at * 9 (N.D. Cal. 2009) (providing that the factor regarding convenience of witnesses is irrelevant when there are no witnesses to consider because the case will be decided on summary judgment); see also *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 12 (D.D.C. 2007) (finding that because the case would "likely be based solely on the administrative record" and decided on summary judgment motions, the "convenience of witnesses and access to proof [were] irrelevant to the issue of transfer of venue"); *Amoco Prod. Co. v. U.S. Dep't of Energy*, 469 F. Supp. 236, 243-44 (D. Del. 1979) (finding that the fact that the cases involved raised "issues which [were] purely legal, and therefore would be capable of resolution by summary judgment motions, the conveniences of the parties and witnesses [did] not favor litigation" of the actions in one district or the other); see also *Guy v. Hartford Life Group, Ins. Co.*, 2011 WL 5525965, at * 3 (N.D. Cal. 2011) (although granting transfer based on public factors[2], the court provided that since there will be no witnesses in the action and it will strictly be tried on the administrative record, the factor for convenience of witnesses is neutral).

## C.   A Transfer Motion is Not Contemplated by the FAA.

The Federal Arbitration Act mandates that arbitration proceed in the district in which the petition was filed if the district court would have jurisdiction over the action and the court is satisfied that the petition to compel arbitration is proper.[3]   The FAA does not provide the judge

---

[2] Defendants have not argued that transfer should be granted based on public factor grounds.

[3] 4 U.S.C. § 9 provides: A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration <u>may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action</u> or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The <u>court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.</u>

with any discretion to take any other means other than choosing to compel arbitration in the district in which it is brought, choosing to use the mandatory language such as "shall" as opposed to "may". *City of Los Angeles v. U.S. Dept. of Commerce*, 307 F.3d 859, 880 (9th Cir. 2002), citing *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (providing "…long established Supreme Court law describes the word 'shall' as creating a mandatory obligation"); *Lopez v. Davis*, id. (providing "[t]he statute's use of the permissive 'may' contrasts with congress' use of a mandatory 'shall' elsewhere in [the statute] to impose discretionless obligations…").]

The Ninth Circuit, in *Simula, Inc. v. Autoliv, Inc.*, supra, 175 F.3d at 719-720 (9th Cir. 1999) ruled that under the FAA, a District Court does not have much discretion to do anything other than compel or not compel arbitration, providing:

The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985). Such agreements are to be rigorously enforced. *See Id.* at 221. Under *§ 4 of the FAA, the district court must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue. Therefore, the district court can determine **only** whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms. *See Howard Elec. & Mech. v. Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985).

"The role of the courts in reviewing matters subject to arbitration, therefore, is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists; and ii) whether one party to the agreement has failed, neglected or refused to arbitrate, in whole or in part." *PainWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2nd Cir. 1996).

Other Courts that have considered this issue head on-recognize that this means that a District Court cannot "transfer" a petition to compel to another district. In *Manny Pollak & Co. v. Shelgem, Ltd.*, the defendant moved to transfer under the transfer statute a petition to compel arbitration pursuant to the FAA filed in New York District Court to Georgia, arguing that the corporate defendant's office was located in Georgia, that most of the potential witnesses were

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

located in Georgia, that the pertinent documents and records were in Georgia, the activity in dispute took place in Georgia, and that the parties choice of Georgia law indicated that the parties contemplated Georgia. *Manny Pollak & Co. v. Shelgem, Ltd.*, supra, 1990 U.S. Dist. LEXIS 15167, *8 (S.D.N.Y. 1990). However, the Southern District of New York, citing to the Second Circuit and other authority, held that the FAA provides a mandatory requirement that arbitration "shall be within the district in which the petition is filed", which means that the court "lacks the power to order the transfer of the case [under 1404(a)]"). *Id.* at *9, citing *Aacon Auto Transport, Inc. v. Ninfo*, 490 F.2d 83, 84 (2nd Cir. 1974).

Although there is a split amongst the Circuits, in that some Circuits ignore the FAA's express restriction and allow Courts to order arbitration to proceed in another District, the Ninth Circuit has recognized and enforced the express limitations found in the Federal Arbitration Act that arbitration must proceed within the District in which the Petition is filed. *Cohen v. Wedbush, Noble Cooke, Inc.*, supra, 841 F.2d at 285 (9th Cir. 1988) (Doc 457 p. 4). As a consequence, utilizing the transfer statute to "transfer" an arbitration to a different district would result in an end run around the FAA's express limitation, as found by the Ninth Circuit, prohibiting a court from ordering that the arbitration proceed in another District.

"Congress, in drafting the [FAA], was more concerned with promoting arbitration than with making sure that arbitration would go forward in some particular place. *Capitol Converting Co. v. Officine Curioni*, No. 87 C 10439, 1989 U.S. Dist. LEXIS 13904, at *5 (N.D. Ill. Nov. 9, 1989). Allowing Defendants to utilize the transfer statute to create an additional round of briefing and the potential transfer to a different court, when a Petition was properly filed in this court "would defeat the 'policy of rapid and unobstructed enforcement of arbitration agreements' embodied in the FAA." Doc 457, p. 8, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983).

### D.   Defendants Have Not Made the Requisite Showing to Justify Transfer.

"[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in proceedings under this section, and courts generally will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere." *Florens Container v. Cho*

USDC, ND, Case No.: C 06 0715 SC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

*Yang Shipping*, 245 F.Supp.2d 1086, 1092 (2002), citing *Securities Investor Protection Corp. v. Vigman*, supra, 764 F.2d at 1317 (9th Cir. 1985). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, supra, 805 F.2d at 843 (9th Cir. 1986).

> **i.** **Defendants Have Not Made the Requisite Showing That Convenience of the Witnesses Weighs in Favor of Transfer.**

Defendants *assert* that due to the convenience of the witnesses, each of the petitions for arbitration should be transferred to non-California states, where the employee last worked, because it is "likely" that the relevant witnesses still live in that state. This is the type of vague generalization that numerous Ninth Circuit District Courts have deemed insufficient to meet the convenience of witnesses criteria. Case law is legion and uniform: This is because "the party seeking a transfer cannot rely on vague generalizations as to the convenience factors. The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include." *Florens Container*, supra, 245 F. Supp. 2d at 1093 (N.D. Cal. 2002) (Judge Jenkins), citing *Heller Financial, Inc. v. Midwey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); see also *CE Res., Inc. v. Magellan Group, LLC*, 2009 U.S. Dist. LEXIS 58354, at *18 (E.D. Cal. 2009); *Armored Group, LLC v. Supreme Corp.*, 2009 U.S. Dist. LEXIS 72594, at *8 (D. Ariz. 2009); see also *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1111-12 (C.D. Cal. 2007); *Fireman's Fund Ins. Co. v. National Bank for Coops.*, 1993 U.S. Dist. LEXIS 12219, at *11-12 (N.D. Cal. 1993) (Judge Caulfield); *Allstar Marketing Group, LLC, v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1133 (C.D. Cal. 2009)

"If the transfer is for the convenience of witnesses, defendant must name the witnesses it wishes to call, the anticipated areas of their testimony and its relevance, and the reasons why the present forum would present a hardship to them." *Bohara v. Backus Hosp. Medical*, 390 F.Supp.2d 957, 963 (C.D. Cal. 2005). "…[C]ourts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant." *Florens Container*, supra, 245 F. Supp. 2d at 1092-93, citing *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974). "If a party has merely made a general allegation that witnesses will be

1   necessary, without identifying them and indicting what their testimony will be the application for

2   transfer will be denied." *Fireman's Fund,* 1993 U.S. Dist. LEXIS 12219 at *11-12. "If the

3   moving party merely has made a general allegation that necessary witnesses are located in the

4   transferee forum… the application for transferring the case should be denied." *Armored Group,*

5   supra, 2009 U.S. Dist. LEXIS 72594 at 8, quoting 15 C. Wright, A. Miller & E. Cooper, Fed.

6   Prac. & Proc. § 3581, at 227-28 (3d. ed. 2007)

7       The facts in the case at hand are similar to the facts of *Armored Group LLC,* in which

8   defendant argued that it would be more convenient to litigate where their employees and files are

9   located – in either Indiana or Texas – but the District of Arizona found that these statements are

10  merely vague generalizations. *Id*; see also *CE Res., Inc. v. Magellan Group, LLC,* 2009 U.S.

11  Dist. LEXIS 58354, at *15-19 (E.D. Cal. July 7, 2009) (finding that argument that witnesses

12  reside in Maryland was insufficient to prove convenience of the parties); see also *Florens*

13  *Container,* 245 F.Supp. 2d at 1092 (finding that argument that witnesses reside in Alabama and

14  Korea was insufficient to prove convenience of the parties); *Amini Innovation Corp. v. JS Imps.,*

15  *Inc.,* supra, 497 F.Supp. 2d 1093, 1111-1112 (C.D. Cal. 2007) (merely stating that witnesses

16  reside in New York and New Jersey was insufficient to prove inconvenience to witnesses).

17      Also, in *Fireman's Fund Ins.,* defendant argued that the convenience of witnesses and

18  documents strongly favors transfer to Texas; that many pertinent witnesses and documents are in

19  Texas since those who investigated the claims reside in Texas or previously resided in Texas;

20  that custodian of the damaged property at issue resided in Texas; that the parties responsible for

21  the conversion of money, securities and property resided in Texas; that accountants and expert

22  witnesses necessary to prove conversion resided in Texas; and that these Texas-based employees

23  clearly have material testimony to provide concerning the existence and nature of losses.

24  *Fireman's Fund Ins. Co.,* supra, 1993 U.S. Dist. LEXIS 12219 at 10.  However, the Court

25  rejected the requested transfer, holding that defendant provided:

26          no admissible evidence that their claims adjusters and investigators do or did
27          reside in Texas (and point out that it is irrelevant where they did reside -- the
            question is where they reside now). Furthermore, CoBank has provided only
28          conclusory statements about its expected witnesses. It has not provided admissible

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

1    evidence of who they are, where they currently live, or why their testimony would

2    be material. *Id.* at 11.

3    And this is true even though defendant in *Fireman's Fund* provided a list of names of "other

4    logical witnesses", "none of [whom] are California residents, and with one or two exceptions, are

5    all Texas Residents". Because, "again, [defendant] has failed to provide admissible evidence as

6    to where these people currently live and why they are material witnesses." *Id.* at 13. Ultimately,

7    the court found that defendant "has fallen far short of its burden of explaining how these

8    witnesses' testimony will be relevant or necessary and of providing competent evidence of where

9    these witnesses live." *Fireman's Fund Ins. Co.*, supra, 1993 U.S. Dist. LEXIS 12219, at *14.

10    Similarly, here, Defendants fall far short of this showing. There is not an identification of a

11    single witness in Defendants omnibus motion to transfer any of the 257 Petitions, and therefore,

12    not a single evidentiary showing of what testimony is relevant and needs to be provided by that

13    witness. Defendants' entire showing amounts to inadmissible statements by Defendants'

14    employees and attorneys that there has been a substantial document[4] production—in this

15    District—and then conjecture and speculation that there are other witnesses located in other areas

    with relevant information.

16         And, Defendants provide a single table showing the current residence of the Petitioner

17    and where they last worked. To the extent that this amounts to any admissible evidence

18    whatsoever, it is solely based upon the convenience of the party witnesses and "courts accord

19    less weight to the inconvenience of *party* witnesses since they can be compelled to testify

20    regardless of the forum in which the lawsuit is litigated." *Allstar,* supra, 666 F.Supp.2d at 1132;

21    see also *Accentra, Inc. v. Staples, Inc.* 2008 WL 7400627, *5 (C.D. Cal. 2008).

22         And, Defendants provide seven corporate locations, four of which are in California: (1)

23    San Ramon California – Corporate headquarters; (2&3) Carlsbad California – Administrative

24    Center (payroll, accounting and HR) (payroll and personnel documents); (4) Sherman Oaks

25    California – Regional Office; (5) Portland Oregon – Regional Office; (6) Englewood Colorado –

26

---

27    [4] Note, if the request is based on the location of records and documents, the movant must show
particularly the location, difficulty of transportation, and the importance of such records. *Bohara*

28    *v. Backus Hosp. Medical Benefit plan*, supra, 390 F.Supp.2d at 963-64 (C.D. Cal. 2005).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

1    Regional Office; (7) Dallas Texas – Regional Office.  See Doc 488-1 2:6-10, identifying the

2    foregoing locations, including Carlsbad twice. Thus, half of Defendants' corporate offices are in

3    California, and the other three are in just three states, Oregon, Colorado and Texas.  Meanwhile,

4    the chart provided by Defendants shows when taking into consideration "last worked" and "last

5    resided" locations, the 257 petitions they seek to transfer now reside and have worked in over 31

6    different states.  Karczag Decl., ¶ 6, Exh. G.  Thus, at best, Defendants have made the assertion

7    that for some undefined population of the claimants, some documents and witnesses will be

8    located in California and some will be located in three other states.  How that favors transfer to

9    any of the 30 other states where claimants formerly resided or formerly work, or what it does

10   other than show that Defendants' corporate center of gravity (for witnesses and documents) is

11   indeed in California, is unexplained.   It is unexplained because it is precisely the sort of

12   conclusory reasoning unbound by the specific factual showing that is not permitted on a motion

13   to transfer.

14          And, the reason why a specific evidentiary showing is required is to prevent the delay and

15   expense that is caused in any transfer to a different district.  Here, for many claimants, it could be

16   that there are no witnesses presently residing near where they last worked, especially if that was

17   five or ten years ago, or if they club that they worked at is now closed.   In prior briefings,

18   Defendants have contended that at some clubs that they have a 100% annual turnover.  Doc 348,

19   4:24-27.  Yet, based upon mere conjecture that witnesses would "likely" be located there, they

20   would have this Court transfer the Plaintiffs' petitions to compel arbitration  thousands of miles

21   away  from  the  their  chosen  forum  on  the  basis  of  these  supposed  unnamed  witnesses'

22   convenience.  Moreover, to the extent that plaintiffs' testimony is right (that they worked off-the-

23   clock, that they worked more than 40 hours per week, and that their primary duties do not qualify

24   them for any exemption) Defendants won't have any witnesses to refute it.  Thus, unless they

25   know of specific witnesses who will provide support for their contrary position, Defendants

26   cannot force a change of venue.  Recall that in their Decertification motion, Defendants did not

27   provide  a  single  declarant  to  provide  testimony  that  contradicted  any  specific  plaintiff's

28   declaration.  Nor did they provide a single witness that contradicted anything a deposed plaintiff

testified to in his or her deposition.  Instead, they relied mainly upon California witnesses to provide testimony as to what those nonPlaintiff employees generally did.  Karczag Decl., ¶ 7. Although Defendants did have two out-of-state declarants, those declarants only testified to their personal experience, and did not provide any testimony concerning any plaintiff in this case.

Noteworthy is that even the Northern District Court Judge, Hon. Illston, whom Defendants rely most heavily upon in her 1999 ruling on the convenience of the witnesses has more recently recognized with the convenience of modern transportation, the location of the witnesses is not as important a factor.[5]  *General Retirement System of City of Detroit v. Wells Fargo Mortg. Backed Securities 2006-AR18 Trust*, 2009 WL 2137094, at *6 (N.D. Cal. 2009) (Judge Illston) ("significance of this factor is substantially reduced by the ease of communication and interstate air travel in today's business community), citing *Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 10 (2nd Cir. 1995) (holding "forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel").

### ii.       *Defendants' Excuse For Not Providing the Required Factual Showing Is Not Persuasive.*

Defendants' singular response to their lack of ability to make the requisite showing is found in footnote 3 on page 9 of their memorandum of points and authorities, wherein they state that because the Court excused Plaintiffs from providing a list of witnesses with their demand, Defendants are unable to point to any witnesses now in the context of transfer, and it would be "inequitable" for them to have to do so.  Doc 488-1 9:25-26, n. 3.  Defendants' argument is not persuasive for four reasons.

First, it mixes apples and oranges.  In the context of demanding arbitration, Defendants already stated in their Decertification briefing that they would arbitrate the disputes with

---

[5] Also, if Defendants try to point to some of its current employees as being witnesses, "courts accord less weight to the inconvenience of *party* witnesses since they can be compelled to testify regardless of the forum in which the lawsuit is litigated." *Allstar Marketing Group, LLC, v. Your Store Online, LLC,* 666 F.Supp.2d 1109, 1132 (C.D. Cal. 2009), citing *Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*, 2006 WL 2868971, *4  (N.D. Cal. 2006) (Judge Claudia Wilken); see also *Accentra, Inc. v. Staples, Inc.* 2008 WL 7400627, *5 (C.D. Cal. 2008).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

Plaintiffs.  Doc 428 40:7-12 ("Additionally, the detriment to Plaintiffs from decertification is ameliorated by the fact that each Plaintiff is subject to an arbitration agreement with 24 Hour. While 24 Hour refused to proceed to a class-wide arbitration, it would agree to arbitrate individual claims. Defs.' Second Reply at 14.")  That Plaintiff employees would have to provide a list of their witnesses who they knew would testify in support of their claims *and* contact information for those witnesses as a condition to even commencing arbitration was mooted by Defendants' position.

But, second, even if it weren't, at this stage Plaintiffs' only known witnesses are essentially themselves and the other opt-in / named Plaintiffs, who are all represented by counsel in this matter.  There is no evidence that Plaintiffs have any "other" hidden witnesses.  In fact, during the duration of this case for six years, Plaintiffs have relied entirely on their own evidence in terms of declarations and depositions, as well as witnesses whom Defendant has produced pursuant to FRCP 30(b)(6) deposition notices (which, as Defendants concede, to date, have all been from California—save one) (DOC 474-1 3:1-3 (Kloosterman Declaration noting that all but one of the 30(b)(6) Designees produced by Defendants were from California)).  Thus, as a factual matter, there are no other witnesses to name—so there was no list to be provided.  To be clear, at this stage, Plaintiffs are not aware of any other witnesses other than themselves and as of yet unidentified 30(b)(6) designees who will testify in Arbitration.  Karczag Decl., ¶ 8.  Plaintiffs anticipate the possibility that discovery conducted within arbitration may reveal additional witnesses

Third, Defendants contend that if Plaintiffs had provided names of their witnesses, then Defendants would have had the requisite information to make their required showing for transfer. But, that doesn't make sense.  Hypothetically, to the extent that Plaintiffs had additional witnesses to call (and there is no evidence that they did), those witnesses would be identified based upon their testimony that is favorable to Plaintiffs.  Whether Defendants could/would then contact those additional witnesses, interview them, and then ascertain that they also had relevant evidence to provide for their defense, is purely speculative.  Moreover, because the witnesses would be witnesses that Plaintiffs would be relying upon for the arbitration, those witnesses

USDC, ND, Case No.: C 06 0715 SC

1    would have to come to the arbitration, thus, the required showing for transfer--that it would be a

2    hardship for them to travel from whatever location they were to California--would not make

3    sense, because these witnesses would already be travelling here.

4           Fourth, it is sophistry to equate the fact that no additional witnesses were identified

5    within the four corners of the Petitioner's Demand (when there were none to include) with the

6    utter failure to meet the statutory requirement necessary to make a specific, detailed factual

7    showing of which witnesses are required, what their testimony will be, why it is relevant to the

8    case, and where the witness resides.  Defendants have cited not one case in which any Court has

9    ever allowed a movant to evade the requisite evidentiary showing.  Nor have they demonstrated

10   why Plaintiffs not providing any additional list of witnesses to support their affirmative case in

11   fact prejudiced Defendants' ability to present any information whatsoever on any other witnesses

12   that would support their defense.  The fact is that Plaintiffs did (completely as well as)

13   substantially comply with the arbitration demand, especially in light of the extensive history of

14   the present litigation (Doc 457, p10), whereas Defendants made no attempt to comply with

15   §1404(a)'s well-established requirements.

16       **E.     Defendants Have Not Made the Requisite Showing That The Location**

17           **of the Sources of Proof Favors Transfer.**

18           Similarly, if the motion is based on the location of records and documents, the movant

19   must show particularly the location, difficulty of transportation, and the importance of such

20   records.  *Bohara v. Backus Hosp. Medical Benefit Plan*, supra, 390 F.Supp.2d at 963-64 (C.D.

21   Cal. 2005).  Defendants have not done so in this case.  In fact, defendants have conceded that

22   many of the documents, including but not limited to payroll records and personnel documents

23   related to Petitioner's allegations have already been produced in *Beauperthuy*, a case pending in

24   the Northern District of California.   See Transfer Motion Doc 488-1, 9:2-4, 10:12-15.

25   Additionally, to the extent that there is a document or set of records that defendants seek from

26   individual Petitioners, Petitioner will produce those document in the Northern District of

27   California.  Karczag Decl., ¶ 9.

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

**F.      Even if There Is Inconvenience To Witnesses To Come to California, Petitioners Will Stipulate To Having Them Testify Telephonically or Via Web Conferencing.**

Assuming arguendo that there are witnesses that would be inconvenienced by testifying in California – even though out of 273 Petitioners 24 Hour has not even named a single witness who would be – Petitioners will stipulate to having those out of state, non-employee (employees would be compelled to testify) witnesses testify either by telephone or web conferencing.  Rule 22 (g) of the JAMS rules for employment arbitration provides that "The Hearing or any portion thereof may be conducted telephonically with the agreement of the parties or in the discretion of the Arbitrator."  See rule 22 (g), JAMS Employment Arbitration Rules & Procedures (effective July 15, 2009) *available at* http://www.jamsadr.com/rules-employment-arbitration/.   Other arbitration associations have similar rules.  See *Price v. HotChalk, Inc.*, 2010 WL 5137896, at *4 (D. Ariz. 2010), citing to R-28, AAA Employment Arbitration Rules and Mediation Procedures (effective Nov. 1, 2009), *available at* http://www.adr.org/sp.asp?id=32904 (providing that "AAA rules for employment-related cases permit the arbitrator to 'allow for the presentation of evidence [at the hearing] by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence.")  Karczag Decl., ¶ 9, Exhs. H and I.

**G.      Defendants' Arguments Do not Make Sense Considering the Diverse Employment History of the Claimants and Instead Reveal that the Real Reason They Seek Transfer is More Delay.**

As the spreadsheets attached to the Declaration of Justin P. Karczag show, nearly all of the 257 Petitioners have worked at multiple locations and over $1/3^{rd}$ have worked in multiple states, which means that (again, assuming *arguendo*) the witnesses who ultimately are summoned to testify as to a single Petitioner will likely reside in multiple cities and multiple states, so many those witnesses would be inconvenienced even if the Petitions to Compel Arbitration were transferred to other states in the area with the Petitioner last worked.  Karczag Decl., ¶¶ 10-11, Exhs. J-K.  Of the 273 Petitioners, 78 have changed states either during or after

1    their employment, 30 of them have at some time lived in California, and 30 of them presently

2    live in California.    Karczag Decl., ¶ 4, Exhs. B-E.

3          When it comes to the subset of 257 Petitions, the numbers are even more striking.  For

4    example:

5          Petitioner Michael Aimoto worked in both Oregon and Hawaii;

6          Petitioner Erin Addesso worked in nine different locations in Colorado;

7          Petitioner Michael Akana worked in Idaho and Washington;

8          Petitioner Kenneth Arterberry worked in Texas, Kansas, and California;

9          Petitioner Allison Ash (Romano) worked in Texas, Missouri;

10         Petitioner Linda Bell worked in California, Oregon and Washington;

11         Petitioner Holly Childers worked in Washington, Idaho and Oregon;

12         Petitioner Charles Co worked in Washington, Idaho and Montana;

13         Petitioner Tifni Davey worked in Texas and Oregon;

14         Petitioner Ron Duran worked in Texas, Idaho, California, Colorado, Nevada and

15   Arizona;

16         Petitioner Jared Festner worked in California, Nevada and Colorado;

17         Petitioner Cory Gilday worked in Oregon, Washington, and Florida;

18         Petitioner Krista Harman worked in Colorado, California and Missouri;

19         Petitioner Lyle Lawrence Latimer worked in Colorado, Missouri, Kansas and Nebraska;

20         Petitioner Randy Marsh worked in Texas, Florida and Colorado;

21         Petitioner Kevin Moor worked in Colorado, California and Florida; and,

22         Petitioner Jason Lee Washbourne worked in California, Oregon, Utah, and Washington.

23   Karczag Decl., ¶¶ 10-11, Exhs J-K.

24         In total, of the subset of the 257 Petitions that Defendants seek transfer on to the "last"

25   place of employment, 50 Petitioners worked in two states, 17 Petitioners worked in three

26   separate states, and four Petitioners worked in 4-6 different states.  Karczag Decl., ¶ 10, Exh. J.

27   This is all in addition to the vast majority of Petitioners who worked at numerous clubs

28   throughout a particular state.  *Id.*

USDC, ND, Case No.: C 06 0715 SC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

It is pure speculation by defendants to argue, without identifying even one single witness or submitting any expected testimony, that it would allegedly be more convenient for witnesses if the Petitioners' arbitration proceedings were transferred to 21 different states.  Why would it be that the last location where they worked would be the most convenient in terms of witnesses or documents?  There is no showing that when they transfer to a different club any other employee (witness) transfers with them.  Or, that when a Petitioner transfers to a different club, their entire HR file goes with them.  Moreover, Defendants' contention that they want to have the cases transferred to where the employee last worked, unless that place was California, directly rebuts this notion.  Defendants say that if the last place worked was in California, then that should be ignored because the present claims concern non-California work only.  Motion Doc 488-1, 3:21-23.  In so doing, Defendants concede (1) the last location worked has zero impact in terms of transfer factors (convenience etc), when it comes to work performed at other locations and (2) Defendants are trying terribly hard to have these cases decided anywhere other than where their litigation history and tactics are known and can be reined in.

## H. Defendants Should Not Have The Texas Cases Transferred Because the Arbitration Agreements are Unenforceable in Texas.

As this Court is aware, the Fifth Circuit Court of Appeals in *Carey v. 24 Hour Fitness* (5th Cir. No. 10-20845), recently affirmed a ruling by a Texas District Court that Defendants' 2005 arbitration agreement in unenforceable because it allows for unilateral retroactive amendment. As briefed in Plaintiffs Notice of Ruling (Doc 495), this illusory provision in the 2005 agreement is the exact same provision that is found in the 2001 Agreement, 2007 Agreement and prior versions.  Consequently, if this Court transfers the Texas Petitions to Texas in response to Defendants' contention that the arbitration agreement can be enforced there, it will run contrary to the controlling precedent in that Circuit.

## I. Evidentiary Objection Pursuant to Local Rule 7-3(a).

In addition to their substantive arguments, Petitioners further object to the following evidence: (1) Declaration of John Kloosterman in Support of 24 Hour Fitness' Consolidated Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Kloosterman Decl.") [Doc. 488-2];

USDC, ND, Case No.: C 06 0715 SC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

1  (2) Declaration of Steven K. Ganotis In Support of 24 Hour Fitness' Consolidated Motion to

2  Transfer ("Ganotis Decl.") [Doc. 488-3]; and (3) Declaration of Carleen S. Dickey In Support of

3  24 Hour Fitness' Consolidated Motion to Transfer ("Dickey Decl.") [Doc. 488-4].

4          Petitioners object to ¶ 5(3:11-16)[6], and ¶ 7(4:1-7)[7] of the Kloosterman Decl. on the

5  grounds that there are inadmissible legal conclusions, violations of the best evidence rule, and

6  statements made based on inadmissible hearsay.    Paragraph 5 is replete with legal conclusions.

7  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007)) (providing "[c]onclusory,

8  speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of

9  fact and defeat summary judgment."). Paragraph 5 states that this district is all but foreign to

10 Petitioners, and that the claims actually arose in the districts where 24 Hour filed its Petitions – a

11 legal conclusion; that the arbitration agreements at issue provide that arbitration must be

12 compelled where the claim arose – legal conclusion; that having arbitration proceed where the

13 claim arose is the most practical method of dealing with claims under the other agreement – legal

14 conclusion.  Additionally, both paragraphs 5 and 7 lack foundation for statements made therein.

15 "[T]he declaration itself must contain facts showing the declarant's connection with the matters

16 stated therein, establishing the source of his or her information.  William W. Schwarzer, A.

17 Wallace Tashima, and James M. Wagstaffe, Federal Civ. Proc. Before Trial, § 12:59 (the Rutter

18 Group, 2011), citing FRE 602, also citing *United States v. Shumway*, 199 F.3d 1093, 1104 (9th

19 Cir. 1999).  The declaration does not have foundation to claim that the majority of witnesses

20

21 [6] Providing in full: "The sole substantive difference between [Petitioner's petitions and 24 Hour
   fitness's petitions] is that Claimant seeks to compel arbitration of the claims in this District –
22 which is save for 24 Hour Fitness' San Ramon corporate office, all but foreign to the witness and
   evidence at issue.  In contrast, 24 Hour Fitness seeks to compel arbitration where the claim arose,
23 which is required under the terms of some of the arbitration agreements at issue and is the most
24 practical method of dealing with claims under the other agreement."

25 [7] Providing in full "The majority of the witnesses conceivably relevant to Claimant's
   misclassification and overtime allegations (i.e. supervisors, co-workers, etc.) are, predictably,
26 located in and around the location where each Claimant worked, not San Francisco, California.
   The payroll and personnel documents relating to Claimant's allegations are typically stored at 24
27 Hour Fitness' administrative center in Carlsbad, California, but those documents have already
   been produced in the *Beauperthuy* matter.  At this time, 24 Hour Fitness is not aware of any
28 likely witness or evidence located in the Northern District of California."

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

conceivably relevant to claimant's misclassification and overtime allegations are predictably located in and around where each claimant worked.  Additionally, Mr. Kloosterman has not established foundation of his knowledge that the payroll and personnel documents relating to claimant's allegations are typically stored at 24 Hour Fitness administrative center in Carlsbad, California.   Also, Petitioners objects to paragraph 7 as hearsay to the extent that Mr. Kloosterman was told that payroll and personnel documents are stored in Carlsbad.  FRE 801.

Both the Ganotis Decl. and the Dickey Decl., are inadmissible for violating the best evidence rule and for lacking sufficient information to show personal knowledge.  With regard to the best evidence rule, the Ganotis's Declaration provides that the declaration is based upon his "review" of "records and files" that he has access to as 24 Hour Fitness' "Corporate Counsel", and attaches arbitration agreements allegedly signed by Petitioners.   Ganotis Decl. ¶ 1, Exh. A-E.   In each paragraph, he provides that company records indicate when a certain arbitration agreement took effect, but does not provide those company records. Ms. Dickey states that she is employed as a "Sr. Talent Management Systems Analyst," and that the statements in her declaration are based on her own "personal knowledge and upon review and knowledge of 24 Hour Fitness' records and files to which I have access." Dickey Decl. ¶ 1.  She also doesn't attach any records and files upon which she relied.  This failure to provide the company records relied upon by both Ganotis and Dickey violates the best evidence rule which demands that a party produce the original document unless otherwise provided for by statute. FRE 1002; see *Finley v. County of Martin*, 2009 U.S. Dist. LEXIS 119863 at *44-45 (N.D. Cal. December 23, 2009) (sustaining best evidence rule objection when declaration provided contents of a report, but the report was not provided).

Also, both the Dickey and Ganotis Declarations fail to provide adequate foundation that they possess sufficient knowledge. Mr. Ganotis states that he is "Corporate Counsel" for 24 Hour Fitness and Ms. Dickey states that she is a Sr. Talent Management System Analyst. But both declarations fail to establish how long Ganotis and Dickey have maintained their current positions, what documents they have access to, which documents they specifically reviewed, which individuals they spoke to that are familiar with the matter, what their job duties and

USDC, ND, Case No.: C 06 0715 SC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

1  responsibilities are, and how such duties, responsibilities and knowledge qualify them to make

2  the statements contained therein. This information is essential for plaintiffs and the court to

3  determine that Mr. Ganotis and Ms. Dickey possesses sufficient personal knowledge to testify to

4  the matters contained in their declarations.  FRE 602 (providing "[a] witness may testify to a

5  matter only if evidence is introduced sufficient to support a finding that the witness has personal

6  knowledge of the matter"); see also *Pacheco v. Homecomings Financial, LLC*, 2010 U.S. Dist.

7  LEXIS 64400, *10 (N.D. Cal. 2010) ("[t]he testimony of a witness who does not have personal

8  knowledge of the subject of his or her testimony is inadmissible").

9  **4.**   **Conclusion.**

10  Lest there be any doubt, Petitioners want to resolve their claims expeditiously by

11  arbitration.  They have been attempting to do so in the Northern District for more than six years.

12  Petitioners will produce their documents when requested in the Northern District, as Defendants

13  have done during discovery for the past five years in this case; Petitioners will respond to

14  discovery here; Petitioners will present themselves for arbitration here; Petitioners will put on

15  their liability and damages experts as witnesses in the Northern District.  Karczag Decl., ¶ 12.

16  Petitioners deserve to have their cases resolved quickly, efficiently and inexpensively.  Transfers

17  to more than twenty separate District Courts will merely compound the delay that Defendants

18  have orchestrated for the last six years.  Defendants do not make a requisite showing on the

19  motion to transfer and any witnesses from any other District may be presented and may testify in

20  any Arbitration by telephone or teleconference.  Our legal institutions depend on legitimate

21  process and the real possibility for redress. Federal policy strongly encourages arbitration that is

22  "prompt, economical, and adequate."  *Chavarria v. Ralphs Grocer Co.*, 2011 U.S. Dist. LEXIS

23  104694, at *24 (C.D. Cal. Sept. 15, 2011) quoting *A.G. Edwards & Sons, Inc. v. McCollough*,

24  967 F.2d 1401, 1404 n.2 (9th Cir. 1992).

25

26  / / /

27  / / /

28  / / /

USDC, ND, Case No.: C 06 0715 SC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

Dated: February 6, 2012

**DONAHOO & ASSOCIATES**
**FOLEY BEZEK BEHLE & CURTIS, LLP**


By: /s/ Justin P. Karczag                    .
Justin P. Karczag
Thomas G. Foley, Jr.
Richard E. Donahoo
Attorneys for Plaintiffs/Claimants

USDC, ND, Case No.: C 06 0715 SC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**