Hon. James Larson (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
Telephone: (415) 982-5267
Facsimile (415) 982-5287
Special Master

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABE BEAUPERTHUY, et al., | **Case No. 06-715 SC** |
| Plaintiffs, | **JAMS Reference No.1100069324** |
| v. | **SPECIAL MASTER'S REPORT AND RECOMMENDATION** |
| 24 HOUR FITNESS USA, INC., a California corporation dba 24 HOUR FITNESS; SPORT AND FITNESS CLUBS OF AMERICA, INC., a California corporation dba 24 HOUR FITNESS, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiffs ask the Court to reject the 2005 and 2007 arbitration agreements as unconscionable, and to enforce the 2001 agreement which contains no venue requirement and therefore applies California law; to order 24 Hour to proceed with arbitration in this district for the 16 Plaintiffs already so ordered in the Court's December 2, 2011 order; and to proceed also with the 273 Plaintiffs whose petitions to compel arbitration are currently pending in this district, who are also, with few exceptions, subject to the 2001 agreement. (Plaintiffs' March 16, 2012 letter brief at 2, Pltf Motion to Enjoin Prosecution of Later-filed Cases, ECF 463 at 14:14-15.) These are all opt-in Plaintiffs. (ECF 498-4, Def. Binder at tab 8, January 9, 2012 hearing, Tr.

1

28:15-17). Plaintiffs are not yet petitioning to compel arbitration of approximately 700 additional claims for which they have also demanded arbitration.

Defendant 24 Hour Fitness ("24 Hour") asks the Court to order that all of the claims remaining in this case, for Plaintiffs who worked and whose claims allegedly arose outside of California, be arbitrated in the districts where each individual plaintiff's claim arose. (Defendants' March 7, 2012 letter brief at 1).

The parties previously filed pleadings with the Court, as well as Letter Briefs and Supplemental Letter Briefs with the Special Master. At the hearing on arbitrator selection held at the office of JAMS on April 13, 2012, attorneys for the parties were offered an opportunity to argue their motions further, or file additional pleadings, but they chose to submit the matters on the pleadings already submitted.

The Special Master considered all the pleadings previously on file as well as the letter briefs and supplemental letter briefs submitted by the parties, and the record in this case and hereby submits the following report and recommendations:

## II.   SUMMARY OF RECOMMENDATIONS

### A.   Arbitration of 16 Claims Already Ordered by the Court Should Proceed.

The Special Master recommends that the Court order the parties to proceed with the arbitration in this district for the 16 claimants already ordered by the Court's December 2, 2011 order. 24 Hour reiterates in its pleadings that it agreed to arbitrate those 16 cases in San Francisco. (ECF 498-4, Def. Binder at tab 8, Ex. L to Karczag Decl., January 9, 2012 hearing Tr. 35:25-36:9) 24 Hour appealed the December 2, 2011 order, but did not request a stay and is willing to proceed with arbitration of those 16 claims. (*Id.* at 36:23-25). On April 11, 2012, the Ninth Circuit denied 24 Hour's appeal. (ECF 504). Following the hearing before the Special Master on April 13, 2012, the parties arrived at a method for selecting arbitrators and allocating claimants to each arbitrator. (See ECF XXX)   The Court previously approved this recommendation as modified.

///

2

**B.      Arbitration of the 273 Related Claims Should Also Proceed in This District.**

The Special Master recommends that the Court order arbitration to proceed in this district for the 273 additional claimants whose cases have been related to the lead case. The Special Master recommends that the Court reserve its decision on the remaining approximately 700 claimants, pending completion of the initial 16 arbitrations, and the parties' efforts to resolve the remainder of the case via use of sampling and mediation.  The parties have indicated an interest in using sampling, as a tool to assist in resolving the case.

**C.      Plaintiffs' Motion for Temporary Restraining Order (TRO) and Preliminary Injunction Should be Granted.**

**D.      Defendants' Motion to Transfer Venue Should be Denied.**

**E.      2005 and 2007 Arbitration Agreements Should be Found to be Unconscionable and Unenforceable.**

### III.      BACKGROUND

At the status conference on February 22, 2012, the Court (Hon. Samuel Conti) appointed Magistrate Judge James Larson (Ret.) as Special Master.  The Court ordered, "The Special Master will preside over all motions, disputes and make reports and recommendations to the Court. The Motions set to be heard on Friday, February 24, 2012 are referred to the Special Master." The Court in its Order Appointing Special Master (ECF 502) referred all related cases [1] as well as any cases related in the future for findings and recommendations on the following:

"Pursuant to Rule 53(b) (2) (A), the Special Master shall assist the Court with matters such as:

1)      determining whether a particular person is covered by an arbitration agreement;

2)      if so, determining which arbitration agreement applies;

3)      determining whether the terms of the arbitration agreement are enforceable;

4)      determining where and before whom arbitration shall occur, if at all;

---

[1] The district court in its order entered at ECF 468 related 178 cases to the *Beauperthuy* cases.

5)      determining the order in which cases shall be arbitrated;

6)      resolving motions now pending before this Court, (Defendants' Motion to Transfer Venue; Plaintiffs' Motion for TRO and Preliminary Injunction to prevent Defendants from proceeding outside California) as well as future motions;

7)      determining any issue of law or fact necessary to discharging the foregoing duties, subject to review as provided in paragraphs 15 through 19; and

8)      Other matters in which the Court wishes to utilize his services."

ECF 502, *Id.* at 3:18 – 4:1.

## IV.    FACTS AND PROCEDURAL BACKGROUND

Defendant 24 Hour Fitness USA, Inc. is a California Corporation with its principal base of business in San Ramon, California, within the Northern District of California. Defendant Sport and Fitness Clubs of America, Inc., is an Ohio corporation licensed to do business in California as 24 Hour Fitness with its principal base of business in San Ramon, California. (First Amended Complaint (ECF 33) at paragraph 2.

Claimants are Managers and Trainers who worked at 24 Hour Fitness gyms in approximately 21 states throughout the U.S., but mostly in Colorado, Texas, Florida, Kansas and Washington State. They claim that 24 Hour, their employer, violated their rights under the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. section 201 et seq. when it misclassified their jobs and miscalculated their pay, not paying them overtime or for time they worked "off the clock." (*Id.* at paragraph 7) They have been pursuing these claims in a number of courts for a number of years. They filed their complaint in this Court February 1, 2006 and have been through the FRCP 23 class certification and decertification process. There are a large number of related cases (273). Currently Plaintiffs are seeking arbitration and resolution of their claims. See Court's Order certifying the Managers' Class (ECF # 124) for details charting the history of the disputes between these two parties.

///

///

4

**A.    Three Arbitration Agreements Applicable to Plaintiffs**

1)    The 2001 Agreement states that the Federal Arbitration Act will apply -- there is no venue or specific arbitration service provision, or any specific set of rules. Consequently, all arbitrations governed by the 2001 Agreement may proceed in the Northern District of California.

2)    The 1998 and 2000 Agreements specify the rules of the American Arbitration Association, but there is neither a venue nor arbitration service provision. Plaintiffs contend that JAMS may arbitrate these claims under the rules of the American Arbitration Association and that these arbitrations may proceed under whichever version of the Agreement applies.

3)    The 2005 and 2007 Agreements – The parties disagree whether these versions contain venue provisions. Claimants say no; 24 Hour says yes. 24 Hour bases its contention on a provision that the arbitrator come from the geographic location where claimant either resided or last worked for 24 Hour Fitness. Plaintiffs argue persuasively that this provision lacks the "mandatory and exclusive" language necessary to establish sole venue. Plaintiffs also rely on the ruling by the U.S. Court of Appeals for the Fifth Circuit that the "Change-In-Terms" provision which allows 24 Hour to unilaterally amend these two Agreements is unenforceable. Consequently, any venue provision unilaterally added to the agreement by 24 Hour is unenforceable and claimants covered by these agreements may arbitrate their claims with JAMS in the Northern District, if they fulfill procedural requirements.

**B.    Nine Groups of Claimants**

1)    16 Named Plaintiffs, subject to the 2001 Agreement; Judge Conti has already ordered that arbitration for these Plaintiffs proceed in this district, and 24 Hour does not object. 24 Hour appealed Judge Conti's order compelling arbitration on this district and the Ninth Circuit dismissed the appeal for lack of jurisdiction, because the arbitration is ongoing.

2)    2001 Agreement Petitions: 273 related filed by claimants in the Northern District of California – there is no venue provision, Plaintiffs contend that 220 claimants' situations are factually the same as the 16 named Plaintiffs; 24 Hour claims the other 53 are subject to different Agreements, but Plaintiffs explain in Reply ISO Petitions (ECF 482) that either there is no

mandatory exclusive venue provision or 24 Hour cannot enforce the 2005 and 2007 venue selection provisions because they are unilateral retroactive amendments which are unenforceable;

3)   *Alkhayat et al. v 24 Hour Fitness et al.,* USDC ND Cal 12-0099 ("non-Texas Straddler Class") – 220 claimants subject to 2001 Agreement, should be arbitrated just like the 16 and 273, but again 24 Hour has unilaterally amended the 2005 and 2007 Agreements and seeks to enforce a "forum selection" clause to keep arbitration out of the Northern District. An arbitration demand was served on 24 Hour and JAMS in this district for these claimants in March 2011. Plaintiffs ask the Special Master to Recommend that this group's claims also be arbitrated in this district.

4)   *Abraham, et al. v 24 Hour Fitness et al.,* USDC ND Cal. 12-0096 ("Texas Straddler Class") – 72 claimants in same circumstances as # 3 above, except their employment ended in Texas.  This is the group for whom the Fifth Circuit has already ruled that the 2005 Agreement (and by extension the 2007 Agreement which has the same provision to which Pltfs object) is unenforceable.  An arbitration demand was served in this district on 24 Hour and JAMS for these claimants in March 2011.  Plaintiffs ask the Special Master to recommend that this group's claims also be arbitrated in this district.

5)   *Allen et al. v 24 Hour Fitness et al.,* USDC ND Cal. 11-5882 – The "1998/2000 Class" – These Agreements contain no forum selection clause. An arbitration demand was served on 24 Hour and JAMS for these 104 claimants in this district in March 2011. Plaintiffs ask that the Special Master recommend these claims be arbitrated in this district.

6)   *Anderson et al. v 24 Hour Fitness et al.,* USDC ND Cal. 12-0098 ("non-Texas pure 2005 Group").  63 claimants who did not work in Texas were subject to the 2005 Agreement which Plaintiffs ask the Court to find unenforceable. An arbitration demand was served on 24 Hour and JAMS in this district for these claimants in March 2011. Plaintiffs ask the Special Master to recommend that these claims be arbitrated in this district.

7)   *Alderete et al. v. 24 Hour Fitness et al.,* USDC ND Cal. 12-0092 ("Texas Pure 2005 Class") – Plaintiffs contend that, like the claimants in *Abraham*, these 13 claimants were

subject only to the 2005 version of the agreement, but their last place of qualifying employment was Texas, so 24 Hour is bound by the decision of the Texas district court and the Fifth Circuit that the 2005 Agreement is unenforceable. Demand for arbitration was served on 24 Hour and JAMS in this district for these claimants in March 2011. Plaintiffs ask the Special Master to recommend that these claims be arbitrated in this district.

8) *Troche et al. v 24 Hour Fitness et al.*, USDC ND Cal 12-0097 ("non-Texas 2007 Class"). Plaintiffs contend that these 68 claimants were not subject to the 2001 Agreement and ended their employment with 24 Hour some time when the 2007 Agreement was in effect. Claimants believe that the 2007 Agreement is identical with respect to the unenforceable provision. Out of an abundance of caution, they filed a separate complaint. A demand for arbitration was filed on 24 Hour and JAMS in this district on behalf of these 68 claimants in March 2011. Plaintiffs ask the Special Master to recommend that these claims be arbitrated in this district. This assumes that anyone subject to the 2007 agreement, if it was identical to the 2005 Agreement in respect to the unenforceable provision (the "Change-In-Terms" clause) would revert to the 2001 Agreement, venue would be proper in this district and the district court could only order arbitration in this district.

9) *Betancourt, et al. v 24 Hour Fitness et al.*, USDC ND Cal. 12-0094 ("Texas 2007 Class") – these 25 claimants have the same circumstances as the claimants in *Troche*, above, but their last qualifying employment was in Texas. Plaintiffs argue that, since the 2007 Agreement was identical with respect to the provision found unenforceable by the Texas district court and the Fifth Circuit, these claimants are subject to the 2001 Agreement, with no venue provision. A demand for arbitration was served on 24 Hour and JAMS on behalf of these 25 claimants in this district in March 2011. Plaintiffs ask the Special Master to recommend that these claims be arbitrated in this district.

(Pages 2-5 of Plaintiffs' Letter Brief)

**C.    Previous Court Rulings and Parties' Filings**

1)    The Court granted Plaintiffs' amended motion (Motion at ECF 449), compelling

arbitration as to 16 of the named Plaintiffs, on grounds that they were all covered by a version of the arbitration clause that was silent as to venue (the 2001 agreement);

2)      The Court also ruled that it had power to compel arbitration only in the district where the Court is located – here, the Northern District of California. (Dec. 2 order at 4). Accordingly, the Court ordered that arbitration for the 16 moving Plaintiffs proceed in the Northern District. *Id.* Defendants appealed this ruling on December 30, 2011 (ECF 475). This appeal was dismissed by the Ninth Circuit. (ECF 504). Defendants did not file a motion to stay arbitration of the 16 Plaintiffs' claims, and agree they should proceed in San Francisco. (Def. Binder at tab 8, ECF 498-4, January 9, 2012 hearing, Tr. 17:25-18:2, Ex. L to Karczag Decl. ISO Pltf Opp to Def. Motion to Transfer) The Court has so ordered.

3)      24 Hour Fitness also filed 257 Petitions to Compel Arbitration in 21 district courts throughout the U.S. ("out-of-district petitions") consistent with its theory that these were the proper venues. (See ECF 488-1, "Mot. To Transfer" at 3). 24 Hour concedes that 203 are proper opt-in Plaintiffs and are covered by the 2001 agreement, but argues that their arbitrations should take place where the Plaintiffs worked and resided -- outside San Francisco -- (Def. Binder at tab 8, ECF 498-4, January 9, 2012 hearing, Ex. L to Karczag Decl. ISO Opp. To Transfer Motion Tr.41:15-23)

4)      Plaintiffs in this case moved for a TRO (ECF 458) and preliminary injunction (ECF 463), to bar 24 Hour Fitness from proceeding on the out-of-district petitions, on the grounds that those petitions violate the first-to-file rule. The Court related all 273 of the Northern District Petitions to the lead case. (ECF 468) The Court stayed these cases and subsequently related and stayed seven more Petitions to Compel filed in this district (ECF 496).

5)      The Court did not rule on Plaintiffs' request for an order enjoining 24 Hour from petitioning to compel arbitration in other jurisdictions for any of the Plaintiffs or opt-in Plaintiffs from this case, all 983 of them. (Def. Binder at tab 8, ECF 498-4, January 9, 2012 hearing, Tr. 20:16-23) At the same hearing, the Court stated emphatically its intention to use one arbitration service, and take all the cases together "and solve them and get them disposed of other than make it a fruitland for the attorneys and not for the litigants." (*Id.*, Tr. 22:16-23)

## V.   ANALYSIS AND RECOMMENDATIONS

**Plaintiffs' Motion for TRO and Preliminary Injunction Should be Granted.**

Plaintiffs ask the Court to enjoin 24 Hour from filing any more petitions to compel arbitration in other districts, and to stay all such actions (Pltf Motion at ECF 463).

### A.   The "First-to-File" Rule.

As this Court has previously noted:

> "Under the generally recognized doctrine of federal comity, a district court may decline jurisdiction over an issue that is properly before another district court. *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 185–86 (1952). The purpose of the comity principle is of paramount importance. *Church of Scientology of California v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir.1979). The doctrine is designed to promote judicial efficiency by avoiding any unnecessary burden on the federal judiciary and by avoiding duplicative or conflicting judgments. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir.1991); *Church of Scientology*, 611 F.2d at 750.
>
> "In the Ninth Circuit, the "first-to-file" rule embodies the principles of federal comity. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir.1982). Under this rule a district court may transfer, stay, or dismiss an action when a similar complaint has been filed in another district court. *Alltrade*, 946 F.2d at 623. The rule is not to be mechanically applied, but rather "it is to be applied with a view to the dictates of sound judicial administration," and "should not be disregarded lightly." *Pacesetter Systems*, 678 F.2d at 95; *Church of Scientology*, 611 F.2d at 750.

*Peak v. Green Tree Fin. Servicing Corp.*, C 00-0953 SC, 2000 WL 973685 (N.D. Cal. July 7, 2000)

The Special Master examined the facts of this case in light of these considerations.

### B.   Three Factors Inherent in the First-to-File Rule Favor an Injunction.

The Court initially considers three factors in deciding whether to apply the first-to-file rule.

1) The chronology of the two actions;

2) The similarity of the parties;

3)  The similarity of the issues.

Chronologically, this case has been going on for a long time.  With respect to the similarity of parties and issues, there are no significant differences for purposes of this analysis; the Court has related many of the claims and there are ample grounds to find the claimants and issues to be sufficiently similar to invoke the first-to-file Rule.

When the Court issued its December 2, 2011 order that the Northern District is the appropriate forum and venue for arbitration of claims under the 2001 arbitration agreement, the other claimants whose claims were subject to the same agreement then filed petitions in the Northern District seeking the same relief that the Court granted to the 16 petitioners on December 2, indeed the same relief those 273 petitioners had been seeking in the Northern District since 2006.

The Court next considers whether it has jurisdiction over all parties to a lawsuit.  If so, it may enjoin later filed actions.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843-44 (9th Cir. 1986). The first case proceeds while the second case is enjoined, absent special circumstances. *Broadcom Corp. v. Qualcomm, Inc.*, 2005 WL 5925585, *2, (C.D. Cal. Sept. 26, 2005); see also *Decker Coal*, 805 F.2d at 844 ("trial court exercised sound judicial discretion in enjoining the later filed Illinois action.")

24 Hour argues that *Decker Coal* is "180 degrees the opposite" of this case, since the contract was entered into in Montana for coal mined in Montana and contracts are considered breached at the place of their performance (Montana) not their repudiation (Illinois).

24 Hour distinguishes *Bryant v. Oxxford Express*, 181 F.Supp. 2d 1045 (C.D.Cal. 2000), on which Plaintiffs rely, where an injunction was granted. The contract for Kobe Bryant, the plaintiff in that case, to autograph items for defendant to sell, was formed in and breached in California, but the defendant sued in New Jersey. The court enjoined the New Jersey action because the dispute occurred in California and the witnesses were all in California. 24 Hour claims its witnesses are mostly in Texas where more of its employees worked, with a few less in Washington State.

24 Hour argues that the case before this Court is closer to *Joe Boxer Corp. v. R. Siskind*

& Co., Inc., 1999 WL 429549 (N.D.Cal. June 1, 1999) (Illston, J.). In that case, Boxer, headquartered in San Francisco, but with a facility in New York, entered into a contract with Siskind, also based in New York. Boxer performed its part of the contract from New York. Siskind breached the contract and Boxer sued in the Northern District of California on December 23, 1998. On February 4, 1999, Siskind sued Boxer in New York state court; Boxer removed the action to the Southern District of New York. Boxer moved in the Northern District to enjoin the New York case; Siskind moved to transfer the Northern District case to New York. *Joe Boxer, Id.* at * 2-3. Judge Illston denied the injunction and granted the motion to transfer. *Id. at *10.* Despite the California case being first-filed by over two months, the court found the dispute occurred solely between the parties' New York offices and the relevant witnesses were all located in New York. *Id. at * 9.*

24 Hour also minimizes the precedence of Plaintiffs' filings; since they were only one day before 24 Hour started filing out-of-district. *Z-Line Designs, Inc. v. Bell'O Int'l., LLC,* 218 F.R.D. 663, 667 (N.D.Cal. 2003) (Whyte, J.) (denying motion to enjoin second-filed case when it was filed two days after the first-filed case).

24 Hour omits the fact that the *Beauperthuy* case had been initially filed in 2006, literally years before 24 Hour filed its petitions elsewhere. True, claimants re-filed as new cases, but there was no element of surprise involved.

The Court should find the cases relied on by 24 Hour to be inapposite, because they do not take into account that the initial underlying action was filed February 1, 2006, and the first Petition to Compel Arbitration was filed by claimants April 13, 2006. Furthermore, all related petitions were filed by opt-in Plaintiffs and were filed as new cases December 5, 2011. All of 24 Hours' out-of-state petitions were filed after December 5, 2011, and all of the issues are the same. 24 Hour even attached and incorporated Plaintiffs' Demands and Claims for Arbitration to its Petitions to Compel Arbitration. Defendants cannot credibly argue that their out-of-district petitions were close on the heels of Plaintiffs' claims.

Furthermore, these cases in fact weigh in favor of retaining this case in this district, because the center of gravity is here. Plaintiffs contend that the corporate policy decisions on

11

how to pay them were not made by each individual gym but by the corporation at its headquarters in this district.

### C.      This Case Does not Fit into Exceptions to the First-to-File Rule.

The "compelling circumstances" to justify an exception to the first-to-file rule are not present in this case; at least they were not created by Plaintiffs. These exceptions are typically: [1] bad faith, [2] anticipatory suit or [3] forum shopping. *Peak v. Green Tree Financial Srvcs. Corp.*, 2000 WL 973685, *3 (N.D. Cal. July 7, 2000) (Judge Conti), citing *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 628 (9th Cir. 1991).

1)      <u>Arguably bad faith by 24 Hour strengthens Plaintiffs' position</u>

24 Hour accuses Plaintiffs of bad faith, saying that they demanded arbitration on behalf of 983 claimants before determining the arbitration agreement applying to each claimant. Also, according to 24 Hour, Plaintiffs filed arbitration demands on behalf of dead people, people who are already in the arbitration process, people who have released their claims, people who only worked for the company for one or two days, and people who never properly opted into the *Beauperthuy* classes. (Def. Letter Brief at page 15 *et seq.*) 24 Hour also bases a claim of bad faith by Plaintiffs on their 273 recent filings which include people who are covered by the 1998 or 2000 agreements, which are subject to state law or American Arbitration Association (AAA) rules, not the FAA; people covered by the 2005 or 2007 agreements, which have venue provisions; others who never opted into this case, and 8 individuals who still work for 24 Hour Fitness, outside this district. (Hawaii, Texas, Los Angeles, and Seattle).

Finally, 24 Hour claims Plaintiffs present no evidence that the claimants on whose behalf it has filed petitions actually want to arbitrate in this district (Def. Letter Brief at page 15); 24 Hour complains of Plaintiffs' not negotiating in good faith and refusing to withdraw their motion as to the 16 after obtaining the relief requested by assurances from 24 Hour.  (ECF 474, Def. Memo at 16:15 – 17:9).

As discussed above, Plaintiffs explain that they couldn't withdraw their motion, which is what 24 Hour demanded, because the deadline to do so had passed, the hearing date had passed,

1    and the parties were awaiting the Court's ruling.

2        Plaintiffs contend they have acted in good faith and that the Court previously confirmed
3    this assertion, finding that Plaintiffs complied with the Court's order on decertification and the
4    2001 arbitration agreement. Plaintiffs point to Defendants' behavior as evidence of bad faith,
5    since this Court found that 24 Hour had refused to arbitrate or even provide copies of individual
6    arbitration agreements, including those they seek to rely on to oppose 53 of the 273 petitions.
7    (Donahoo Decl. ISO Reply to Motion to For Preliminary Injunction, ECF 463-4.)

8        Plaintiffs refer the Court to its own Order certifying the Managers' Class (ECF # 124) for
9    details charting the history of the disputes between these two parties, and the Court's observation
10   that, time after time, claimants sought to have their disputes resolved, first in arbitration in 2004,
11   then in the courts in 2006, and each time, 24 Hour strategically maneuvered to avoid substantive
12   resolution of their claims.

13       Plaintiffs first attempted to arbitrate their wage and hour disputes with 24 Hour July 2,
14   2004, before an AAA arbitrator (*Allen* action). (ECF 124, 3:18-4:11) Claimants' efforts were
15   moved back and forth between AAA and Superior Court for over a year. *Id.* Plaintiffs blame 24
16   Hour's maneuvering for the *Allen* claimants' being prohibited from bringing a collective
17   arbitration action on the grounds that all claimants were already covered by the FLSA cause of
18   action in the *Boyce* case. 24 Hour settled the *Boyce* action for California resident claimants only,
19   leaving employees who worked for 24 Hour in other parts of the country out of the *Boyce*
20   settlement. Claimants then filed suit in this Court on behalf of the non-California FLSA
21   claimants whose claims they had attempted to pursue in the *Allen* action, but were stymied by 24
22   Hour.

23       24 Hour did not at first challenge *Beauperthuy's* venue in the Northern District, where 24
24   Hours' corporate headquarters are located, but instead filed a motion to dismiss and a motion to
25   force amendment of Plaintiffs' pleading. Plaintiffs responded by filing a motion to compel
26   arbitration. (ECF 15). 24 Hour did not oppose the motion to compel arbitration, but maintained
27   its motion to dismiss, which the Court denied, along with the motion to order Amendment of
28   Plaintiffs' pleading.

In doing so, the Court stated in its Order that "Defendants have waived the right to compel arbitration and are thus barred from making any arguments on the basis of such a right." (ECF 66, 8:23-9:4, 9:11-18). The Court went on to find that "Plaintiffs have repeatedly requested that Defendants arbitrate their dispute [;] Defendants accepted once, only to soon thereafter stymie the process . . ." and that:

> "Plaintiffs have been forced to deal with defendants' confusing, contradictory, and time-consuming strategic maneuvering purportedly based on the [2001] Arbitration Agreement but which involves simultaneous explicit refusals to compel arbitration. The unnecessary delay and expense this has caused has affected not only Plaintiffs but also the various courts and arbitration institutions which have been involved."

(ECF 66, 9:27-10:4, 10:18-25.)

This order was entered November 28, 2006. *Over five years ago*, this Court was making findings that Defendants were wasting the time of Plaintiffs, courts, and arbitrators. The Court at that time feared unreasonable delay in resolving claimants' dispute with their employer, 24 Hour. At the most recent hearing in this case, the Court observed:

> "I'm going to do everything I can to see that it comes to a fast conclusion. Because if the [Petitioners] are entitled to relief, I would think they should get the relief while they are living, and not while it's part of their estate . . ."

(ECF 498-1 at 7:1-4; Def. Binder at tab 8, Karczag Decl. at p. 7).

Plaintiffs concede that there are some out-of-state petitioners for whom counsel in this case did not file petitions in this district. They ask the Court to exercise its equitable powers and also enjoin those petitions due to the bad faith of 24 Hour. The reason offered by Plaintiffs is that 24 Hour prevented Plaintiffs' counsel from identifying these potential claimants by withholding copies of the arbitration agreements that 24 Hour contended applied to each claimant. There were also petitioners in this district for whom 24 Hour argued that the 2001 agreement did not apply, but without providing the relevant versions for each claimant.

2)    Plaintiffs' petitions are not anticipatory filings.

The Court should find that Plaintiffs' petitions are neither "anticipatory filings" nor in

bad faith. Petitioners are doing nothing more than seeking to enforce the rights they invoked in March 2011, when they submitted their demand and claims, and in their motion to compel arbitration filed April 25, 2011. They are seeking to enforce the Court's order that arbitration of claims by those claimants who are subject to the 2001 agreement should proceed in this district. Defendants argue that Plaintiffs' counsel failed to perform due diligence by not requesting copies of each claimant's arbitration agreement before petitioning for arbitration in this district. Plaintiffs counter that Defendants refused to give them copies of the applicable agreements. This only confirms the difficulties between counsel, but the consequences fall more heavily on claimants than on Defendants, who have no counterclaims and nothing to lose if this case is prolonged.

      3)     Forum shopping is by 24 Hour, not Plaintiffs

Plaintiffs argue that the forum-shopping element of 24 Hours' conduct is especially egregious, since 24 Hour may seek different rulings on issues already decided by the Court. For example, 24 Hour's out-of-state petitions allege that Plaintiffs' FLSA claims are barred by the two or three-year statute of limitations in the FLSA, after this Court had issued an order equitably tolling the claims period of the petitioners back to 1998 and 1999. (ECF 194, pp. 13-16.) 24 Hour dismisses the Court's order re: tolling, modified to December 31, 1998 (ECF 135, Ex. H to Def. Letter Brief) as a "questionable limitations period ruling." (Defendants' Letter Brief at page 7 *et seq*.)

24 Hour argues that "because Judge Conti's statute of limitations ruling was made in the context of the conditional certification orders . . . the 10 year statute of limitations should be revisited now that the case has been splintered into individual arbitrations." (Def. Letter Brief at page 9) They complain that this decision could only be appealed on mandamus, which writ was denied because 24 Hour could not, at that time, show any tangible harm. *Id.* 24 Hour argues that a "normal FLSA limitations period" for the 750 opt-in Plaintiffs should be from either November 10, 2005 or November 10, 206 to November 10, 2008. (Def. Letter Brief at page 11).

24 Hour contends that the Court's December 2 order only applies to 16 claimants and that it has agreed to proceed with arbitration in this district for those claimants, and that it is not

raising objections to Judge Conti's ruling that rejected 24 Hours' contention that a venue dispute does not constitute a refusal to arbitrate. 24 Hour then proceeds to say that its filing in other venues is "consistent with this Court's order." (ECF 474, Def. Memo ISO Opp to Motion for Preliminary Injunction, at 17:23-28).

24 Hour argues that it has a right to expect this Court to transfer the 273 claimants because they are not named Plaintiffs, but opt-in Plaintiffs who were dismissed from this action in February 2011. 24 Hour says it never agreed to arbitrate these 273 claims in San Francisco and the proper locations for arbitration are the locations where the claims arose, where the individual claimants worked for 24 Hour Fitness. 24 Hour asks this Court to "spread the workload among 20+ district courts instead of having 273 petitions pending in this district." *Id.* at 18:5-12.

24 Hour not only denies that it is forum-shopping, but accuses Plaintiffs of "taking advantage of this quirk in the FAA," that this court cannot compel arbitration to proceed except in this district. (*Id.* at 15:2-5). 24 Hour claims that in all the cases where it has filed petitions to compel arbitration, the "center of gravity" is outside the Northern District of California. *Joe Boxer Corp. v. R. Siskind & Co., Inc.*, 1999 WL 429549 (N.D.Cal., June 08, 1999). Further, 24 Hour claims it has provided virtually all relevant discovery in its possession to the opt-in Plaintiffs but has yet to receive anything. Documents and witnesses will be located in the places where each individual worked for the company.

Plaintiffs strongly object to this argument.  Plaintiffs' liability theory is that claimants were misclassified and their pay was therefore miscalculated, and that this decision was made at 24 Hours' corporate headquarters in the Northern District. (First Amended Complaint, ECF 33, at Paragraphs 91-91).  The Manager claimants will present their testimony in this district and the liability witnesses will be "split." (Pltf Reply Brief ISO Motion for Preliminary Injunction at 3:21). 24 Hours' damages expert is located in San Francisco, Plaintiffs' own damages expert will testify in San Francisco, and, as 24 Hour admits, hundreds of thousands of pages, and millions of bytes of payroll data have already been produced here and are currently located here. *Id.*

Plaintiffs also raise significant equitable reasons for the Court to find that venue is proper in this district. They recite the long and arduous history of the employees' claims against 24

Hour, and ask the Court to rule that 24 Hour, by litigating the FSLSA claims for years in the Northern District, have waived any challenge to venue in this district. *Libby, McNeill & Libby v. City Nat'l Bank,* 592 F.2d 504, 510 (9th Cir. 1978).

### D.    It is Questionable but not Clearly Decided Whether FLSA Provides a Cause of Action by 24 Hour.

Plaintiffs ask this Court to find that the FLSA is a purely defensive law for the employer, and has no provision for counterclaim or affirmative relief. *Wheeler v. Hampton Tp.*, 399 F. 3d 238, 244 (3d Cir. 2005). In that case the Court held that the employer was not entitled to credit for holiday pay, vacation pay, and other non-work time pay as part of an employee's regular pay for purposes of calculating overtime, which would excuse its violation of the FLSA:

> There is no cause of action for employers in the FLSA. *See generally* 29 U.S.C. § 216(b) ("Any employer who violates the provisions ... of this title shall be liable to the employee[s] affected in the amount of their ... unpaid overtime compensation...."). Once an employer agrees to pay a given amount of overtime pay, the employer may not sue to recover excess pay under the statute. The FLSA is a shield for employers, not a sword. *Wheeler v. Hampton Tp.* 399 F.3d 238, 244 (Third Cir. 2005)

Plaintiffs accordingly contend that 24 Hour has no right to initiate litigation against its employees in the out-of-district cases, where there is no current case pending and where the employee has already demanded arbitration in this district.

Plaintiffs say they have found no cases which allow arbitrating FLSA plaintiff's claim against them where the employee has already agreed to arbitrate and there is no active litigation against the employer. By the same token, the Special Master has found no cases where the employer was denied a petition to arbitrate on this basis. There are sufficient grounds for the Court to reject Defendants' out-of-district petitions that it is not necessary to explore this uncharted territory.

The Special Master recommends that Plaintiffs' Motion for Preliminary Injunction that 24 Hour cease filing out-of-state petitions to compel arbitration for claimants in this case should be granted, even as to claimants not specifically named in this case.  The Court may exercise its

inherent powers under 28 U.S.C. section 1927 to manage its docket to include these additional claimants.

### 24 Hour Motion to Transfer Venue

**A.     Do Petitioners Want to Resolve Their Claims in this District?**

24 Hour asks the Court to take up the question of what indication there is that Plaintiffs residing outside San Francisco want to arbitrate their claims here. (Def. Binder at tab 8, ECF 498-4, January 9, 2012 Tr. 32:17-19.)

Petitioners respond unequivocally, and the Court should find, that petitioners want to resolve their claims in the Northern District and have been attempting to do so for almost six years. Petitioners will produce their documents when requested in the Northern District as Defendants have done during discovery during the pendency of this case. Petitioners will respond to discovery here; will present themselves for arbitration here; will put on their liability and damages experts here as witnesses in the Northern District. (Def. Binder at tab 8, ECF 498-1, Karczag Decl ISO Opp to Def. Motion to Transfer at paragraph 12)

**B.     24 Hour Fails to Show Specific Inconvenience to Witnesses**

Plaintiffs argue that 24 Hour's motion to transfer venue must be denied because 24 Hour has failed to make the specific threshold showing required by federal courts in California and the Ninth Circuit to support a transfer of venue from Plaintiffs' choice of forum: "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

In this case, 24 Hour moves to transfer venue to the multiple other districts where claimants worked or reside, because it is "likely" that the relevant witnesses still live in that state -- the claimants' supervisors, co-workers and so forth. However, this is not nearly enough. "The party seeking a transfer cannot rely on vague generalization as to the convenience factors. The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include." *Florens Container v. Cho Yang Shipping,* 245

F.Supp. 2d 1086, 1092 (N.D.Cal. 2002) (denying motion to transfer venue even though witnesses resided in Alabama and Korea).

If the proposed transfer is for the convenience of witnesses, "defendants must name the witnesses it wishes to call, the anticipated areas of their testimony and its relevance, and the reasons why the present forum would present a hardship to them." *Bohara v. Backus Hosp. Medical*, 390 F.Supp. 957, 963 (C.D.Cal. 2005). Conclusory statements alone do not justify shifting venue. *Armored Group v. Supreme Corp.,* 2009 WL 2513816 at *3 (D. Ariz. Aug. 17, 2009) (allegation that it would be more convenient to litigate where employees and files located - - in Indiana or Texas, than in Arizona insufficient to transfer); also *Fireman's Fund Ins. Co. v. Bank for Coops,* 1993 WL 341274 at *4 (N.D.Cal. Aug. 27, 1993) (claiming witnesses and documents in Texas without providing specifics is not enough to justify transfer).

Even if witnesses are located outside this district, modern travel significantly lessens that inconvenience. *General Retirement System of Detroit v. Wells Fargo Mortg. Backed Securities 2006-AR18 Trust,* 2009 WL 2137094 at *7 (N.D.Cal. 2009) (Illston, J.) "Forum is not necessarily inconvenient because of its distance from pertinent parties or if it is readily accessible in a few hours of air travel." *Id.*

Even if Defendants' employees are witnesses, their convenience has far less weight than that of non-party witnesses, since they may be compelled to testify regardless of the forum in which the lawsuit is litigated. *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F.Supp. 2d 1109, 1132 (C.D.Cal. 2009).

24 Hour fails to show inconvenience of witnesses as a justification for its motion to transfer venue, and this argument fails.

## C.   Effect of Ruling in *24 Hour Fitness v. Gorden* in Western District of Washington

An order for arbitration in this district, rather than the outside districts where 24 Hour moves to transfer claimants' cases, is also supported by the February 7, 2012 ruling by the U.S. District Court for the Western District of Washington (Hon. Ricardo S. Martinez) in *24 Hour*

*Fitness v. Gorden*, C11-2039RSM. (ECF 473-1, Attachment 1 to Ex. A, hereafter "Order re Jurisdiction"). According to Plaintiffs, this is the district where 24 Hour has filed the most Petitions to Compel Arbitration against claimants (a total of 51). (Def. Binder at tab 8, Karczag Dec. ISO Opp to Motion to Transfer, Ex. 11, Petitioners' Req. for Judicial Notice re Status Conference and 24 Hours' Motion to Transfer Regarding Western District of Washington cases, ECF 500, at 2:5-6). Judge Martinez denied a Petition to Compel Arbitration in his district by 24 Hour against one of the former opt-in Plaintiffs in this case, Shelly Gorden. 24 Hour had asked the court in Washington to deem its response applicable to all similar cases filed in the district in December 2011.

While basing his ruling on 24 Hours' failure to satisfy the pleading requirements of FRCP Rule 8, Judge Martinez expressly rejected 24 Hour's contention that plaintiff Gorden was refusing to arbitrate. The Court found that Gorden had already agreed to arbitrate by initiating a JAMS proceeding in the Northern District of California, as ruled by this Court in this case at ECF # 457, p. 8. Judge Martinez cited this Court's order as rejecting 24 Hour's argument that it had not refused arbitration because it had in fact agreed to arbitration, just not in the Northern District:

> If a party were deemed not to have "refused" arbitration so long as it expressed a willingness to arbitrate in some venue somewhere, then a valid arbitration agreement could be rendered meaningless by the parties' inability to settle on a mutually agreeable location, and courts would be powerless to intervene. For example, Defendants here could file motions to compel arbitration in various other districts, to which Moving Plaintiffs could respond that they would be happy to arbitrate but only in this district. A state of paralysis would result in which Moving Plaintiffs' claims could never be adjudicated until one party caved to the other's venue demands. (Order re Jurisdiction)

Judge Martinez found that 24 Hour was essentially threatening to create "the exact situation of paralysis to which Judge Conti's remonstration was directed." (*Gorden*, ECF 473-1, Order re Jurisdiction at 3, quoted by Plaintiffs at Def. Binder at tab 8, Karczag Dec. ISO Opp to Motion to Transfer, Ex. 11, Petitioners' Req. for Judicial Notice re Status Conference and 24 Hours' Motion to Transfer Regarding Western District of Washington cases, ECF 500 at 2:15-18).

### D.     Conflicting Rulings in Texas, Kansas

1)     *Mackay v. 24 Hour Fitness* Ruling in Southern District of Texas

24 Hour represents that its petitions are proceeding uneventfully in some other districts (Def. Letter Brief at page 17, section S) See also Defendants' Supplemental Letter Briefs, submitted April 5 and 9, 2012.

Defendants most recently cite the case of Elizabeth Mackay as validating their position. 24 Hour filed a petition to compel arbitration in the Southern District of Texas. In a series of terse, analysis-free rulings, the district court (Hon. Lynn N. Hughes) initially ordered the *Mackay* case stayed, then reversed course and ordered the parties to exchange discovery within days of the order, then to proceed to arbitration in that district within 60 days. Exs. A, B, and C to Def. Supplemental Letter Brief of April 5, 2012. On this basis, Defendants asked the Special Master to recommend that this Court dismiss Mackay's petition filed in this district as moot.

The Special Master finds the ruling by Judge Hughes to be troubling to say the least. Counsel for Ms. Mackay, in the course of a 32-page briefing with extensive citations to *Carey* and to this Court's previous rulings in *Beauperthuy*, advises the district court that Ms. Mackay lives in Sacramento, California, last worked for 24 Hour in California, and desires to arbitrate her claims in the Northern District of California. (Ex. D to Defendants' April 5 Supplemental Letter Brief, in the opposition to Defendants' Petition to Compel Arbitration at p. 19, paragraph C.) On pages 16 and 17 of the same pleading, Ms. Mackay's counsel advised the Texas district court that district judges in the Middle District of Florida, the District of Kansas, and the Western District of Washington have found procedural errors by Defendants, such as failing to serve process on the claimants, rather than counsel, and failing to assert proper jurisdiction. The court for the Southern District of Texas seems to have disregarded this compelling argument and ordered without explanation that the parties proceed to arbitrate in his district.

Ms. Mackay currently lives in California, albeit in the Eastern District, last worked for 24 Hour in California, and expresses a desire to arbitrate her claim in the Northern District. It is hard to conclude from these facts and the applicable law that her claim should therefore be arbitrated in the Southern District of Texas.

2)   30 Cases in the Northern District of Texas

In addition to the lack of support for the ruling by the court for the Southern District of Texas, Defendants' position is further undermined by the ruling on 30 of their petitions by Hon. Barbara M.G. Lynn in the Northern District of Texas. Judge Lynn issued Orders to Show Cause why Defendants' petitions should not be dismissed and sanctions imposed against them pursuant to Rule 11, Federal Rules of Civil Procedure. (See Ex. A to Plaintiffs' Supplemental Letter Brief submitted April 6, 2012.)

Judge Lynn stated:

> Having reviewed the subject arbitration agreement, the Court can find no language requiring arbitration to take place in the Northern District of Texas. By April 9, 2012, 24 Hour Fitness shall show cause, in writing, why this case should not be dismissed and why Rule 11 sanctions should not be imposed, as the Court questions whether the representations made in the papers submitted by the Plaintiff (24 Hour) are legally or factually justified. Pending this filing, all Defendants [claimants] are given an extension to April 30, 2012 to answer, if this case is not dismissed. *Id.*

3)   *24 Hour Fitness v. Ramirez* Case in District of Kansas

In addition, the District of Kansas, Hon. Sam A. Crow, Senior District Judge, has weighed in with a ruling in which Judge Crow accepted 24 Hour's personal service on claimant Raymond Ramirez but ordered briefing "concerning the procedural posture of this case and offering the court their suggestions for proceeding in light of the pending California litigation. [*24 Hour Fitness v. Ramirez,* 2012 WL 859725 (D. Kan., March 13, 2012) at *4.] (Emphasis added)

Judge Crow gave a hint of his tentative inclination:

> "The court is eager to hear the parties' suggestions on how this action should proceed in light of it being 'part of ongoing litigation' in the United States District Court for the Northern District of California, as so characterized by 24 Hour, and also apparently involving the same issues, the same agreements, and the same parties. The instant action clearly turns on the interpretation and enforcement of the relevant arbitration agreements. These are the same matters squarely identified for decisions in the California litigation were many claimants under the same agreements are seeking a similar determination." *Id.* at * 3

The Special Master concludes that 24 Hours' petitions in courts outside this district have

not been generally accepted and the record thus far does not support their viability outside the Northern District of California.

### E.  Distinction Between Venue Selection Clause and Arbitrator Selection Clause; Geographic Location of Arbitrator does not Decide Venue

1)  <u>Venue selection clause is not mandatory and exclusive</u>

Plaintiffs reject 24 Hour's reliance on what it contends is a venue clause in the 2005 agreement. Rather, Plaintiffs characterize it as an arbitrator selection clause. They are correct. The 2005 agreement contains a provision that the arbitrator be selected from the geographic area where the claimant worked or where the dispute arose. (See Def. Binder at tab 8, ECF 498-4, January 9, 2012 hearing, Tr. 6:5-9) However, the Ninth Circuit has ruled that for an agreement to contain a forum clause, that is, a venue clause, it must be "mandatory and exclusive." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F2d 75, 77 (9th Cir. 1987).

The contract at issue in that case stated:

> [The parties] expressly agree that the laws of the State of California shall govern the validity, construction, interpretation and effect of this contract. The courts of California, County of Orange, shall have jurisdiction over the parties in any action relating to the subject matter or the interpretation of this contract. *Id.*

The Ninth Circuit held that the plain language above did not give *exclusive* jurisdiction to the Orange County courts: "the effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts. . .[such] consent to jurisdiction, however, does not mean that the subject matter cannot be litigated in any other court." *Id.*

Consequently, because it was neither mandatory nor exclusive, the arbitrator selection provision in the 2005 Agreement does not determine the venue or forum for actions under that Agreement.

2)  <u>Choice of law provision does not establish intent to choose forum</u>

A choice of law provision in a contract is insufficient to establish intent to establish a choice of forum. *Gennock v. Lucas Energy, Inc.,* 2011 WL 4738320, *5 (E.D. Cal. Oct. 5, 2011).

In *Gennock*, the contract provided that "[a]ll questions concerning the construction, validity, enforcement and interpretation of this [contract] shall be determined in accordance with the laws of the state of Nevada." *Id. at *2*. Plaintiff filed suit in the Eastern District of California and defendant responded that the above provision was a mandatory forum selection clause establishing venue in Nevada. The court rejected defendant's argument and denied its motion to transfer venue, *Id. at *4-5*:

> Conspicuously absent from [the contract] is any provision that actually commands where the lawsuit is to be filed. Indeed, the term "venue" is used only once, and that is in a clause that waives the parties' ability to argue that venue in Nevada is improper. There is <u>nothing</u> that expressly identifies Nevada as the venue for a lawsuit, let alone language that clearly designates Nevada as the exclusive forum. <u>Id</u>. at *4. (emphasis added)

These are the choice of law provisions in the different agreements in this case:

1)      1998 provision: "We agreed to settle the dispute according to the provisions of the specific rules established by the legislature for the particular state in which you are employed . . . or by the rules of the American Arbitration Association if there are no such laws enacted . . ."

2)      2000 provision: "We agree to settle the dispute according to the provisions of the specific rule established by the legislature for the particular state in which are employed [sic] or, by the rules of the American Arbitration Association if there are no such laws enacted . . ."

3)      2001 provision: "We agree to settle the dispute according to the provisions of the Federal Arbitration Act, 9 U.S.C. sections 1-16 . . ."

4)      2005 amendment: "This Policy is governed by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. The neutral arbitrator shall be selected by mutual agreement from an association or listing of arbitrators or retired judges in the general geographic vicinity of where the dispute arose or where the employee last worked for 24 Hour Fitness."

5)      2007 amendment: "This policy is governed by the Federal Arbitration Act, 9 U.S.C. sections 1 et seq. . . . The neutral arbitrator shall be selected by mutual agreement from an association or listing of arbitrators or retired judges in the general geographic vicinity of the place where the dispute arose or where the Team Member last worked for 24 Hour Fitness. If for

24

any reason the parties cannot agree to an arbitrator, either party may apply to a court of competent jurisdiction for appointment of a neutral arbitrator. The court shall then appoint an arbitrator, who shall act under this Policy with the same force and effect as if the parties had selected the arbitrator by mutual agreement." (Plaintiffs' Letter Brief at pages 21-22)

Plaintiffs argue persuasively that the 1998 and 2000 provisions are silent as to choice of forum for arbitration and establish only the rules to govern it. Likewise, the 2005 and 2007 amendments provide for a manner of arbitrator selection, but again no location for the arbitration. The provision for application to "any court of competent jurisdiction" means there is no limit on the location where a party could apply to a court, nor is there a limit on who the court could appoint. Of necessity the court process replaces the agreement's arbitrator selection procedure. If the agreement is ambiguous, *Hunt Wesson* mandates that the court construe the contract's provisions against the drafter, 24 Hour. *Hunt Wesson*, 817 F.2d at 78.

Plaintiffs ask this Court to enforce its own prior orders that arbitrations should proceed in this district and require 24 Hour to cease filing out-of-district petitions and advise courts where it has already filed of this Court's decision, to spare other judges having to analyze their petitions:

> An initial review of the filings by Defendants indicates that some out-of-jurisdiction cases include summonses, most do not; some cases have one opt-in claimant named in the petition but appear on PACER as the name of a different claimant; some petitions arrived at Plaintiffs' counsel's office with proofs of service, some did not; some have completely unfilled-out proofs of service; some were delivered twice; some of them have been set for a motion date and some have not; some list both Defendants here as Petitioners, some only list one.

> Defendants continue to deliver new out-of-state petitions to Plaintiffs' counsel, rather than personally serve them on the respondents in those cases. Several district courts in Florida and Kansas have ordered 24 Hour to serve process on claimants, rather than counsel (Plaintiffs' Letter Brief at p. 18).

Plaintiffs also draw the Court's attention to 24 Hour's failure to notify the out-of-district courts of either the pendency of the prior motion to compel arbitration or of this Court's order that arbitration proceed in this district in 16 petitions. They ask this Court to order 24 Hour to provide such notice. (ECF 463, 16:6-17:8 and fn 4)

24 Hour responds that it served the petitions to compel arbitration on counsel for Plaintiffs in this case according to FRCP Rule 5, because the petitions were not new proceedings, but directly related to arbitration demands previously filed by Plaintiffs. (Def. Letter Brief at pages 15 and 16) This is circular reasoning; if the petitions are related to Plaintiffs' requests for arbitration submitted in this district, then 24 Hour cannot argue that it is proper to file its own petitions out-of-district.

**Unconscionability**

The Court asks the Special Master to make findings on whether the 2005 and 2007 agreements are unconscionable.

The Special Master recommends for the following reasons that the Court should find that the 2005 and 2007 arbitration agreements are both procedurally unconscionable, because Plaintiffs had to sign them as a condition of employment, and substantively unconscionable, because the agreements each contained a "change-in-terms" clause which provided that the agreement between the employee and 24 Hour could be unilaterally amended by 24 Hour at any time. The combination of procedural and substantive unconscionability renders both the 2005 and 2007 agreements unenforceable and the agreement between the parties reverts back to the 2001 agreement, as the last enforceable arbitration agreement.

A.    **Fifth Circuit Ruling in *Carey v. 24 Hour Fitness, USA*[2]**

The U.S. Court of Appeals for the Fifth Circuit affirmed the Southern District of Texas (Hon. Nancy F. Atlas), which had rejected the "Change-In-Terms Clause" contained in the 2005 Employee Handbook ("2005 Agreement"). This provision required the following from the prospective employee:

"I acknowledge that, except for the at-will employment, 24 Hour Fitness

---

[2] Plaintiffs also brought the Special Master's attention to a ruling by the District Court of Hawaii (Hon. David Alan Ezra) denying a motion by 24 Hour to dismiss the complaint and compel arbitration in that district of a claim by Gina M. Arredondo. C-07-00232 DAE BMK, *Arredondo v 24 Hour Fitness, USA, Inc.* (Dist. Hawaii, August 13, 2007). The basis was the unenforceability of the 2005 arbitration agreement.

has the right to revise, delete, and add to the employee handbook. Any such revisions to the handbook will be communicated through official written notices approved by the President and CEO of 24 Hour Fitness or their specified designee. No oral statements can change the provisions of the employee handbook" *Carey*, 669 F.3d at 203.

The court of appeals held that the arbitration agreement was illusory and unenforceable because the employer, 24 Hour Fitness, could change the terms retroactively and at will without the consent of the employee. The court affirmed the district court, which had held: "Where, as here, the employer retains the unilateral right to modify or terminate the arbitration provision, the agreement to arbitrate is illusory and unenforceable." *Carey v. 24 Hour Fitness USA, Inc.*, 2010 WL 4962813, * 2 (S.D.Tex., Dec. 1, 2010).

This is persuasive in the case at bar where 24 Hour contends that some claimants are subject to the same 2005 arbitration agreement. The Special Master therefore finds that the Fifth Circuit has affirmed the ruling of a Texas district court that the "Change-in-Terms" clause in the 2005 amendment to the Employee Handbook containing the arbitration agreement between some plaintiffs and 24 Hour Fitness is illusory and invalid under the FAA and Texas law, because 24 Hour could "revise, delete, and add to" the employee handbook with written notice to employees but no consent on their part. This is a published opinion by a Circuit Court in a case in which the plaintiff was similarly situated to the Plaintiffs in this case with respect to the employee handbook, the defendant is the same corporation, and the arbitration agreements were the same as the 2005 and 2007 agreements in this case. This means that the 2005 and 2007 agreements (both having the "Change-in-Terms" clause) are invalid and unenforceable and that the only valid agreement between the parties in all the cases is the 2001 agreement.

### B.  Ninth Circuit and California Law on Unconscionability

1)   The Federal Arbitration Act ("FAA")

While there exists a general public policy favoring the enforcement of arbitration agreements, section 2 of the FAA provides that arbitration clauses may be invalidated based "upon the same grounds as exist in law or in equity for the revocation of any contract," such as fraud, duress or unconscionability. 9 U.S.C. § 2; *Rent–A–Center, West, Inc. v. Jackson*, —— U.S.

——, 130 S.Ct. 2772, 2776, 2010 WL 2471058177, L.Ed.2d 403 (2010); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, (1983). The court applies ordinary state-law principles governing the formation of contracts to carry out this task. *Davis v. O'Melveny & Myers,* 485 F.3d 1066, 1072 (9th Cir.2007). (overruled in part on other grounds at *Kilgore v. KeyBank, Nat. Ass'n,* --- F.3d ----, 2012 WL 718344 at * 10. (9th Cir. March 7, 2012).

Plaintiffs in this case ask the Court to reject the 2005 and 2007 arbitration agreements as unconscionable, to enforce the 2001 agreement which contains no venue requirement and therefore applies California law, and to order 24 Hour to proceed with arbitration in this district for the 16 Plaintiffs already so ordered in the Court's December 2, 2011 order as well as the 273 Plaintiffs whose petitions to compel arbitration are currently pending in this district.

      2)    California Law

California law on unconscionability is ably expressed in the *Armendariz* decision:

> As explained in *A & M Produce Co. supra,* 135 Cal.App.3d 473, 186 Cal.Rptr. 114, "unconscionability has both a 'procedural' and a 'substantive' element," the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. (*Id.* at pp. 486–487, 186 Cal.Rptr. 114.) "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." (*Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th at p. 1533, 60 Cal.Rptr.2d 138 (*Stirlen* ).) But they need not be present in the same degree. "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." (15 Williston on Contracts (3d ed. 1972) § 1763A, pp. 226–227; see also *A & M Produce Co., supra,* 135 Cal.App.3d at p. 487, 186 Cal.Rptr. 114.) In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Armendariz v. Found. Health Psyhcare Services, Inc.,* 24 Cal. 4th 83, 113 (2000)

Furthermore, "a claim of unconscionability often cannot be determined merely by examining the face of the contract, but will require inquiry into its setting, purpose, and effect." *Perdue v. Crocker Nat'l Bank,* 38 Cal.3d 913, 926 (1985).

///

### a.   Procedural Unconscionability

To discern whether a contract is procedurally unconscionable, under California law, the court first "focuses on whether the contract was one of adhesion." *Soltani v. Western & Southern Life Ins. Co.,* 258 F.3d 1038, 1042 (9th Cir. 2001); *Armendariz,* 24 Cal.4th at 113. An adhesion contract is a standardized contract which is imposed on a party of weaker bargaining strength on a take-it or leave-it basis. *Armendariz, Id.* "Was it 'imposed on employees as a condition of employment'? Was there 'an opportunity to negotiate'?" *Soltani,* 258 F.3d at 1042 (quoting *Armendariz,* 24 Cal.4th at 115). "[W]hen a party who enjoys greater bargaining power than another party presents the weaker party with a contract without meaningful opportunity to negotiate, oppression and, therefore, procedural unconscionability, are present." *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1172 (9th Cir.2003).

Procedural unconscionability also includes "the manner in which the contract was negotiated and the circumstances of the parties at that time," and as such focuses on whether the agreement was obtained through oppression and surprise. *Soltani,* 258 F.3d at 1042 (quoting *Kinney v. United Healthcare Servs., Inc.,* 70 Cal.App.4th 1322, 1327(1999)). "Oppression" arises from inequality of bargaining power, resulting in no real negotiation. *A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 486 (1982). "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. *Id.*

In *Martinez v. Master Protection Corp.,* 118 Cal.App.4th 107 (2004), Martinez was required to sign an arbitration agreement as a condition of his employment with Master Protection Corporation, doing business as FireMaster. After Martinez appealed the trial court's order granting Master Protection Corporation's motion to compel arbitration, the court of appeal found the arbitration agreement to be procedurally unconscionable. *Id.* at 114. The court stated, "[i]t is undisputed that Martinez was required to execute the arbitration agreement as a prerequisite of his employment .... No evidence indicates that Martinez had any opportunity to negotiate or refuse to sign the arbitration agreement." *Id.* As such, and because Martinez was told he could not work without signing the document, the court found the arbitration agreement was

"clearly adhesive and procedurally unconscionable." *Id.* Similarly, in *Armendariz,* the court found that the arbitration agreement in question was adhesive because it was imposed on employees as a condition of employment and there was no opportunity for them to negotiate. *Armendariz,* 24 Cal.4th at 83.

As a condition of being hired by 24 Hour Fitness, Plaintiffs herein had to certify at the same time that they submitted their employment application that they had read the 50-page employee handbook and agreed to be bound by its provisions. *Carey*, 669 F.3d at 203. There is no indication that Plaintiffs were given any opportunity to negotiate. Furthermore, 24 Hour is a national corporation with stronger bargaining strength than Plaintiffs.

On this basis, the Court should conclude that the 2005 and 2007 agreements are procedurally unconscionable.

### b.    Substantive Unconscionability

A key provision in the 2005 agreement is that the agreement may be unilaterally amended by 24 Hour. ("Change-In-Terms" clause) Plaintiffs claim that this renders the 2005 and 2007 agreements unconscionable. The Fifth Circuit agreed with the district court in Texas that this provision which permitted 24 Hour to opt out of arbitration at will rendered the arbitration provision of the agreement between the employer and employee illusory and not a valid mutual contract, and that therefore the arbitration agreement was not enforceable. *Carey*, 669 F.3d at 209. Plaintiffs ask the Court in this case to find the 2005 agreement, and by extension the 2007 agreement that incorporated the same "Change in Terms" provision, to be unenforceable.

Plaintiffs also object on grounds of unfairness to the arbitrator selection clause, a confidentiality clause, and a clause limiting Plaintiffs to legal, rather than equitable remedies. Further, the claims covered by the arbitration agreement are overwhelmingly employee claims, rather than employer claims, limiting employee remedies, while leaving the employer with more options. Plaintiffs contend the burden and disadvantage due to 24 Hour's unilateral changes to these agreements is disproportionately on the workers, illustrating the unfairness and imbalance of the agreements.

This contention is supported by the practical effect of this provision on this lawsuit. The

district court decertified the class in this case, based in part on the grounds that Defendants were willing to arbitrate the individual claims. In its Order the Court relied on Defendants' representations in their papers that they would proceed with individual arbitrations. In the course of discussing procedural and fairness considerations, the Court stated:

> Additionally, the detriment to Plaintiffs from decertification is ameliorated by the fact that each Plaintiff is subject to an arbitration agreement with 24 Hour. While 24 Hour refused to proceed to a class-wide arbitration, it would agree to arbitrate individual claims. Defs.' Second Reply at 14.

> Thus, after decertification, Plaintiffs who wish to pursue their individual claims need not file individual lawsuits for relief. Order, ECF 428, 40:7-14

24 Hour claims that on December 6, 2011, it began filing petitions to compel arbitration in other districts before it knew about Plaintiffs' filing in this district on December 5. However, rather than proceed in an orderly fashion to arbitrate each individual's claims in this district, 24 Hour has initiated a multiplicity of out-of-district filings, in venues of its own choosing, which will greatly complicate the rational, consistent, and efficient resolution of these claims.

Plaintiffs in their Motion for Preliminary Injunction (ECF 463) persuasively argue that the action of 24 Hour vividly illustrates the inherent unfairness of its interpretation of the choice of arbitrator and venue provisions of the 2005 agreement. A reasonable observer could find that 24 Hour has used these provisions to make an end run around federal civil procedure, rules of court and the law of the case, to avoid the previous rulings and the intent of this Court and to manage the arbitration of Plaintiffs' claims as it sees fit.

For all the above reasons the Special Master recommends that the Court find the 2005 and 2007 agreements to be both procedurally and substantively unconscionable and therefore unenforceable.

## V.    CONCLUSION

The Special Master recommends that Plaintiffs' Motions for TRO and Preliminary Injunction be granted and that Defendants' Motion to Transfer Venue be denied. The Special

Master also recommends that the Court order the parties to proceed with the arbitration in this district for the 16 Plaintiffs already so ordered by the court's December 2, 2011 order. In addition, the Special Master recommends that, following the arbitration of the initial 16 cases, the Court order arbitration to proceed in this district for the 273 additional claimants whose cases have been related to the lead case. The Court should reserve its decision on the other 700+ claimants, pending the outcome of the parties' efforts to arbitrate, sample and mediate the aforementioned claims. Finally, the Court should find the 2005 and 2007 arbitration agreements to be unconscionable and unenforceable.

Respectfully submitted,

DATED: 5-7-2012

Hon. James Larson
United States Magistrate Judge (Ret.)
Special Master

Recommendation [approved-modified-declined].

DATED: _____

Hon. Samuel Conti
United States District Judge