United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABE BEAUPERTHUY, et al., | ) Case No. 06-0715-SC |
| | ) |
| Plaintiffs, | ) ORDER RE: SPECIAL MASTER'S |
| | ) REPORT AND RECOMMENDATION |
| v. | ) |
| | ) |
| 24 HOUR FITNESS USA, INC.; SPORT | ) This Order also applies to: |
| AND FITNESS CLUBS OF AMERICA, | ) |
| INC., | )      ALL RELATED CASES |
| | ) |
| Defendants. | ) |
| ———————————————— | ) |

I.    **INTRODUCTION**

    This matter originated as a putative Fair Labor Standards Act
("FLSA") collective action centered on allegations that Defendants
24 Hour Fitness USA, Inc., and Sport and Fitness Clubs of America,
Inc. (collectively, "24 Hour") had improperly denied overtime pay
to certain employees outside California.  Following this Court's
preliminary certification of two plaintiff classes totaling nearly
1,200 employees and its subsequent decertification of the classes
in 2011, both the employees and 24 Hour have evinced agreement that
the next step in adjudicating each employee's claims should be
private arbitration via hundreds of individual proceedings.

    What they cannot agree on is where these proceedings should
take place.  24 Hour says that each employee's arbitration should
be held in the place where the employee's claims arose.  To further
this position, 24 Hour has filed Petitions to Compel Arbitration in
more than twenty district courts spread over a dozen states (the

**United States District Court**
For the Northern District of California

"out-of-district Petitions").  Plaintiffs,[1] on the other hand, say all the arbitrations should occur within the geographic boundaries of the Northern District of California.  Accordingly, Plaintiffs have brought 273 individual Petitions to Compel Arbitration (the "273 Petitions") before this Court.[2]  In sum, an FLSA collective action seeking substantive relief in the form of money damages has, following decertification, splintered into hundreds of individual cases seeking procedural relief in the form of an order compelling arbitration, with each side vying for its preferred location.

On May 7, 2012, the Special Master filed a Report making recommendations on a variety of matters pending in this case, all centered on the parties' dispute over where arbitration shall occur.  ECF No. 508 ("Report").  The Special Master recommends that arbitration of all claims proceed within the Northern District of California.  Id. at 31-32.  24 Hour timely objected to the Special Master's recommendations, and Plaintiffs timely responded.  ECF Nos. 520 ("Obj'n"), 525 ("Response").[3]

After six years of formal legal proceedings, hundreds of filings, countless tactical maneuvers, and the apparent demise of some former class members, this one issue, the location of arbitration, is the last obstacle standing between the parties and

---

[1] Technically, these parties are individual claimants or, in out-of-district cases filed by 24 Hour, discussed infra, respondents. For consistency, the Court will refer to them collectively as "Plaintiffs" unless context requires otherwise.

[2] The Court related the 273 Northern District Petitions to the instant action.  ECF No. 468.

[3] In support of the Objection, 24 Hour filed, inter alia, an index of documents submitted to the Special Master.  ECF Nos. 522 (Exhibits A through E), 523 (Exhibits F through CC).  Among these were the letter briefs that both sides submitted to the Special Master.  Id. Exs. C ("24 Hour Ltr. Br."), F ("Pls.' Ltr. Br.").

**United States District Court**
For the Northern District of California

an opportunity for final adjudication on the merits.  All good things must come to an end -- even this litigation.  The Court ADOPTS the Special Master's recommendations as modified herein.[4]

**II.   BACKGROUND**

In view of the many orders summarizing the lengthy and convoluted history of this case, the Court provides only a brief sketch here.  See ECF No. 457 ("Dec. 2, 2011 Order") at 2 (collecting summaries).  24 Hour runs a nationwide chain of fitness clubs.  Its employees have brought a number of lawsuits, the thrust of which is that 24 Hour has wrongfully denied them overtime pay.  Previous litigation settled the bulk of claims arising in California.  In 2006, fifty-eight of 24 Hour's former or present employees (the "Named Plaintiffs"), who had worked for 24 Hour primarily outside California, filed this case as an FLSA collective action.  ECF No. 1 ("Compl."); see also ECF No. 33 ("Am. Compl.").

In 2007 and 2008, the Court conditionally certified two classes, a class of managers and a class of fitness trainers which, together, comprised nearly 1,200 individuals.  ECF Nos. 124 ("Manager Order"),[5] 190 ("Trainer Order").  Pursuant to FLSA certification procedures, only employees who affirmatively "opted in" became part of a class.  See 29 U.S.C. § 216(b).  In 2011, the Court decertified both classes and dismissed all the class members except Named Plaintiffs.  ECF No. 428 ("Decert. Order").  To avoid prejudice to the opt-in class members, the Court equitably tolled

---

[4] The modification consists of a determination that the issue of unconscionability is moot.  See infra Section III.A.3.b.

[5] The Court later corrected a typographical error pertaining to the claims period for the manager class.  ECF No. 135.

United States District Court
For the Northern District of California

1   the applicable statutes of limitations for thirty days, thereby

2   allowing opt-in class members to file their own, individual cases.

3   Id. at 41.  As to Named Plaintiffs, the Court gave them sixty days

4   to decide whether to file demands for arbitration or proceed to

5   individual trials.   Id.

6        In the Decertification Order, the Court noted that 24 Hour

7   professed a willingness to arbitrate each former class member's

8   claims, which would allow the class members to pursue their claims

9   without filing individual suits.   Id. at 40.   24 Hour represented

10  that if the class were decertified, then it "would arbitrate each

11  individual claim [and] the courts would not be overburdened with

12  400 separate claims -- any claims would be handled easily and

13  efficiently through arbitration."  ECF No. 410 at 14.

14       Unfortunately, the arbitration process has been anything but

15  easy and efficient.  More than sixteen months have passed since

16  decertification, yet not a single claim has been arbitrated.

17  Instead, counsel's meet-and-confer process has devolved into a

18  volley of mutual recriminations and allegations of bad faith.  Each

19  side accuses the other of drawing out the proceedings with

20  procedural games aimed solely at gaining leverage for settlement.

21  Counsel's dysfunctional relationship eventually culminated in a

22  declaration of "war."  ECF No. 463-5 at 34 (Dec. 9, 2011 emails).

23  Their war, with its predictable collateral damage to the judicial

24  system, has unfolded as follows.

25       When the classes were decertified in February 2011, they did

26  not disperse.  Instead, in March 2011, former class counsel filed

27  demands for arbitration on behalf of 983 individual Claimants (the

28  "983 Claimants") at the San Francisco location of JAMS, a private

**United States District Court**
For the Northern District of California

dispute resolution service.  See Dec. 2, 2011 Order at 2.  The 983
Claimants consisted of former opt-in class members and some named
Plaintiffs.  Id.  Their demands sought arbitration pursuant to an
arbitration clause contained in the 2001 version of 24 Hour's
employee handbook (the "2001 Agreement").  Id. at 3.

24 Hour refused to proceed with arbitration in San Francisco,
insisting that it should take place elsewhere.  See id.  They
argued, for the first time, that not every former class member's
claim was governed by the 2001 Agreement and that three different
arbitration agreements were in play.  ECF No. 453 ("Kloosterman
Decl.") Ex. D. at 2.  Their position has since evolved further.
Now 24 Hour contends that, because the decertified classes
encompass persons who had worked for 24 Hour as far back as 1998,
five different arbitration agreements may apply, depending on when
the particular employee worked for 24 Hour.  See ECF No. 488-3
("Ganotis Decl.") ¶¶ 2-6; see also Kloosterman Decl. Exs. B-G, L.
In addition to the 2001 Agreement, 24 Hour now points to two
earlier versions of the arbitration agreement (respectively, the
"1998 Agreement" and the "2000 Agreement"), as well as subsequent
amendments to the 2001 Agreement that 24 Hour published in 2005 and
2007 (respectively, the "2005 Amendment" and the "2007 Amendment").

The 1998 and 2000 Agreements provide that disputes shall be
settled according to the arbitration laws of the state where the
employee last worked for 24 Hour, or, if there are no such laws, by
the rules of the American Arbitration Association ("AAA").  The
2001 Agreement moves away from state law by providing that any
disputes will be settled according to the Federal Arbitration Act
("FAA").  The 2005 and 2007 Amendments add a provision stating that

United States District Court
For the Northern District of California

the arbitrator shall be selected from the geographic vicinity of the place where the dispute arose or where the claimant last worked for 24 Hour.[6]

_____

[6] Here are the relevant arbitration agreements, in pertinent part. The 1998 Agreement says:

> We agree to settle the dispute according to the provisions of the specific rules established by the legislature for the particular state in which you are employed . . . or by the rules of the [AAA] if there are no such laws enacted.

The 2000 Agreement says:

> We agree to settle the dispute according to the provisions of the specific rules established by the legislature for the particular state in which you are employed or, by the rules of the [AAA] if there are no such laws enacted.

The 2001 Agreement says:

> We agree to settle the dispute according to the provisions of the [FAA], 9 U.S.C. sections 1-16.

The 2005 Amendment says:

> This Policy is governed by the [FAA], 9 U.S.C. § 1 et seq.  The neutral arbitrator shall be selected by mutual agreement from an association or listing of arbitrators or retired judges in the general geographic vicinity of where the dispute arose or where the employee last worked for 24 Hour Fitness.

The 2007 Amendment says:

> This policy is governed by the [FAA], 9 U.S.C. § 1 et seq. . . .  The neutral arbitrator shall be selected by mutual agreement from an association or listing of arbitrators or retired judges in the general geographic vicinity of the place where the dispute arose or where the Team Member last worked for 24 Hour Fitness.  If for any reason the parties cannot agree to an arbitrator, either party may apply to a court of competent jurisdiction for appointment of a neutral arbitrator. The court shall then appoint an arbitrator, who shall act under this Policy with the same force and effect as if the parties had selected the arbitrator by mutual agreement.

Ganotis Decl. ¶¶ 2-6, Exs. A-E.

6

United States District Court
For the Northern District of California

In April 2011, Plaintiffs filed a motion to compel 24 Hour to arbitrate within the Northern District.  ECF No. 432 ("Mot. to Compel Arb.").  This motion sought arbitration for all of the 983 Claimants, but later it was amended to address only sixteen of them (the "16 Claimants"), each of whom was a Named Plaintiff covered by the 2001 Agreement.  ECF No. 449 ("Am. Mot. to Compel") at 1-2.  On December 2, 2011, the Court granted the Amended Motion to Compel and ordered arbitration within the Northern District for the 16 Claimants.  Dec. 2, 2011 Order at 12.[7]

Notably, in opposing the Amended Motion to Compel, 24 Hour argued that when it refused to submit to the 983 Claimants' demands to arbitrate in San Francisco, it had not in fact refused to arbitrate -- it had simply agreed to arbitrate somewhere else.  The Court rejected this contention:

> [24 Hour's] proposed interpretation of [9 U.S.C. § 4] would defeat the "policy of rapid and unobstructed enforcement of arbitration agreements" embodied in the FAA.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983).  If a party were deemed not to have "refused" arbitration so long as it expressed a willingness to arbitrate in some venue somewhere, then a valid arbitration agreement could be rendered meaningless by the parties' inability to settle on a mutually agreeable location, and courts would be powerless to intervene.  For example, [24 Hour] here could file motions to compel arbitration in various other districts, to which [the 16 Claimants] could respond that they would be happy to arbitrate but only in this district.  A state of paralysis would result in which . . . claims could never be adjudicated until one party caved to the other's venue demands.

Dec. 2, 2011 Order at 8.  Unfortunately, this "state of paralysis" has come to pass.  On December 5, 2011, Plaintiffs filed the 273 Petitions here in the Northern District.  ECF No. 463-1 ¶ 2.  The

---

[7] 24 Hour appealed this decision.  ECF No. 475.  The Ninth Circuit dismissed the appeal for lack of jurisdiction because "the case is still proceeding in the district court."  ECF No. 504.

United States District Court
For the Northern District of California

following day, on December 6, 2011, 24 Hour began to file the out-of-district Petitions in district courts throughout the country. ECF No. 469-1 ¶ 21.  24 Hour filed out-of-district Petitions against 257 of the 273 claimants with pending Northern District Petitions.[8]  ECF No. 488-2 ¶ 5.  24 Hour also filed additional petitions against some former class members who had not filed petitions in this district.  ECF No. 463-1 ¶ 4.

On December 15, 2011, Plaintiffs brought five motions before this Court: (1) for a temporary restraining order, ECF No. 458 ("Mot. for TRO"); (2) to relate the 273 Petitions to the instant case, ECF No. 461 ("Mot. to Relate"); (3) to shorten time for hearing the Motion to Relate, ECF No. 462; (4) for a preliminary injunction enjoining 24 Hour from further filing or prosecuting out-of-district Petitions, ECF No. 463 ("Mot. for PI"); and (5) to shorten time for hearing the Motion for Preliminary Injunction, ECF No. 464.[9]  On the following day, December 16, 2011, the Court issued an Order denying both motions to shorten time.  ECF No. 466. On December 19, 2011, the Court issued an Order relating the 273 Petitions to the instant case.  ECF No. 468.[10]

_____

[8] 24 Hour did not file out-of-district Petitions against 16 of the 273 Northern District Petitioners who, according to 24 Hour, were not proper opt-in class members.

[9] As explained in Section III.B infra, the Court construes the Motions for TRO and for a Preliminary Injunction as motions for injunctive relief pursuant to the first-to-file rule.

[10] 24 Hour objected to the Motion to Relate.  ECF No. 469.  24 Hour's objection emphasized the difference between the parties in the various cases, arguing that the cases could not satisfy the first prong of Civil Local Rule 3-12(a)'s two-pronged definition of "related cases."  Id. at 3-5.  The objection is not well-taken, however, because the second prong of the definition, which emphasizes judicial economy and the risk of inconsistent results, is by far the more important of the two.  See, e.g., Rezner v. Bayerische Hypo-Und Vereinsbank AG, C 06-02064 JW, 2009 WL 3458704,

**United States District Court**
For the Northern District of California

On January 9, 2012, the Court heard Plaintiffs' Motions for a TRO and for a Preliminary Injunction, as well as the 273 Petitions. In view of the legal and administrative complexity arising from the case's having splintered into nearly two gross of individual Petitions and 24 Hour's belated revelation that five different arbitration agreements were in play, the Court: stayed all pending matters; proposed appointing a Special Master; and ordered the parties to submit proposed orders addressing the pending matters, including appointment of a Special Master.  ECF No. 486.  On January 23, 2012, the parties complied, filing papers which, inter alia, supported appointment of a Special Master.  ECF Nos. 489 (24 Hour), 491-94 (Plaintiffs).  Additionally, 24 Hour moved to transfer 257 of the 273 Petitions to the judicial district where the employee last worked, unless that district was in California. ECF No. 488 ("Mot. to Transfer").  According to 24 Hour, transfer within California would be inappropriate because earlier litigation settled California-based claims, and the instant case only

---

at *1 (N.D. Cal. Oct. 23, 2009); <u>Carlyle Fortran Trust v. NVIDIA Corp.</u>, C 05-00427 JW, 2008 WL 4717467, at *1 (N.D. Cal. Oct. 24, 2008); <u>cf. Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.</u>, C 05-04158 MHP, 2008 WL 624771, at *4 (N.D. Cal. Mar. 4, 2008) (granting leave to amend complaint because denial would "certainly" result in a new lawsuit and motion to relate; "it is more efficient to dispose of all the issues amongst a set of parties in one action, without splitting the litigation into various pieces in front of different judges . . . .").  This is especially true where, as here, counsel is the same in all the cases.  Also unavailing is 24 Hour's argument that the Motion to Relate was premature because Plaintiffs served the 273 Petitions on 24 Hour's agent for service rather than 24 Hour's counsel and therefore counsel had "not even reviewed" the Petitions, except for one example Petition which, counsel concedes, it did review.  ECF No. 469 at 3.  No inequity flows from counsel's refusal to review Petitions served on their clients, especially when those Petitions are materially similar to the example counsel did review.  The Court concludes that 24 Hour suffered no prejudice from the Court's decision to grant Plaintiffs' Motion to Relate the 273 Petitions.

United States District Court
For the Northern District of California

1    incidentally concerns employees from California: therefore,

2    according to 24 Hour, "any California claims are not covered by the

3    arbitration demand so no claims could have arisen in California."

4    Id. at 2, 3.  Nevertheless, 24 Hour concedes that at least some of

5    the remaining litigants last worked for 24 Hour in California.

6         On February 27, 2012, the Court appointed the Special Master.

7    ECF No. 502 ("Appointing Order").  The Court tasked the Special

8    Master with determining whether, how, where, before whom, under

9    what rules, and in what order the individual arbitrations would

10   proceed, and with issuing recommendations on the motions pending

11   before the Court.  Id. ¶ 8.  The parties submitted letter briefs to

12   the Special Master, in addition to the moving papers already filed

13   before this Court, and the Special Master gave the parties an

14   opportunity to argue the pending motions, which they declined.

15   Report at 2.  The Special Master recommended as follows:

16        *    Arbitration for the 16 Claimants should begin in the

17             Northern District, as ordered on December 2, 2011;

18        *    Arbitration of the 273 Petitions should proceed within

19             the Northern District, but only after arbitration for the

20             16 Claimants is completed;

21        *    Plaintiffs' Motions for a Temporary Restraining Order and

22             Preliminary Injunction, which seek to enjoin 24 Hour from

23             prosecuting out-of-district Petitions, should be granted;

24        *    24 Hour's Motion to Transfer Venue, seeking to transfer

25             257 of the 273 Northern District Petitions to various

26             district courts throughout the nation, should be denied;

27             and

28        *    The 2005 and 2007 Amendments that 24 Hour putatively made

**United States District Court**
For the Northern District of California

to the arbitration agreement should be found

unconscionable and unenforceable.

Report at 2-3.  24 Hour objects to all but the first of these recommendations.[11]

The Court reviews the Special Master's findings of fact for clear error, his conclusions of law de novo, and his procedural rulings for abuse of discretion.  Fed. R. Civ. P. 53(f)(3)-(5); Appointing Order ¶ 18.

## III.  DISCUSSION

### A.   Plaintiffs' Petitions to Compel Arbitration

#### 1.   Scope of Judicial Authority Under the FAA

Plaintiffs have petitioned to compel arbitration pursuant to § 4 of the FAA.  That statute provides, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.  "Because the FAA mandates that district courts shall direct the parties to proceed to arbitration on issues as to which

---

[11] 24 Hour has not opposed arbitration for the 16 Claimants in San Francisco, having agreed to it informally before the Court issued its December 2, 2011 Order.  See 24 Hour Ltr. Br. at 14; see also ECF No. 507 (Order approving Special Master's recommendation for how the first 16 arbitrations should proceed, with modification).

**United States District Court**
For the Northern District of California

1  an arbitration agreement has been signed, the FAA limits courts'

2  involvement to determining (1) whether a valid agreement to

3  arbitrate exists and, if it does, (2) whether the agreement

4  encompasses the dispute at issue." Cox v. Ocean View Hotel Corp.,

5  533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks,

6  emphasis, and brackets omitted).

7      Assuming that the district court finds these conditions to be

8  satisfied, the court lacks discretion to do anything other than

9  order arbitration to proceed according to its terms. Cf. Chiron

10  Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.

11  2000) (court can only order arbitration when claim lies within

12  scope of arbitration agreement).  One term, however, may be

13  disregarded: under Ninth Circuit precedent, § 4 "confines the

14  arbitration to the district in which the petition to compel is

15  filed." Textile Unlimited, Inc. v. A..BMH and Co., Inc., 240 F.3d

16  781, 785 (9th Cir. 2001) (emphasis omitted); see also Cont'l Grain

17  Co. v. Dant & Russell, 118 F.2d 967, 969 (9th Cir. 1941).  That is,

18  the Ninth Circuit's interpretation of the FAA's remedial provision,

19  set forth in Continental Grain, "prohibits a district court from

20  ordering parties to arbitrate outside of the district in which a

21  motion to compel is filed." Lexington Ins. Co. v. Centex Homes,

22  795 F. Supp. 2d 1084, 1091 (D. Haw. 2011) (citing Textile Unlimited

23  and Continental Grain).  This is true when the arbitration

24  agreement is silent as to venue; it is true even when the

25  arbitration agreement specifies a venue. See Bauhinia Corp. v.

26  China Nat. Mach. & Equip. Imp. & Exp. Corp., 819 F.2d 247, 250 (9th

27  Cir. 1987) (silent as to venue); Homestake Lead Co. of Missouri v.

28  Doe Run Res. Corp., 282 F. Supp. 2d 1131, 1143-44 (N.D. Cal. 2003)

1   (specifying venue); cf. Lexington, 795 F. Supp. 2d at 1092 (where

2   arbitration agreement specified venue outside district where

3   petition was filed, court acknowledged that it could order

4   arbitration only within its own district, so transferred case

5   instead).  The Ninth Circuit has explained that § 4 does not

6   require a party to file a petition to compel arbitration in the

7   place "where the contract specified that arbitration should occur."

8   Textile Unlimited, 240 F.3d at 785 (citing Continental Grain, 118

9   F.2d at 969).

10      The Continental Grain rule has received a lukewarm reception

11  from the courts of other circuits and even some courts within this

12  circuit.  E.g., Homestake Lead, 282 F. Supp. 2d at 1144

13  (acknowledging and sharing Seventh Circuit's concern that

14  Continental Grain leads to a "race to the courthouse," but applying

15  rule regardless).  Irrespective of this Court's view of the wisdom

16  of the Continental Grain rule, it remains the law of this circuit

17  until modified by Congress or some superior court.

18              **2.   Existence of Arbitration Agreement; Arbitrability of**

19                     **Claims; Proper Venue**

20      There can be no serious dispute that agreements to arbitrate

21  cover the claims between 24 Hour and Plaintiffs.  That is, while

22  the parties dispute whether certain amendments to the arbitration

23  agreement are enforceable, both sides are attempting to compel

24  arbitration of the same claims between largely the same parties,

25  albeit in different fora.  Regardless of which version of the

26  agreement applies, both sides act as if some version does.[12]  The

27  _____

28  [12] But see infra Section III.B.3.a.  24 Hour's out-of-district
    Petitions all purport to deny the arbitrability of Plaintiffs'
    claims.  This is inconsistent, of course, with 24 Hour's assertion

**United States District Court**
For the Northern District of California

1  Court has already found that 24 Hour's refusal to accede to

2  Plaintiffs' demands for arbitration in San Francisco is a refusal

3  to arbitrate within the meaning of § 4, notwithstanding 24 Hour's

4  professed willingness to arbitrate elsewhere.  Dec. 2, 2011 Order

5  at 9.  The same reasoning applies to the 273 Petitions currently

6  before the Court.

7       The next question is whether venue properly lies in this

8  district for the 273 Petitions (as distinct from the arbitration

9  proceedings that would flow from them).  Under the FAA, a Petition

10 to Compel Arbitration may be brought in any district court where a

11 civil action between the parties could be brought.  9 U.S.C. § 4.

12 With respect to jurisdiction, "[a] federal court may 'look through'

13 a § 4 petition to determine whether it is predicated on an action

14 that 'arises under' federal law."  <u>Vaden v. Discover Bank</u>, 556 U.S.

15 49, 62 (2009).  The Court has subject-matter jurisdiction over the

16 273 Petitions because they are based on the same FLSA claims over

17 which the Court exercised its federal-question jurisdiction before

18 decertification.  As to venue, "the FAA's venue provisions are

19 discretionary, not mandatory;" they merely supplement the general

20 venue provisions of 28 U.S.C. § 1391(a).  <u>Textile Unlimited</u>, 240

21 F.3d at 784.  Accordingly, venue for a Petition to Compel

22 Arbitration is proper in "a judicial district in which any

23 defendant resides."  28 U.S.C. § 1391(b)(1).  24 Hour resides in

24 ─────────────────────────────────────────────────────────────

25 of a right to arbitrate those claims.  This is not the first time
   24 Hour has acted in a manner incompatible with its stated
26 position.  As early as November 2006, the Court found that 24 Hour
   was engaging in "confusing, contradictory, and time-consuming
27 strategic maneuvering purportedly based on the [2001] Arbitration
   Agreement but which involve[d] simultaneous explicit refusals to
28 compel arbitration."  ECF No. 66 at 10.  As set forth more fully in
   Section III.B.3.a, the Court regards 24 Hour's denials as more of
   the same tactics.

the Northern District of California because its corporate headquarters are located in San Ramon, California, a city within this district. <u>See</u> <u>id.</u> § 1391(d) (in a State with multiple judicial districts, a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . .").

Finding that venue for the 273 Petitions properly lies here and that the claims presented are arbitrable, all this Court can do is grant the Petitions and order arbitration to proceed within the geographic boundaries of the Northern District of California. Under <u>Continental Grain</u>, this would be so even if both parties had specified that arbitration should occur elsewhere. Accordingly, the answer to the question of where arbitration should proceed does not depend on the content or even the existence of any purported venue- or forum-selection clauses in the various versions of the arbitration agreement. The question turns solely on whether the 273 Petitions to Compel are properly before this Court. The Court concludes that they are, for the reasons set forth above and in Section III.B (discussing first-to-file rule).

### 3.   Other Considerations

#### a.   <u>Venue Provisions</u>

Even if the relevant authorities required this Court to defer to a contracted-for venue clause in an arbitration agreement, the Court would come to the same conclusion, i.e., that arbitration must proceed within this district. That is because the Court agrees with the Special Master's determination that none of the five versions of the arbitration agreement -- that is, the 1998,

United States District Court
For the Northern District of California

1   2000, 2001, 2005, and 2007 versions -- contains a venue provision.

2   Report at 5.  The Court reviews the Special Master's interpretation

3   of the arbitration agreements <u>de novo</u>.  <u>Cf.</u> <u>Hunt Wesson Foods, Inc.</u>

4   <u>v. Supreme Oil Co.</u>, 817 F.2d 75, 77 (9th Cir. 1987) (contract

5   interpretation turns on application of law to contract language).

6       The 1998 and 2000 Agreements both say that arbitration shall

7   be conducted under the law of the state where the employee last

8   worked or, if the state has no applicable law, AAA rules.  <u>Supra</u>

9   note 6.  These clauses, therefore, merely select the rules

10  governing arbitration, not the location where it shall be held.

11  <u>Cf.</u> <u>Besag v. Custom Decorators, Inc.</u>, CV08-05463 JSW, 2009 WL

12  330934, at *4 (N.D. Cal. Feb. 10, 2009) ("A forum selection clause

13  determines where the case will be heard, it is separate and

14  distinct from choice of law provisions that are not before the

15  court." (internal quotation marks omitted)); <u>Gennock v. Lucas</u>

16  <u>Energy, Inc.</u>, 1:11-CV-982 AWI SMS, 2011 WL 4738320, at *4 (E.D.

17  Cal. Oct. 5, 2011) ("[T]he inclusion of a choice of law clause

18  [selecting Nevada law] does not itself sufficiently show an intent

19  to make Nevada the exclusive jurisdiction.").  Moreover, even if

20  the Court were to construe this provision as a venue-selection

21  clause, the provision's language is disjunctive, offering two

22  options rather than compelling one conclusion; this falls far short

23  of the sort of "mandatory and exclusive" language that could

24  confine arbitration to a particular place.  <u>See</u> <u>Hunt Wesson</u>, 817

25  F.2d at 77-78.  Read either way, the 1998 and 2000 Agreements do

26  not mandate a venue.  And when an agreement to arbitrate contains

27  no "term specifying location, a district court can only order

28  arbitration within its district." <u>Bauhinia</u>, 819 F.2d at 250.

1  Accordingly, even if Ninth Circuit precedent allowed this Court to

2  defer to an arbitration agreement's venue clause, any of the 273

3  Petitions covered by the 1998 and 2000 Agreements would result in

4  arbitration in this district because those Agreements contain no

5  venue clause.

6      The same reasoning applies with equal force to the other three

7  versions of the arbitration agreement.  The 2001 Agreement is

8  entirely silent as to location, stating merely that arbitrable

9  disputes will be settled according to FAA rules.  <u>Supra</u> note 6.  As

10  to the 2005 and 2007 Amendments, ever since 24 Hour revealed their

11  existence, 24 Hour has taken the position that their language

12  requires arbitration to occur outside this district for at least

13  some claimants.  <u>E.g.</u>, ECF No. 474 at 2.  Specifically, 24 Hour

14  points to the sentence which ends with the words: "in the general

15  geographic vicinity of the place where the dispute arose or where

16  the [employee] last worked for 24 Hour."  <u>Supra</u> note 6.  24 Hour

17  regards this language as a venue-selection clause.  But that

18  interpretation is at odds with the rest of the sentence: "<u>The</u>

19  <u>neutral arbitrator shall be selected</u> by mutual agreement from an

20  association or listing of arbitrators or retired judges in the

21  general geographic vicinity of the place where the dispute arose or

22  where the [employee] last worked for 24 Hour."  <u>Id.</u> (emphasis

23  added).  The thing being "selected" in that sentence is an

24  "arbitrator," not a venue.  Assuming arguendo that this agreement

25  reflects the mutual intent of the parties,[13] then the parties

26  _____

27  [13] The Court has reason to suspect it may not.  <u>See</u> Report at 27-31
   (finding 2005 and 2007 Amendments unconscionable under California
   law); <u>Carey v. 24 Hour Fitness, USA, Inc.</u>, 669 F.3d 202 (5th Cir.

28  2012) (same, under Texas law); <u>Arredondo v. 24 Hour Fitness USA
   Inc.</u>, 07-00232 DAE BMK, 2007 WL 2363386 (D. Haw. Aug. 13, 2007)

United States District Court
For the Northern District of California

1  contracted for a method of arbitrator selection, not venue

2  selection -- let alone a particular venue.  It does not follow,

3  logically or practically, that the arbitration must occur in the

4  area from which the arbitrator hails.  And, as was the case with

5  the 1998 and 2000 Agreements, even if the Court interpreted this

6  sentence to be a venue clause, the Court could find in this

7  sentence's disjunctive language no evidence of an intent to specify

8  a mandatory and exclusive location for arbitration.

9      Finally, to read the arbitration agreements as 24 Hour insists

10 they should be read would violate two fundamental principles of

11 contract interpretation.  First, the best evidence of the intent of

12 contracting parties is the clear language of the contract itself,

13 and clear contractual language therefore governs.  Westoil

14 Terminals Co. v. Indus. Indem. Co., 110 Cal. App. 4th 139, 145

15 (Cal. Ct. App. 2003).  The language of each version of the

16 arbitration agreement is clear, and clearly says nothing about

17 venue.  Second, supposing that the Court were to determine that the

18 language of any version of the arbitration agreement was ambiguous

19 (and it does not), the Court would interpret the ambiguous

20 provision against the party who drafted it (24 Hour) and read the

21 provision to specify no venue.  Miller v. United States, 363 F.3d

22 999, 1005-06 (9th Cir. 2004); Hunt Wesson, 817 F.2d at 78.  This,

23 too, would result in an order compelling arbitration within this

24 district.  Put simply, the Court discerns no way to read any of the

25 five versions of the arbitration agreement to clearly and

26 unambiguously specify an exclusive arbitration venue outside this

27

28 (2005 Amendment unconscionable under Hawai'i law); but see infra
   Section III.A.3.b (unconscionability issue is moot here).

**United States District Court**
For the Northern District of California

1    district, and, even if the Court did, <u>Continental Grain</u> would

2    compel the Court to disregard the provision.

3                    b.    <u>Unconscionability</u>

4         The Court's December 2, 2011 Order compelling arbitration to

5    proceed in this district for the 16 Claimants did not explicitly

6    set forth the foregoing analysis.  As a result, the parties have

7    engaged in lengthy briefing as to the unconscionability of the 2005

8    and 2007 Amendments, on the apparent assumption that those

9    amendments might contain controlling venue-selection clauses.  Out

10   of an abundance of caution, the Court asked the Special Master to

11   report on this issue.  For the reasons set forth above, however,

12   the issue is moot.[14]

13                    c.    <u>Forum Shopping</u>

14        24 Hour concedes that Ninth Circuit law functions in the

15   manner described herein; their argument for a different outcome is

16   not so much a legal argument as an appeal to 24 Hour's view of what

17   _____

[14] Even if it were not, 24 Hour's objection to the Special Master's
unconscionability analysis is not well-taken.  It is premised on an
assertion that the Special Master failed to conduct a choice-of-law
analysis and therefore failed to demonstrate that he was applying
the correct body of substantive state law.  Obj'n at 3-7.  To the
extent that 24 Hour's objection rests on that premise, it is
untimely.  Unconscionability was raised as a material issue in this
case no later than January 25, 2012, when Plaintiffs filed notice
of the Fifth Circuit's ruling in <u>Carey</u>.  ECF No. 495.  In its
briefing since that date, including its letter brief to the Special
Master, 24 Hour has never directly raised a choice-of-law issue.
It cannot be heard to do so for the first time now, when faced with
an adverse ruling.  <u>See Flintkote Co. v. Gen. Acc. Assur. Co. of
Canada</u>, C 04-1827 MHP, 2009 WL 3568644, at *5 (N.D. Cal. Oct. 27,
2009) (refusing to apply foreign law because party failed to invoke
it "at the first opportunity when the issue became material").  Nor
may 24 Hour shift onto the Special Master the burden to ascertain
and cite the correct law.  <u>Cf. Hatfield v. Halifax PLC</u>, 564 F.3d
1177, 1184 (9th Cir. 2009) (quoting <u>Interpool Ltd. v. Char Yigh
Marine (Panama) S.A.</u>, 890 F.2d 1453, 1458 (9th Cir. 1989)) ("Where
no authority, or insufficient authority, is presented by the
parties about foreign law, a court may conclude that the parties
have acquiesced in the application of the law of the forum.").

is reasonable, sensible, or fair.  E.g., ECF Nos. 474 at 14-15, 499 at 2-3; see also Textile Unlimited, 240 F.3d at 785 (§ 4 "does not require that the petition be filed where the contract specified that arbitration should occur.").  Central to 24 Hour's objection to venue in the Northern District is its contention that Plaintiffs have engaged in forum shopping.  The contention is meritless.  As the Special Master found, the class members -- all of whom affirmatively acted to join this litigation -- have been litigating the claims underlying the 273 Petitions for six years before this Court.  See Report at 15-17, 18.  24 Hour argues that, despite Plaintiffs' right to petition for arbitration here, they should have done it elsewhere.  This equity argument might have more force if the parties' dueling Petitions were the first chapter in this litigation's saga.  But it is not.  The 273 Petitions involve the same parties who have been proceeding before this Court since provisional class were certified in 2007 and 2008.  After decertification, these parties did not go hunting for a new, more favorable forum.  Even following the sting of decertification, they continued to seek relief in the same Court.  This is strong evidence that Plaintiffs have not engaged in forum shopping.

The only contrary evidence mustered by 24 Hour is (1) the very act of filing the 273 Petitions here, which, as discussed above, cuts against their point, and (2) statements from two of the several hundred claimants involved in this case that they would be willing to arbitrate elsewhere.  Obj'n at 20-21.  It does not follow from the willingness of two claimants to proceed elsewhere that the remaining hundreds of claimants have engaged in forum shopping, especially against the backdrop of six years of

**United States District Court**
For the Northern District of California

1  litigation before this Court.  The Special Master found 24 Hour's

2  evidence of forum shopping unpersuasive, and so does the Court.

3  The Court affirms the Special Master's factual finding that

4  Plaintiffs have not engaged in forum shopping.

5          **4.    Conclusion as to the 273 Petitions to Compel**

6                  **Arbitration**

7          Because (1) all parties expressly or impliedly concede that

8  some valid arbitration agreement binds 24 Hour and Plaintiffs and

9  that the claims between them are arbitrable, (2) this Court is a

10  proper venue for the Petitions, and (3) no other considerations

11  counsel the Court to do otherwise, the Court GRANTS the 273

12  Petitions to Compel Arbitration and ORDERS arbitration of those

13  Petitions to proceed within the geographic boundaries of this

14  district.  The Court further ORDERS arbitration for the 16

15  Claimants to commence as soon as practicable, pursuant to the

16  Court's December 2, 2011 Order.  Furthermore, consistent with the

17  Special Master's recommendation on page 32 of his Report, the Court

18  STAYS the Order to Compel Arbitration of the 273 Petitions until

19  arbitration for the 16 Claimants has finished.  The parties shall

20  notify the Special Master when those proceedings have concluded.

21  At that time, if 24 Hour has specific objections to the standing of

22  particular claimants, it may file an appropriate omnibus motion in

23  the lead case captioned herein.[15]

24  _____

25  [15] 24 Hour raised at least some colorable issues of standing in its
    March 7, 2012 Letter Brief to the Special Master.  24 Hr. L.B. at
26  15-16.  Some, however, were nothing more than an invitation for the
    Special Master to weigh in on the manner and extent to which
27  Plaintiffs' counsel is directed by their clients.  Id.  The Court
    cautions 24 Hour that it will not entertain further invitations.
28  If Plaintiffs' clients want to direct their lawyers differently,
    they can do so without the Court's help -- as can 24 Hour's

**B.   Plaintiffs' Motions for Injunctive Relief**

On January 9, 2012, this Court stayed (1) the 273 Petitions granted above, and (2) two Motions seeking to enjoin 24 Hour from filing dueling Petitions to Compel Arbitration against former Beauperthy class members in more than twenty district courts across the country.  The Special Master recommends granting Plaintiffs the injunctive relief they seek.  Reviewing de novo, the Court also concludes that this is an appropriate case for an injunction.

Though Plaintiffs styled their Motions as seeking a TRO and a Preliminary Injunction, in fact their Motions turn on the first-to-file doctrine.  Application of the first-filed doctrine results in a different analysis from that undergirding temporary or preliminary injunctive relief.  Given the procedural posture of this case and the stay imposed earlier, the first-to-file analysis is the appropriate one in this case.  The parties have briefed the first-to-file analysis, both before the Court and before the Special Master.[16]  The Court therefore construes the Motion for a TRO and the Motion for a Preliminary Injunction as a request for injunctive relief under the first-to-file rule.

**1.   First-to-File Rule**

Under the first-to-file rule, "[w]hen a district court has jurisdiction over all parties involved, it may enjoin later filed actions."  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); see also 6 Charles A. Wright, et al., Federal Practice and Procedure § 1418, at 145-46 (2d ed. 1990)

---

clients.  Any standing challenges shall be directed at the claimants, not their counsel.

[16] See generally Mot. for TRO; Mot. for PI; ECF Nos. 474, 481, 482; 24 Hr. Ltr. Br.; Pls. Ltr. Br.

United States District Court
For the Northern District of California

("Indeed, by granting an injunction in this context, the court furthers the general federal policy against multiplicity of litigation embodied in [Federal Rule of Civil Procedure 13(a)]."). The first-to-file rule "normally serves the purpose of promoting efficiency well and should not be disregarded lightly." Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979). "There is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." Id. at 749. The purpose of the rule is avoiding both unnecessary burdens on the federal judiciary and the risk of conflicting judgments. Id. at 750.

The first-to-file rule is triggered by the filing of a complaint rather than service of process. Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 96 n.3 (9th Cir. 1982). "Three threshold factors should be considered in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." Bryant v. Oxxford Express, Inc., 181 F. Supp. 2d 1045, 1048 (C.D. Cal. 2000). It is conceded that all three of the threshold factors for application of the first-to-file rule are satisfied here: (1) both this action and the 273 Petitions were filed before the later-filed actions;[17] (2) the 273 Petitions and

---

[17] 24 Hour emphasizes that it began filing out-of-district Petitions only one day after Plaintiffs began filing the 273 Northern District Petitions, saying that this undercuts Plaintiffs' first-to-file status. But this framing ignores the six-year history of this litigation. As the Special Master noted, Plaintiffs filed their first Petition to Compel Arbitration in April 2006. Report at 11. 24 Hour objects that the claimants who filed the 273 Petitions did not join the April 2006 motion because they did not join the putative collective action until two years later. Obj'n at 17. That is true as far as it goes, but 24 Hour's account ignores that the 983 Claimants presented demands before

**United States District Court**
For the Northern District of California

1  the later-filed actions involve the same parties; and (3) the 273

2  Petitions and the later-filed actions involve the same core issues

3  -- namely, the validity of the arbitration agreement between the

4  individual claimant and 24 Hour, and the arbitrability of the

5  particular claims, <u>see</u> <u>Cox</u>, 533 F.3d at 1119 (only two issues

6  raised by Petition to Compel Arbitration).

7          **2.   Exceptions to the First-to-File Rule**

8          Finding that the threshold factors for imposing the first-to-

9  file rule have been met does not end the Court's inquiry.  The

10  first-to-file rule embodies a policy of "wise judicial

11  administration" that "does not counsel rigid mechanical"

12  application.  <u>See</u> <u>Alltrade, Inc. v. Uniweld Products, Inc.</u>, 946

13  F.2d 622, 627-28 (9th Cir. 1991) (internal quotation marks

14  omitted).  Accordingly, district courts "can, in the exercise of

15  their discretion, dispense with the first-filed principle for

16  reasons of equity."  <u>Id.</u> at 628.  Typical reasons justifying a

17  departure from the first-to-file rule include bad faith,

18  anticipatory suit, and forum shopping.  <u>Id.</u>  The Special Master

19  concluded that none of these reasons applied here.  Report at 12-

20  17.  The Court, reviewing <u>de novo</u>, agrees.

21          a.   <u>Forum Shopping</u>

22          As discussed in Section III.A.3.c <u>supra</u>, the Court sees no

23  persuasive evidence of forum shopping.  On the contrary, as the

24  Special Master found, Plaintiffs have consistently sought relief

25  before this Court, even following decertification.  Meanwhile, 24

26  Hour -- who has no counter-claims and seeks no relief in this

27  ────────────────────────────────────────

28  JAMS in San Francisco and moved this Court to compel arbitration in
    March 2011, months before 24 Hour filed its Petitions.

1  action -- has consistently exercised its considerable ingenuity to

2  dilate and stall the proceedings.  It strains credulity to say that

3  Plaintiffs have engaged in forum shopping by seeking resolution of

4  their claims in a single forum for a half-dozen years.

5              b.   Bad Faith

6      24 Hour urges the Court to set aside the first-to-file rule

7  for three reasons relating to bad faith.  First, 24 Hour alleges

8  that Plaintiffs' counsel seeks arbitration on behalf of claimants

9  who have no standing, including, e.g., persons who have recently

10 died.  See 24 Hr. Ltr. Br. at 15-16.  Second, 24 Hour objects to

11 the filing of claims based on the 2001 Agreement when some

12 employees, according to 24 Hour, are covered by a different

13 iteration of the agreement.  Third, 24 Hour says that Plaintiffs'

14 attempts to compel arbitration in this district have been made in

15 bad faith because "Plaintiffs counsel has filed no declarations

16 from the individual plaintiffs indicating that any of them prefer

17 arbitration in San Francisco as opposed to where the individual

18 lived and worked.  Instead, they have submitted hearsay statements

19 from themselves indicating that their clients want to arbitrate in

20 San Francisco." Id. at 16.

21     None of these reasons move the Court to exercise its

22 discretion to set aside the first-to-file rule.  On the contrary,

23 they strengthen the Court's impression that setting aside the rule

24 would be inequitable.  First, the fact that 24 Hour has succeeded

25 in drawing out this case so long that Plaintiffs are beginning to

26 outlive it makes the Court less inclined, not more, to allow 24

27 Hour to place yet another procedural hurdle between Plaintiffs and

28 an adjudication on the merits.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Second, 24 Hour cannot complain of Plaintiffs having brought the 273 Petitions under the wrong agreement when 24 Hour refuses to say which agreement applies to which employee.  ECF No. 463-4 ¶¶ 12-13; Report at 14 (Special Master finds that 24 Hour did not provide relevant version of agreement for each claimant).  The objection is particularly ill-founded considering that 24 Hour has acknowledged that, under Continental Grain, venue is not determined by the particularities of the agreement so long as some agreement applies.  Supra Section III.A.2.

Finally, Plaintiffs' having filed Petitions to Compel Arbitration in this district is sufficient evidence of their intent to seek arbitration here.  24 Hour cites no authority to support their position that Plaintiffs, in order to proceed in this district, must file individualized declarations from each claimant assuring 24 Hour that they really, truly want to arbitrate in the place where their Petitions were filed.  As the Court already explained, 24 Hour will have an opportunity to bring challenges to any individual claimant's standing by means of a single omnibus motion.  In light of the delay that has already transpired in this case, that is the most equitable mechanism for weeding out improper or moot claims while allowing proper claims to proceed promptly.[18]

c.   Anticipatory Filing

Lastly, 24 Hour seeks relief from the first-to-file rule on the basis of its allegation that Plaintiffs' filing of the 273 Petitions was anticipatory.  24 Hour portrays the 273 Petitions as a direct result of the breakdown of counsel's four-month-long

---

[18] Plaintiffs' counsel shall withdraw any concededly improper Petitions, consistent with their Rule 11 obligations.

1   attempt to work out the logistics of arbitration.  Obj'n at 19-20.

2   That account is incomplete.  Plaintiffs presented 983 demands for

3   arbitration before JAMS in San Francisco in March 2011 and filed a

4   Motion to Compel Arbitration on behalf of the 983 Claimants in

5   April 2011.  The Court finds that the breakdown of negotiations in

6   December 2011 was not the ultimate cause of the filing of the 273

7   Petitions.  The 273 Petitions are consistent with the efforts

8   Plaintiffs have taken to win relief from this Court since 2006,

9   including multiple attempts to arbitrate.  In any event, even if

10  the Court accepted 24 Hour's account, then the Court would have to

11  regard 24 Hour's own filing of the out-of-state Petitions as

12  equally anticipatory, since 24 Hour concededly began to file them

13  just one day later.  The Court would decline to exercise its

14  equitable powers to set aside the first-to-file rule under such

15  circumstances.

16      The Court is confirmed in its conclusion by Bryant.  In that

17  case, the basketball star Kobe Bryant granted a company an

18  exclusive license to market products and collectibles featuring his

19  autograph.  181 F. Supp. 2d at 1047.  The deal soured, and the

20  company sent Bryant a letter that put him "on notice" that it was

21  "at least considering" a suit against him.  Id.  The very next day,

22  Bryant sued the company.  Id.  The district court rejected the

23  company's argument that Bryant's suit was anticipatory, because the

24  underlying letter did no more than threaten to declare a breach.

25  Id. at 1049.  Similarly, here, the mere breakdown of negotiations

26  between the parties does not support a finding that the lawsuit

27  which followed was anticipatory.  Many lawsuits are the result of

28  failed negotiations.  That alone does not make them anticipatory.

**United States District Court**
For the Northern District of California

1    Because 24 Hour has raised no persuasive reasons to discard

2    the first-to-file rule in this case, the Court applies it.  Doing

3    so best serves the purposes of the first-to-file rule: promoting

4    judicial economy and avoiding the risk of conflicting judgments.

5    Church of Scientology, 611 F.2d at 750.  It is better that a single

6    district court, one already versed in the law of the case and the

7    case's history, oversees the arbitration process to the extent that

8    the parties continue to require judicial intercession.

9              **3.   Inconsistent Rulings**

10   The Court's holding that the first-to-file rule applies here

11   is supported by the fact that, as the Special Master found, 24

12   Hour's out-of-district Petitions baldly seek to relitigate past

13   rulings of this Court, and the out-of-district Petitions have

14   already begun to result in inconsistent rulings.

15         a.   Relitigation of Decided Issues

16   Each of 24 Hour's out-of-state Petitions invites another

17   district court to revisit two issues already decided by this Court.

18   First, in previously certifying two FLSA classes, this Court

19   equitably tolled the statute of limitations for the classes' FLSA

20   claims.  See Manager Order at 16-18, Trainer Order at 13-14.

21   Second, in granting the 16 Claimants' Motion to Compel Arbitration,

22   this Court ruled that Plaintiffs had substantially complied with

23   the requirements of the Court's Decertification Order.  Dec. 2,

24   2011 Order at 11.  The Special Master found that 24 Hour is seeking

25   to relitigate both of these issues before other district courts.

26   See Report at 15.  The Court agrees.  Plaintiffs point out that

27   each of 24 Hour's out-of-state Petitions includes a footnote in

28   which 24 Hour disputes the arbitrability of the respondent's claims

28

**United States District Court**
For the Northern District of California

(notwithstanding the fact that it is petitioning for arbitration of these claims):

> While 24 Hour is asking this court to compel arbitration, it by no means concedes that Respondent has valid claims. In fact, 24 Hour contends that Respondent failed to comply with the tolling provision set forth in [this Court's] February 24, [2011] Order in [the instant case] . . . . Further, 24 Hour believes that some or all of Respondent's claims are barred by the applicable limitations period in the FLSA . . . .

ECF No. 482-5 at 3 n.1.

The points raised by 24 Hour in this footnote were already decided by this Court, namely, that the FLSA claims period had been tolled and Plaintiffs had substantially complied with the Court's February 24, 2011 Order.  It is clear that 24 Hour's out-of-district Petitions brazenly invite other district courts to decide anew issues already decided by this Court.  The effort offends the federal judiciary's policies of finality, economy, and comity, however "questionable" 24 Hour thinks the previous rulings are.  24 Hour Ltr. Br. at 7.

The Court also notes that in November 2006, this Court held that 24 Hour had waived its right to seek to compel arbitration. ECF No. 66 ("Nov. 28, 2006 Order") at 10.  The Special Master cited this holding in his Report.  Report at 14.  Yet 24 Hour never explains why it believes it has the right to disregard that holding.  Indeed, 24 Hour never mentions its existence.  <u>See</u>, <u>e.g.</u>, 24 Hr. Ltr. Br. at 6-7 (chronological account of case that omits any mention of Nov. 28, 2006 Order), 14-15 (same); <u>see generally</u> Obj'n (omitting mention of Nov. 28, 2006 Order).

           b.   <u>Inconsistent Rulings</u>

24 Hour's decision to file the out-of-district Petitions

**United States District Court**
For the Northern District of California

1  resulted in more than the risk of inconsistent rulings;

2  inconsistent rulings have actually issued.  Generally, district

3  courts have taken note of this Court's attempts to manage the

4  problem of dueling Petitions and, invoking the first-to-file rule

5  or similar principles of economy and comity, those courts have

6  declined to allow 24 Hour's out-of-district Petitions to proceed.

7  Report at 22-23; see also ECF Nos. 512-519 (out-of-district

8  rulings).  However, as the Special Master noted, at least one

9  district court has already ordered arbitration to proceed in her

10 district, despite this litigation's pendency before this Court and

11 the contrary rulings of numerous other district courts.  Id. at 21.

12 The risk of inconsistent rulings has become reality.  This

13 unfortunate circumstance demonstrates why the federal policy of

14 comity embodied in the first-to-file rule requires this Court to

15 enjoin 24 Hour's further prosecution of out-of-district Petitions.

16          **4.   Conclusion as to Injunction**

17     Plaintiffs seek to enjoin not only the out-of-district

18 Petitions that 24 Hour filed against the claimants behind the 273

19 Petitions, but any competing petition against any of the 983

20 Claimants who presented demands for arbitration to JAMS in San

21 Francisco and were included in Plaintiffs' original Motion to

22 Compel Arbitration.  ECF No. 432.  The Court first notes that,

23 although there is a high degree of overlap between the 273 Northern

24 District claimants and the out-of-district respondents, the two

25 sets are not coextensive.  This means that the first-to-file rule

26 technically does not apply to the out-of-district Petitions filed

27 against persons other than the 273 Northern District claimants.

28 See Great N. Ry. Co. v. Nat'l R.R. Adjustment Bd., First Div., 422

1   F.2d 1187, 1193 (7th Cir. 1970).  Moreover, the first-to-file rule

2   does not and cannot encompass the hundreds of individuals among the

3   983 Claimants who have not yet been made the subject of any

4   Petition to Compel, for the simple reason that, although they have

5   presented demands for arbitration within this district, they have

6   not been named in any Petition that would satisfy the first-to-file

7   rule's threshold factors.  So, technically, the first-to-file rule

8   does not cover them.

9       "When considering issues raised by the comity doctrine,

10  however, courts are not bound by technicalities."  Church of

11  Scientology, 611 F.2d at 750.  The policy of comity is one of

12  "paramount importance," id., and this case demonstrates why: 24

13  Hour's filing of out-of-district Petitions against many of the same

14  individuals proceeding as claimants before this Court, concerning

15  the same claims, and arising from the instant litigation, has

16  severely impeded judicial economy by introducing needless

17  procedural complexity.  It has diverted the attention of nearly two

18  dozen federal courts, despite the matter's pendency before a single

19  court of competent jurisdiction and proper venue.  Moreover,

20  counsel's "war" of dueling Petitions has not only risked

21  inconsistent rulings, it has actually resulted in such rulings.

22      Accordingly, the Court GRANTS Plaintiffs' request for

23  injunctive relief in full.  Exercising its inherent equitable

24  powers, the Court ENJOINS 24 Hour from continuing to prosecute, or

25  from filing in the first instance, any out-of-district Petitions it

26  has filed against any of the 983 Claimants, regardless of whether

27  they have been named yet in a Petition to Compel Arbitration.  ECF

28  No. 433 Ex. D (list of 983 Claimants).  In view of both the policy

**United States District Court**
For the Northern District of California

1  of comity and the FAA's underlying policy of speedy and efficient

2  arbitration, the proper venue for this action is before this Court,

3  where a Special Master has been appointed to manage the significant

4  administrative difficulties that have arisen following

5  decertification and aid the Court in moving the claims toward final

6  resolution as expediently and justly as possible.  24 Hour shall

7  file a copy of this Order in each of the out-of-district cases.

8        **C.   24 Hour's Motion to Transfer Venue**

9        As a final matter, the Court turns to 24 Hour's omnibus Motion

10 to Transfer all 273 Petitions to the judicial districts

11 encompassing the area where its employee last worked -- unless that

12 district is in California.  24 Hour's position appears to be that

13 even though the Court can order arbitration only in this district,

14 nothing stops it from transferring the 273 Petitions to another

15 one.  The Special Master recommended that 24 Hour's Motion to

16 Transfer be denied.  The Court, reviewing de novo, agrees with his

17 conclusion.

18        **1.   Legal Standard**

19     "For the convenience of parties and witnesses, in the interest

20 of justice, a district court may transfer any civil action to any

21 other district or division where it might have been brought or to

22 any district or division to which all parties have consented."  28

23 U.S.C. § 1404(a).  "Under § 1404(a), the district court has

24 discretion to adjudicate motions for transfer according to an

25 individualized, case-by-case consideration of convenience and

26 fairness."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th

27 Cir. 2000) (internal quotation marks omitted).  The moving party --

28 here, 24 Hour -- bears the burden of establishing that "transfer

1  would allow a case to proceed more conveniently and better serve

2  the interests of justice." <u>Florens Container v. Cho Yang Shipping</u>,

3  245 F. Supp. 2d 1086, 1089 (N.D. Cal. 2002) (citing <u>Commodity</u>

4  <u>Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir.

5  1979)).

6          **2.   Effect of § 4 and <u>Continental Grain</u> on Motions to**

7                **Transfer Petitions to Compel Arbitration**

8          As a preliminary matter, Plaintiffs argue that § 4 of the FAA

9  does not contemplate the transfer of a Petition to Compel

10 Arbitration, because that section, as the Ninth Circuit held in

11 <u>Continental Grain</u>, only allows district courts to order arbitration

12 to proceed within the geographic boundaries of their own districts.

13 24 Hour points to a case from Hawai'i, <u>Lexington</u>, where the

14 district court opted to transfer a Petition to Compel Arbitration

15 rather than compel arbitration in its own district.  <u>See</u> 795 F.

16 Supp. 2d at 1092-93.

17         The Court finds <u>Lexington</u> to be distinguishable.  In that

18 case, the district court was confronted with a clear, uncontested

19 venue clause.  The district court sought to harmonize <u>Continental</u>

20 <u>Grain</u>, which would disregard the parties' contracted-for choice of

21 venue, with § 4's emphasis on ordering arbitration to proceed

22 according to the terms of the arbitration agreement.  Here,

23 however, none of the various arbitration agreements contains a

24 venue clause.  Thus, the tension that troubled the <u>Lexington</u> court

25 and pushed it to avoid the <u>Continental Grain</u> rule is not present.

26 In the absence of any venue clause, this Court has little trouble

27 concluding that <u>Continental Grain</u> permits it to order arbitration

28 only within this district.

**United States District Court**
For the Northern District of California

### 3. § 1404(a) Factors

Even if the Court thought it could exercise its usual amount of discretion in deciding whether to transfer these cases, the Court would decline to transfer them.  <u>Decker Coal</u> counsels courts to exercise their discretion under § 1404(a) in view of a variety of public and private factors:

> Private factors include [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; [4] and all other practical problems that make trial of a case easy, expeditious and inexpensive. [Citation.] Public factors include [1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

<u>Decker Coal</u>, 805 F.2d at 843 (internal quotation marks omitted). All of the private factors are irrelevant here.  These factors all aim at "mak[ing] trial of a case easy, expeditious and inexpensive," but trial is no longer a possibility in this case. From the point of view of the Court, decertification and the subsequent filing of arbitration demands transformed this case from a consolidated action seeking damages to a bevy of summary proceedings seeking relief in the form of an order compelling private arbitration.  In this posture, the issues before the Court are extremely limited, both in number and scope, and no longer amenable to trial.  The issues are (1) whether there is some agreement to arbitrate between the parties and (2) whether the claims brought before the Court fall within its scope.  <u>See</u> <u>Cox</u>,

34

United States District Court
For the Northern District of California

533 F.3d at 1119.  The Court has already decided both questions in the affirmative.  Supra Section III.A.  As a result, there is nothing to try, and the private factors are inapplicable.  24 Hour bases its Motion to Transfer in large part on its belief that the convenience of witnesses requires transfer.  24 Hour's objection is not well-taken, because no witnesses need be called to decide the pending Petitions to Compel Arbitration.  If 24 Hour wanted the convenience of witnesses at private arbitration proceedings to be more effectively safeguarded, it could have included more effective safeguards in the arbitration agreements it drafted.

As for the public factors, to the extent these are concerned with trial, they too are inapplicable.  Of the remaining public factors, one obviously outweighs the others: the notion of judicial economy embodied in the factor pertaining to "administrative difficulties flowing from court congestion."  This case has congested the dockets of multiple courts, with all the attendant detriment to the values of economy, consistency, and finality described earlier.  So, for these reasons and those set forth in Section III.B supra, the Court would decline to exercise its discretion to transfer the 273 Petitions even if it believed it had such discretion under § 4 and Continental Grain.

IV.  **CONCLUSION**

For the foregoing reasons, the Court adopts the Special Master's recommendations as modified herein.  The Court:

* ORDERS arbitration of the first group of 16 Petitions to Compel Arbitration to proceed as soon as is practicable, consistent with its December 2, 2011 Order and this

35

1    Order;

2    *    GRANTS the 273 Petitions to Compel Arbitration and ORDERS

3         arbitration to proceed within the geographic boundaries

4         of this judicial district, but STAYS these proceedings

5         pending completion of the first group of 16 arbitrations

6         and further recommendation of the Special Master as to

7         how the later arbitrations should proceed;

8    *    GRANTS in full Plaintiffs' request for injunctive relief

9         under the first-to-file rule and ENJOINS 24 Hour from

10        further prosecuting or filing any out-of-district

11        Petitions to Compel Arbitration against any of the 983

12        individuals who presented demands for arbitration before

13        JAMS in San Francisco;

14   *    ORDERS 24 Hour to file a copy of this Order in each of

15        the currently pending out-of-district cases within seven

16        (7) days of the signature date of this Order, and to file

17        in this case's electronic docket a single, omnibus notice

18        of compliance no more than two (2) days thereafter; and

19   *    DENIES 24 Hour's omnibus Motion to Transfer.

20

21   IT IS SO ORDERED.

22

23   Dated:   July 5, 2012

24                                          UNITED STATES DISTRICT JUDGE

25

26

27

28

36