THOMAS G. FOLEY, JR., SBN 065812
JUSTIN P. KARCZAG, California SBN 223764
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, California 93101
Telephone (805) 962-9495
Facsimile (805) 965-0722
Email: tfoley@foleybezek.com
Email: jkarczag@foleybezek.com

RICHARD E. DONAHOO, SBN 186957
SARAH L. KOKONAS, SBN 262875
DONAHOO & ASSOCIATES
440 W. First Street, Ste. 101
Tustin, CA 92780
Telephone (714) 953-1010
Facsimile (714) 953-1777
Email:  rdonahoo@donahoo.com
Email:  skokonas@donahoo.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABE BEAUPERTHUY, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>24 HOUR FITNESS USA, INC., a California corporation dba 24 HOUR FITNESS; SPORT AND FITNESS CLUBS OF AMERICA, INC., a California corporation dba 24 HOUR FITNESS,<br><br>             Defendants. | Case No.  C 06 0715 SC<br><br>*(Assigned to the Honorable Samuel Conti for All Purposes)*<br><br>**CLAIMANTS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND SETTLEMENT ADMINISTRATION COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:            September 13, 2013<br>Time:            10:00 am<br>Courtroom:   1<br><br>Complaint filed:    February 1, 2006 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on Friday September 13, 2013 at 10:00 am, in Courtroom 1 of the above-entitled Court, or as soon as may be heard, Settling Claimants[1] will, and hereby do, move the Court to for an order awarding attorneys' fees in the amount of $5,479,677, costs and expenses in the amount of $1,009,469, and settlement administrator expenses in the amount of $65,000 payable to the settlement administrator, Simpluris.

This motion is based on the Settlement Agreement, the Memorandum of Points and Authorities filed herewith and in support of this Motion, the Declarations of Thomas G. Foley, Jr., Justin P. Karczag, and Richard E. Donahoo in support hereof, and all other papers filed in this action.

Dated: August 9, 2013

**DONAHOO & ASSOCIATES**
**FOLEY BEZEK BEHLE & CURTIS, LLP**

By: /s/ Richard E. Donahoo
Thomas G. Foley, Jr.
Richard E. Donahoo
Justin P. Karczag
Attorneys for Claimants

---

[1] The term "Settling Claimants" refers to the subset of 849 of the 862 individuals listed in Exhibit A to the Settlement Agreement, who have affirmatively requested be included in the proposed settlement. Note, of 862 eligible Claimants 849 affirmatively executed and returned the Individual Release Agreement, affirmatively expressing their desire to be part of the settlement, *one* person executed a Notice of Rejection, expressing the desire to not take part in the settlement, and 12 provided no response at all, despite substantial follow up efforts by the Claims Administrator and Claimants' counsel. Under the terms of the settlement agreement, only those who execute and return an Individual Release Agreement participate in it, and only their claims are resolved by it. The claims of the rejecting claimants and of the nonresponding claimants remain unaffected. The term "Defendants" or "24 Hour" refers to the Defendants in the above-entitled action.

USDC, ND, Case No.: C 06 0715 SC

# TABLE OF CONTENTS

1.    Introduction. ...........................................................................1

2.    Background. ............................................................................1

3.    Formula for Attorneys' Fees and Costs .....................................5

4.    Additional Facts Pertaining to the Attorneys fees and costs....................6

5.    Argument: The Court Should Grant the Requested Fees and Costs.......8

    A.    The Standard – Common Fund .........................................10

        (1).   The Results Achieved.................................................10

        (2).   The Risks Involved..................................................11

        (3).   Skill Required and Quality of the Work Performed..................12

        (4).   The Contingent Nature of the Representation.........................12

        (5).   Awards Made in Similar Cases .....................................13

        (6).   The Relevant Factors Weigh In Favor Of The Award ..............14

    B.    Lodestar Cross-check. ...................................................14

        (1).    Counsels' Lodestar. ...............................................15

        (2).    Hours Reasonably Expended. ....................................15

        (3).    Reasonable Hourly Rates .........................................16

    C.    Lodestar Multiplier .....................................................17

    D.    Claimants' Request for Costs and Expenses Should Be Granted ........19

6.    Conclusion. ...........................................................................20

# TABLE OF AUTHORITIES

## CASES

*Baganha v. Cal. Milk Transp.*,
    No. 1:01-cv-05729-AWI-LJO, Doc. No. 147 ....................................................14

*Benitez, et al. v. Wilbur, et al.*,
    No. 1:08-cv-01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009).............13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ......................................................................................8, 9

*Bond v. Ferguson Enters.*,
    2011 U.S. Dist. LEXIS 70390 (E.D. Cal. June 30, 2011).................10, 13, 14, 19

*Californians for Disability Rights v. California Dept. of Transp.*,
    2010 WL 8746910 (N.D. Cal. Dec. 13, 2010) ....................................................16

*Chavez, et al. v. Petrissans*,
    Case No. 1:08-cv-00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009).....13

*Clark v. City of Los Angeles*,
    803 F.2d 987 (9th Cir. 1986)..............................................................................17

*Fernandez v. Vict. Secret Stores, LLC*,
    2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) .................................10

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002)..............................................................................17

*Garcia v. Gordon Trucking, Inc.*,
    2012 U.S. Dist. LEXIS 160052 (E.D. Cal Oct. 13, 2012) ...............10, 13, 16, 19

USDC, ND, Case No.: C 06 0715 SC

NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES, ETC

*Graham v. Daimler Chrysler Corp.,*
    34 Cal. 4th 553 (2004).........................................................................................13

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)...........................................................................8

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................9

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
    109 F.3d 602 (9th Cir.1997)............................................................................18

*In re Heritage Bond Litig.,*
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ..............................12

*In re HPL Techs., Inc., Secs. Litig.,*
    366 F. Supp. 2d 912 (N.D. Cal. 2005) ...........................................................15

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..........................................................15

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000)..........................................................................12

*In re Omnivision Techs., Inc.,*
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ......................................................13, 17

*In re Portal Software, Inc. Sec. Litig.,*
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007)...........................14, 15

*In re Rite Aid Corp. Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005).............................................................................15

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES, ETC**

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ....................................................................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ...........................................................................17

*Knight v. Red Door Salons, Inc.*,
   2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009)..........................9, 13, 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................11

*Navarro v. Servisair*,
   2010 U.S. Dist. LEXIS 41081 (N.D. Cal. Apr. 27, 2010) ..................................12

*Ozga v. U.S. Remodelers, Inc.*,
   2010 U.S. Dist. LEXIS 91196 (N.D. Cal. Aug. 9, 2010)....................................14

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ............................................................................9

*Quesada v. Thomason*,
   850 F.2d 537 (9th Cir.1988) .............................................................................18

*Randall Willis et al. v. Cal. Western Transp. and Earl Baron et al. v.*
   *Cal Western Transp.* (consolidated cases),
   No. 1:00-cv-05695-AWI-LJO ...........................................................................14

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D. Cal. 2007) .............................................................9, 13

NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES, ETC

*Rosenfeld v. U.S. Dept of Justice*,

    904 F.Supp.2d 988 (N.D. Cal. 2012) ....................................................................16

*Six (6) Mexican Workers v. Az. Citrus Growers*,

    904 F.2d 1301 (9th Cir. 1990)............................................................................10

*Staton v. Boeing Co.*,

    327 F.3d at 938 (9th Cir. 2003) ...........................................................................8

*Van Gerwen v. Guarantee Mut. Life Co.*,

    214 F.3d 1041 (9th Cir. 2000)............................................................................18

*Vasquez v. Coast Valley Roofing*,

    266 F.R.D. 482 (E.D. Cal. 2010)....................................................................13, 19

*Vasquez v. Jim Aartman, Inc.*,

    No. 1:02-cv-05624-AWI-LJO, Doc. No. 130 ....................................................13

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002)..........................................................10, 14, 17, 19

*Wren v. RGIS Inventory Specialists*,

    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ....................................................16

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES, ETC**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1. <u>Introduction.</u>

By the instant motion, Claimants request the Court award $5,479,622 in attorneys' fees and $1,009,469.42 as reimbursable costs pursuant to the agreed upon formula set forth in the Settlement Agreement. Over 98% of the 862 individuals listed in the settlement agreement have signed individual releases to ratify and participate in the settlement. Moreover, the requested formula setting the attorneys' fees and costs as expressed in the settlement agreement (1/3 of the net settlement) mirrors the agreed-upon formula set forth in individual retainer agreements signed by over 95% of the Claimants. Declaration of Thomas G. Foley, Jr. In Support of Motion for an Award of Attorneys' Fees, Costs and Expenses, and Settlement Administrative Costs ("Foley"), ¶23. Claimants' counsel have litigated this case on a contingency basis, taking considerable risk for hundreds of clients, while facing extensive and formidable defense counsel from national employment firms. Foley, ¶24; Declaration of Richard E. Donahoo in Support of Motion for an Award of Attorneys' Fees, Costs, and Expenses, and Settlement Administrative Costs) ("Donahoo") , ¶¶14, 44. In addition, Claimants' counsel have expended less than the anticipated $1,100,000 allowed in the settlement agreement. Foley, ¶9, Donahoo, ¶40.

Despite the extraordinary circumstances and risk involved, Claimants' counsel do not request a multiplier and have agreed to accept as a fee an amount that is less than the total amount of fees calculated at their normal rates. The formula set forth in the settlement agreements equates to an attorney fees award equal to 31.5% of the gross settlement which is within the range of reasonableness for such awards. The extraordinary circumstances of this case justify a fee award equal to 1/3 of the net recovery after deduction of costs.

## 2. <u>Background.</u>

The Court is well versed in the protracted procedural history of this case. It

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES, ETC**

has been the subject of numerous orders of this Court. After predecessor cases abandoned the claims of employees outside California, on February 1, 2006, certain Claimants filed this case as a putative FLSA collection action on behalf of non-California Managers and Trainers. Donahoo ¶¶28-29); Declaration of Justin P. Karczag in support of Motion for an Award of Attorneys' Fees, Costs, and Expenses, and Settlement Administrative Costs ("Karczag"), ¶2. ECF Doc 1[2] For the Personal Trainers, Claimants' claims alleged that 24 Hour required them to work off-the-clock performing training sessions and non-training session-related work and that 24 Hour failed to pay overtime. Complaint Doc 1. For Managers, Claimants alleged that 24 Hour misclassified them as exempt employees, and failed to pay them overtime. *Id.*

On March 6, 2007, this Court granted conditional certification of a Managers class (Doc 124) and on March 24, 2008, conditionally certified a Personal Trainers class, tolling the claims period for both classes. Doc 190. However, on February 24, 2011, this Court decertified both classes. Doc 428. Up to the point of decertification, this action had been actively litigated, including hundreds of docket entries, dozens of depositions taken across the country, hundreds of thousands of documents produced, millions of electronic records produced, discovery orders issued, and two motions for summary judgment heard. Donahoo, ¶29; Karczag, ¶¶4-8.

Rather than giving up after decertification, between March 21 and March 24, 2011, 983 claimants served individual Demand and Claims for arbitration on 24 Hour and submitted the Demands and Claims to JAMS in the Northern District of California. Donahoo, ¶30; Karczag, ¶9-10. 24 Hour refused to arbitrate any arbitrations in the Northern District, claiming that arbitration provisions required arbitration not in the judicial district where the case was filed, but where the

---

[2] All references to ("Doc") shall be to a document in the ECF court docket in this action.

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES, ETC**

Claimant last worked other than the state of California. *Id.* Claimants filed a motion to compel arbitration in the Northern District. Doc 432. On or about October 14, 2011, Claimants filed an amended motion limiting the motion to be brought on behalf of 16 individuals who were named Plaintiffs in the action. Doc 449. On December 2, 2011, this Court granted the motion to compel arbitration in the Northern District. Doc 457.

On December 5, 2011 273 Claimants who had the same or substantially similar factual circumstances as the 16 named Claimants who prevailed on the motion to compel filed individual Petitions to Compel Arbitration against 24 Hour in the Northern District of California. Donahoo, ¶31; Karczag, ¶10. On December 6, 2011, 24 Hour commenced filing over 307 competing petitions to compel arbitration against its former employees in 21 United States District Courts across the country, including against most, if not all, of the 273 Claimants who filed petitions in the Northern District. *Id.* For the remaining Claimants who had not filed demands to arbitrate in the Northern District of California, additional mass actions were filed in the Northern District seeking to compel arbitration and for declaratory relief. *Id.*

In response to 24 Hour's filing of 307 Petitions in 21 different jurisdictions across the country, Claimants filed a motion for temporary restraining order and preliminary injunction, seeking to enjoin 24 Hour's prosecution of the out-of-jurisdiction cases. Donahoo, ¶32; Karczag, ¶11; Doc 463. In addition to opposing Claimants' motions, 24 Hour filed motions to transfer the cases to jurisdictions outside of the Northern District, which Claimants opposed. Doc 488.

As a consequence of extensive litigation across the Country, Claimants' counsel: (1) retained local counsel as necessary, (2) became admitted *pro hac vice* in over a dozen jurisdictions, and, (3) to alleviate the additional expense of local counsel, became generally admitted to additional jurisdictions. Donahoo, ¶33; Karczag, ¶10.

As a result of the ensuing litigation, on February 22, 2012, this Court appointed Magistrate Judge James Larson (Ret.) as the Special Master. Doc 501. While the Special Master was deciding issues related to injunction and transfer, Claimants spent months litigating 24 Hour's competing petitions that it had filed across the country in 21 different jurisdictions. Donahoo, ¶34; Karczag, ¶¶10-11.

On or about May 7, 2012, Special Master Larson issued his report and recommendations, rejecting 24 Hour's arguments that (a) the cases should be transferred, and (b) that arbitration should not proceed in the Northern District of California. Doc 508. The Special Master recommended a staged orderly resolution of all cases, determining that the first 289 arbitrations proceed in the Northern District, with parties proceeding to mediation, and if not successful at mediation, proceeding to resolve the other 700 claimants' demands. Donahoo, ¶35; Karczag, ¶11. 24 Hour objected to the Special Master's Report and Recommendation, and Claimants successfully opposed 24 Hour's objections. Docs 520, 525 and 528; Donahoo, ¶35; Karczag, ¶11.

Thereafter, the Special Master appointed individual arbitrators for the first 16 individual arbitrations. Discovery and motion practice occurred before the individual arbitrators mutually selected by the parties. Donahoo, ¶36. Claimants succeeded in significant procedural battles during those arbitrations, including but not limited to opposing 24 Hour's motions arguing that Claimants should have to pay for the arbitration and Claimants' motions compelling 24 Hour corporate designees to attend depositions. *Id.* In certain arbitrations 24 Hour filed motions for summary judgment, which Claimants successfully opposed. Donahoo, ¶37; Karczag, ¶12. One to two dozen additional depositions were taken subsequent to the Court's Order approving the Special Master's report and recommendation. *Id.* Thereafter, the Special Master recommended the scheduling a second wave of arbitrations, which was approved by this Court over the objection of 24 Hour. *Id.* The Court also denied 24 Hour's Motion to Dismiss. *Id.*

After years of protracted procedural battles across the federal court system and the initiation of the arbitration process, 24 Hour agreed to resume settlement discussions.[3] Donahoo, ¶ 38; Karczag, ¶13. On October 18, 2012 and November 10, 2012, Claimants and Defendant engaged in two further rounds of Mediation with neutral mediator, Mark Rudy, Esq., seeking a resolution of all claims of the remaining Claimants. *Id.* Following the last session, the Mediator sponsored a "Mediator's compromise" from which counsel worked to refine and negotiate until an agreement was reached and written settlement agreement finalized. Donahoo, ¶ 39; Karczag, ¶13.

### 3. <u>Formula for Attorneys' Fees and Costs</u>

The terms of the proposed settlement are set forth in the Settlement Agreement that was executed by 24 Hour and counsel for the Claimants on February 14, 2013. Key terms relating to the payment of attorneys' fees are as follows:

- Claimants and Defendant agree that the Action shall be ended, settled, resolved, and concluded by agreement of Defendant to pay a total amount not to exceed $17,448,500;

- Claimants' counsel shall be reimbursed Case Costs advanced and incurred from the Settlement Fund of $1,100,000;

- Claimants' Counsel will be paid attorneys' fees from the Settlement Fund equal to one-third (1/3) of the Maximum Settlement Sum, less Case Costs. That is, 1/3 of the amount remaining after Case Costs are deducted from the Settlement Sum. Consequently, the calculation of attorneys' fees shall be as follows: (1) subtraction of the Case Costs from the Settlement Sum, (2) dividing the remaining amount by 3. As an example, if the Settlement Sum is $17,448,500.00, and Case Costs

---

[3] There were two prior unsuccessful mediation sessions.

are $1,100,000.00, the attorneys' fees would be $5,449,500.00 pursuant to the following calculation:

$17,448,500.00 – $1,100,000.00 Case Costs = $16,348,500.00

$16,348,500.00 / 3 = $5,449,500 in Attorneys' Fees

Doc 562(Declaration of Richard E. Donahoo in Support of Motion for Preliminary Approval, Exhibit A).

Here, the actual costs are $1,009,469, below the agreed upon $1,100,000. Foley ¶9; Donahoo, ¶40. Thus, the attorneys' fees are calculated as follows: (1) subtraction of the Case Costs from the $17,448,500 Maximum Settlement Sum, (2) dividing the remaining amount by 3. The attorneys' fees are therefore $5,479,677 pursuant to the following calculation:

$17,448,500 – $1,009,469 Case Costs = $16,439,031.

$16,439,031 / 3 = $5,479,677 in Attorneys' Fees.

**4. Additional Facts Pertaining to the Attorneys fees and costs.**

Included in the Notice to the Claimants, Claimants were informed of the global settlement amount as well as the amount that counsel was seeking in fees set forth as follows:

THE PROPOSED SETTLEMENT
The Settlement provides that Defendants will pay up to Seventeen Million Four Hundred Forty-Eight Thousand Five Hundred ($17,448,500) (the "Maximum Settlement Amount") to fully resolve the issues in the Lawsuits and Arbitrations, inclusive of attorneys' fees and costs. After any and all Court-approved deductions are made (as described below), the remaining amount (the "Net Settlement Amount") will be distributed amongst the eligible former *Beauperthuy* claimants who timely filed valid Individual Release Forms ("Qualified Claimants") pursuant to the Court-approved Plan of Allocation and Distribution as calculated by the Court-Approved Claims Administrator, Simpluris, as described below. Deducted from the Maximum Settlement Amount will be up to approximately $1,100,000 in costs already expended and/or incurred by your Counsel of Record

and attorneys' fees equal to up to one-third (1/3) of the Maximum Settlement Amount, less Case Costs, as approved by the Court.

Thus, each Claimant was informed that counsel would seek attorneys' fees equal to 1/3rd of the net settlement funds. In the end, of the 862 potentially eligible claimants, Simpluris received 849 timely and signed Individual Release Agreements, representing a 98.49% approval by the Claimants. Tittle, ¶11. There were 12 Claimants who did not respond. Simpluris received just one Notice of Rejection, and no objections to the proposed settlement. Tittle, ¶¶12-13. This means that over 99.99% of the settlement funds are available for distribution to the Settling Claimants and their counsel, with only less than .002% of the $17,448,500 reverting back to Defendants. Moreover, the 13 Claimants who did not respond or rejected the settlement do not suffer any impairment to their rights to proceed.

That there was only one rejection and no objections to the settlement including the fees and costs portion is significant and represents overwhelming approval.

Moreover, the formula setting attorneys' fees in the global settlement agreement mirrors the terms of the individual retainer agreement that over 95% of the Claimants have signed. Foley, ¶23. Counsel has individual signed retainer agreements with over 95% of the Settling Claimants; each provides for the same formula for recovery of attorneys' fees. *Id.* Specifically, the retainer agreements provide that counsel shall be entitled to receive 1/3rd of any recovery after a reduction for costs and expenses. *Id.* As explained below, this fact, as well as the other factors, strongly weighs in favor of granting the requested fees.

In sum, this was a contentiously litigated case. In addition to over $6,500,000 in professional time, Claimants' counsel incurred and paid approximately $1,000,000 in total costs and expenses. Foley, ¶9. In total and individually, Claimants' counsels' requests are moderate, and represent a *reduction* in the amount of time spent and an almost $100,000 savings on costs and expenses

incurred.

Specifically, Claimants' counsel have submitted herewith declarations evidencing the number of hours spent by each professional, their hourly rate and their qualifications and experience. Foley, ¶¶3, 13-22; Donahoo, ¶ 16, Exh. A; Karczag, ¶18. Utilizing that time and the reasonable hourly rates, the amount totals $6,591,771 ($3,513,516FBBC + $3,078,255D&A). This is $1,112,094 more than the $5,479,677 requested in this motion. In addition, Claimants' counsel have submitted a costs breakdown showing the amount of costs and expenses in each category and providing detailed backup for categories where the payees exceeded $50,000 to a payee. Foley, ¶ 4-9, Exhs. A, B, C, D and E; Donahoo Decl., ¶17, Exhs. B and C. Those costs total $1,009,469. This is $90,530 less than the allowed costs set forth in the settlement agreement.

Finally, Simpluris has submitted a declaration attesting that $65,000 was incurred in settlement administration costs (this includes not only the initial notice mailings but also applying and then recalibrating the settlement matrix, the follow up work on tracking down Claimants who did not advise Counsel of their changed street addresses or email addresses, and the calculation on a state by state basis of taxes that need to be retained and tax forms that must be filed for each of the 849 Settling Claimants). Tittle, ¶16.

**5. <u>Argument: The Court Should Grant the Requested Fees and Costs.</u>**

Courts have recognized the "common fund" or "common benefit" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see Staton v. Boeing Co.,* 327 F.3d at 938, 967 (9th Cir. 2003) (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)). Awarding a percentage of the common fund is particularly

appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 972 (quoting *Van Gemert,* 444 U.S. at 479) (internal quotation marks omitted).

Although we are not dealing with a certified class here, the fact is that Defendants' offer was a global offer to all qualifying Claimants, which created the settlement fund. Here, where the Settlement applies a distribution formula pursuant to which each qualifying Claimant who affirmatively accepts the settlement via returning their executed IRA, receives a mathematically ascertainable payment. Under these circumstances, application of the percentage of common fund doctrine for payment of attorneys' fees is particularly appropriate. The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage. *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000). The exact percentage awarded, however, varies depending on the facts of the case, and "in most common fund cases, the award exceeds the benchmark" percentage. *Knight v. Red Door Salons, Inc.,* 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2, 2009); *see also In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%"). Here, although the attorneys' fees sought are described as 1/3[rd], in fact, that one third is calculated **after** a deduction of costs. If the costs are added back in the amount is actually 31.5% of the "total gross settlement value". *See Knight*, 2009 U.S. Dist. LEXIS 11149 at *17 (noting that nearly all common fund awards range around 30% and that a court has approved an attorneys' fee award that was 33% of the settlement fund in a wage-and-hour case), citing *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, at *4 (E.D. Cal. Nov. 14, 2007).

The attorneys' fees here should be awarded pursuant to federal law since the case is based on federal question under the FLSA. Federal courts utilize the

percentage-of-the-fund approach, and use the lodestar as a "cross-check" on reasonableness of the percentage. As such, calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002); *Garcia v. Gordon Trucking, Inc.,* 2012 U.S. Dist. LEXIS 160052, at *8 (E.D. Cal Oct. 13, 2012); *Bond v. Ferguson Enters.,* 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. June 30, 2011)[5]; *Fernandez v. Vict. Secret Stores, LLC,* 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008).

## A. The Standard – Common Fund

In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino,* 290 F.3d at 1048-50; *Six (6) Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990).

### (1). The Results Achieved

The individual claims in this case concern Defendants' alleged failure to pay overtime and to pay Claimants for work off the clock. Donahoo ¶ 41. 24 Hour attempted to divide these claims into individual arbitration cells that would have subjected the Claimants to varying standards of arbitrability and fairness that jeopardized their ability to bring and recover on their claims. For example, Defendants attempted to make the employees pay for half of the costs of the arbitration. The arbitrators' fees were between $30,000-50,000. *Id.* Thus, the costs of arbitration itself could have stripped the Claimants of their ability to pursue their claims. *Id.* In addition, because the case had been litigated so extensively, the time and expenses of getting new counsel to come up to speed on the case would have prohibited individual Claimants from pursuing many individual cases. *Id.* And, the further time and expense of having existing counsel

arbitrate each individual claim would have resulted in awards being issued 10 years from now or more. *Id.* Moreover, despite Defendants' best efforts, Claimants' counsel was able to maintain a core of 862 qualifying Claimants able to continue pursuing their individual claims. *Id.* Finally, the overall net award to the Settling Claimants is approximately $11,000,000. *Id.* This is a substantial sum when spread among less than 1,000 individuals (this means on average each individual is entitled to, on average, a gross award of over $20,000). Finally, it is significant that there was no objection to the settlement amount or to the attorneys' fees requested. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004).

### (2). The Risks Involved

There were significant risks involved in this litigation. Donahoo, ¶ 42; Karczag, ¶15. Specifically, Defendants raised numerous defenses, many of which were a complete defense, including statute of limitations (Managers and Trainers), Administrative Exemption (Managers), Executive Exemption (Managers), the Highly Compensated Exemption (Managers), and the Commission Based Sales Exemption (Managers and Trainers). *Id.* Moreover, factual disputes concerning the components of compensation meant that the Arbitrator could determine damages and even liability on a piecemeal, pay-period-by-pay-period basis (e.g., the worker is 7(i) exempt for some pay periods but not others). *Id.* Finally, both liability and damages were nearly entirely dependent on a battle of credibility between the Defendants' witnesses and the Claimant's. *Id.* If Claimant did not prevail, he or she would receive nothing. *Id.* But, there was more at stake. Although counsel were advancing the costs of the litigation, for each arbitration, each individual Claimant would need to secure a minimum of one week off of work, and in many cases, arrange for child or family care—all of which are non-recoverable costs. *Id.*

Further, these actions were taken on a contingency fee basis and, as such,

Counsel invested time, effort, and money with no guarantee of recovery. Karczag, ¶15; Donahoo, ¶¶14, 44. In cases where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *19 (C.D. Cal. June 10, 2005) (discussing Ninth Circuit cases awarded attorney fees of one-third of the total recovery).

### (3). Skill Required and Quality of the Work Performed

The case required specialized skills to litigate the legal theories relating to wage and hour law, arbitration, and the class aspect of the case while it was conditionally certified. Counsel are experienced trial attorneys, including in the area of employment class litigation, arbitration enforceability, and wage and hour. Donahoo ¶¶3-11; 18; Foley ¶13-22.

Moreover, this case was actively litigated and significant time was spent on discovery. Donahoo, ¶ 43; Karczag, ¶¶ 4-12. *See generally Navarro v. Servisair*, 2010 U.S. Dist. LEXIS 41081, at *3 (N.D. Cal. Apr. 27, 2010) (finding proposed award of 30 percent of settlement fund unjustifiably departed from benchmark due in part to speed with which parties reached a settlement). Overall, the specialized skill of Counsel in this area of the law was generally an asset to the Claimants and the quality of work performed was good.

### (4). The Contingent Nature of the Representation

Counsel litigated the case on a contingency fee basis, which necessarily presented considerable risk. *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount

of time expended."). Counsel assumed a very real risk in taking this case on a contingency basis, investing time, effort, and money in the action with no guarantee of recovery.  Donahoo, ¶44; Karczag, ¶15.

In considering both the contingent nature of the work performed by Counsel as well as the risk involved in the costs advanced, these factors support the fee award requested. *See Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services") (internal citations omitted).

### (5).  Awards Made in Similar Cases

Ninth Circuit District Courts, including the Northern District of California, have made similar awards in similar cases.  *See, e.g., Knight*, 2009 WL 248367, at *17 (noting that nearly all common fund awards range around 30% and that a court has approved an attorney's fee award that was 33% of the settlement fund in a wage-and-hour case), citing *Romero,*  2007 U.S. Dist. LEXIS 86270, at *4; *see also In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1048 (N.D. Cal. 2008) (awarding 28% attorney's fees).[4]

---

[4] These are also comparable to other wage and hour cases in the Eastern District as well:
(1) *Garcia,* 2012 U.S. Dist. LEXIS 160052 (court approving attorneys' fees in the amount of 33 percent of the common fund);
(2) *Bond,* 2011 U.S. Dist. LEXIS 70390, at *40 (court approved attorneys' fees in the amount of 30 percent of the common fund);
(3) *Vasquez v. Coast Valley Roofing,* 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) (wage-and-hour action putative class-action settlement where court approved award of attorneys' fees in the amount of 33.3 percent of the common fund);
(4) *Benitez, et al. v. Wilbur, et al.*, No. 1:08-cv-01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees);
(5) *Chavez, et al. v. Petrissans*, Case No. 1:08-cv-00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common fund);
(6) *Romero,* 2007 U.S. Dist. LEXIS 86270, at *4 (class-action settlement where court approved attorneys' fees in the amount of 33 percent of common fund);

## (6).  The Relevant Factors Weigh In Favor Of The Award.

Further, although Counsel's requested fees exceed the 25 percent benchmark under federal law, the Court should find sufficient basis to exceed that marker considering the risk of the litigation, the contingent nature of the work, the favorable reaction of the Claimants to the settlement, and the fee awards in other wage-and-hour cases. As such, the requested 31.5% of the overall recovery represents a reasonable fee award and should be approved. *See Ozga v. U.S. Remodelers, Inc.*, 2010 U.S. Dist. LEXIS 91196, at * 3 (N.D. Cal. Aug. 9, 2010) (departure from benchmark warranted due to excellent results, reaction of the class, and the risks faced due to the uncertainty of California law in similar wage-and-hour cases).

## B.     Lodestar Cross-check.

Courts frequently cross-check a percentage fee request with the lodestar analysis. *See, e.g., Vizcaino,* 290 F.3d at 1050 (finding that "the lodestar may provide a useful perspective on the reasonableness of a given percentage award"); *Bond,* 2011 U.S. Dist. LEXIS 70390, at *29 (finding that "[c]alculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award").

"In conducting a lodestar cross-check, the court must first determine the dollar value of the proposed percentage-based fee award." *In re Portal Software, Inc. Sec. Litig. ("Portal Software")*, 2007 U.S. Dist. LEXIS 88886, at *37 (N.D.

---

(7) *Vasquez v. Jim Aartman, Inc.*, No. 1:02-cv-05624-AWI-LJO, Doc. No. 130 (class-action settlement where court approved attorneys' fees in the amount of 30 percent of the settlement amount);
(8) *Baganha v. Cal. Milk Transp.*, No. 1:01-cv-05729-AWI-LJO, Doc. No. 147 (class-action settlement where court approved attorneys' fees in the amount of 31.25 percent of settlement amount); and
(9) *Randall Willis et al. v. Cal. Western Transp.* and *Earl Baron et al. v. Cal Western Transp.* (consolidated cases), No. 1:00-cv-05695-AWI-LJO (court approved attorneys' fees in the amount of 33.3 percent of the settlement amount).

USDC, ND, Case No.: C 06 0715 SC

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES, ETC**

Cal. Nov. 26, 2007). The requested award here is $5,479,677, which represents a requested fee of 33 1/3rd percent of the net settlement amount before costs and is just 30% of the approximate $17,448,500 in total benefits.

The next step is to cross-check the proposed percentage fee against the lodestar. *Id.* "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the *ex ante* risk of nonrecovery in the litigation)." *In re HPL Techs., Inc., Secs. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005). The multiplier is calculated from the ratio of the proposed percentage fee to the computed lodestar fee and is assessed for reasonableness. *Portal Software,* 2007 U.S. Dist. LEXIS 88886 at *38. Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting"); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check").

### (1). Counsels' Lodestar.

Here, Counsels' hourly rates exceed the amount requested, and total $6,591,771 vs. the amount requested $5,479,677.

### (2). Hours Reasonably Expended.

As set forth in the declarations of counsel for Claimants, the 19,804 hours expended on the litigation (10,121FBBC + 9683D&A) is reasonable in light of the legal issues and the extensive amount of discovery conducted, the number of Claimants included in the Settlement, the mediation preparation required, motion practice, the venue "war" waged by the original counsel for Defendants, and in the

instant settlement. Donahoo, ¶ 45; Karczag, ¶¶4-14; Foley, ¶3. This case was not only litigated for over seven years, but devolved into hundreds of individual actions spread across 21 different judicial districts. Over 1,000 employees were individually interviewed and dozens of days of company and employee depositions were conducted across the country. Donahoo, ¶ 45; Karczag, ¶¶4, 6. Defendants' counsel for the bulk of the litigation, Littler Mendelson, is the largest wage and hour defense law firm in the world, and they brought significant and substantial resources to bear, resulting in the litigation of every single conceivable issue. Donahoo, ¶45; Karczag, ¶3. The hours spent were reasonable considering that Defendants placed significant hurdles in Claimants' way and the unique posture of this case.

### (3). Reasonable Hourly Rates

Claimants' counsel has submitted documentation of the hourly rates billed in this matter. The rates range from $100-$175 for Case Administrators, Legal Assistants and Paralegals, $200-$325 for associates, and $400-$600 for partners. Foley, ¶3; Donahoo ¶16; Karczag, ¶18. Claimants' counsel has also submitted a declaration of an expert on attorneys' fees, Richard M. Pearl, who conducted an exhaustive survey on the issue of attorneys' fees in a recent attorneys' fees matter decided in the Northern District of California, styled *Rosenfeld v. U.S. Dept of Justice*, 904 F.Supp.2d 988 (N.D. Cal. 2012). Karczag, ¶16, Exh. A. In sum, all of the evidence and reported opinions show that prevailing rates in the Northern District of California are in the $400-$500 range, with rates of up to $650-$800 approved for partners and senior associates with significant years of experience; for associates $300-$500 is the norm, and for Paralegals, Case Administrators, and Legal Assistants the range is from $150-$275. *See e.g., Garcia,* 2012 U.S. Dist. LEXIS 160052, at *9; *Californians for Disability Rights v. California Dept. of Transp.*, 2010 WL 8746910 (N.D. Cal. Dec. 13, 2010) (report and recommendation adopted *sub nom. Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.,*

2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) (awarding hourly rate of $730 for attorney with 26 years of experience); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (awarding hourly rate of $650 for attorney with 17 years of experience. All of the rates requested here are well below the average prevailing rates in the Northern District of California for wage and hour litigation firms. Karczag, ¶16-18, Exhs. A and B.

## C.    Lodestar Multiplier

Indeed, this case has been litigated for years and most Claimants are receiving thousands of dollars in recovery. Claimants' counsel has overcome every hurdle including a venue war spanning 21 judicial districts. Such circumstances would ordinarily justify a multiplier increase in the fee award from the lodestar. Nevertheless, as a consequence of the extensive litigation, this fee award actually results in a payment of attorneys' fees that is *less* than the hourly fees and represents a deduction to the lodestar. Courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under lodestar. *See Vizcaino*, 290 F.3d at 1050-51 (providing "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"); *In re Omnivision Tech.*, 559 F.Supp.2d at 1048 (awarding 28% attorney's fees  when the amount represented a multiplier of approximately 1.33 times the lodestar); *see also Knight*, 2009 WL 248367, at *7 (awarding 30% when that amount represented 1.08 times the lodestar).

Adjustments to increase or decrease the lodestar amount are sometimes appropriate and justify the use of a "lodestar multiplier." *Clark v. City of Los Angeles*, 803 F.2d 987, 991-92 (9th Cir. 1986); *see also Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (holding that "It is an established practice in the private legal market to reward attorneys for taking the

risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases"). (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Generally, a district court has discretion to apply a multiplier to the attorneys' fees calculation to compensate for the risk of nonpayment. *Fischel*, 307 F.3d at 1008; *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 609 (9th Cir.1997).

The "lodestar multiplier" is calculated by dividing the percentage fee award by the lodestar calculation. *Fischel*, 307 F.3d at 1008. $6,591,771 ($3,513,516FBBC + $3,078,255D&A). This is $1,112,094 more than the $5,479,677 requested in this motion. Here, a multiplier of .83 is calculated by dividing the amount requested $5,479,677 by the amount actually incurred in hours $6,591.771. To determine whether the lodestar multiplier is reasonable the following factors may be considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 1007, n. 7 (citing *Quesada v. Thomason*, 850 F.2d 537, 539 n. 1 (9th Cir.1988)). Only the *Quesada* factors that are not already subsumed within the lodestar are considered. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046-47 (9th Cir. 2000).

Here, the additional *Quesada* factors, to the extent they apply, arguably apply to result in an upward adjustment or no adjustment at all. However, because counsel in this case (in order to serve the best interests of finality and to allow their

clients to receive long overdue money promptly) voluntarily agreed to a reduction by way of a lodestar analysis, there is no purpose served in conducting the analysis.

Based on the overall success, the absence of opposition, and Claimants' Counsels' well-documented hours worked in this action, Settling Claimants' request is reasonable. *See*, *e.g.*, *Vizcaino.*, 290 F.3d at 1051 (finding no abuse of discretion in awarding a multiplier of 3.65); *see also Garcia,* 2012 U.S. Dist. LEXIS 160052, at \*30 (approving a multiplier of 1.28); *see also Bond*, 2011 U.S. Dist. LEXIS 70390 at \*36 (approving a multiplier of 1.75). According, the Court should approve the request for attorneys' fees in the total amount of $5,479,677.

### D. Claimants' Request for Costs and Expenses Should Be Granted

The request for reimbursement of $1,009,469 in costs is reasonable given the complexity and scope of this case and represents a deduction in the actual amount of costs incurred. The declarations of Claimants' Counsel detail the costs incurred which include expert fees, travel costs, mediator fees, expert fees, copy and scanning costs, filing fees, and electronic research fees. These types of fees are routinely reimbursed. *See, e.g., Vasquez,* 266 F.R.D. at 493. The actual amount of costs incurred total $1,009,469. Foley, ¶9; Donahoo, ¶40.

Here, Claimants engaged both liability and damage experts who undertook extensive consultation and analysis, including preparing for and attending depositions. Foley, ¶7; Donahoo, ¶40. Claimants' damages expert, Malcolm Cohen, Phd. is a nationally recognized FLSA expert who prepared an extensive damage analysis for each of the Claimants and who testified regarding the extensive analysis undertaken. *Id.* Claimants' expert William Cutler is likewise a nationally recognized wage and hour expert and former compliance investigator with the Department of Labor. Claimants' expert witness and consultant fees totaled over $416,509. *Id.*

Claimants' additional costs included four days of mediation with Mark Rudy, Esq. a nationally recognized mediator with extensive experience in labor and employment matter. Foley, ¶5; Donahoo, ¶40. Claimants paid $55,907.50 in fees to the Special Master appointed by the Court at the request of both parties and the Mediator whose participation ultimately led to the settlement of this case. Donahoo, ¶40; Foley, Exh. A.

The requested and agreed-upon administrative fee for the Settlement Administrator, in the amount of $65,000, is likewise reasonable. Given the required administrative duties and responsibilities and work provided, which included providing individualized notice to each of the 862 Claimants, and the computation, calculation, and processing of final payments to account for all required tax forms for this wage and hour case, the requested and agreed-upon payment to the Settlement Administrator, Simpluris, also is reasonable. As set forth in the declaration of Simpluris Administrator Krista Tittle, Simpluris has completed its assignment to date and will complete its remaining work.

**6. <u>Conclusion.</u>**

For the foregoing reasons, Settling Claimants respectfully request that this Court issue an order Granting the requested award of Attorneys' Fees and Costs in the amount of $5,479,677 in attorneys' fees, $1,009,469 in costs and expenses to Counsel, plus $65,000 in Settlement Administration Costs to Simpluris.

Dated: August 9, 2013        **DONAHOO & ASSOCIATES**
                                        **FOLEY BEZEK BEHLE & CURTIS, LLP**

                                        By: /s/ Richard E. Donahoo
                                        Thomas G. Foley, Jr.
                                         Richard E. Donahoo
                                         Justin P. Karczag
                                         Attorneys for Claimants